**KRAUSE & ASSOCIATES**
Frederick Mitchell (4L), *State Bar Verified Notice of Intent to Study Law No. 00541560*
Ernest Krause (SBN: 56343)
*Supervising Attorney*
4540 Florin Rd., Suite E-224
Sacramento, CA 95823
T: 1(888) 508-1189 | F: 1(916) 200-3560
Email: KrauseLawAssociates@gmail.com

*In propria persona*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ERNEST KRAUSE; and FREDERICK MITCHELL, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MANJARI CHAWLA, individually and in official capacity of Judge of State Bar Court; LEAH T. WILSON, individually and in official capacity of Executive Director of State Bar of California; RUBEN DURAN, individually and in official capacity of Chair of the Board of Trustees of State Bar of California; GEORGE S. CARDONA, individually and in official capacity of Chief Trial Counsel of State Bar of California; RYAN T. CHIN, individually and in official capacity of Trial Counsel of State Bar of California; TIFFANY F. SORENSEN, individually and in official capacity of Trial Counsel of State Bar of California; MICHAEL NGUYEN, individually and in official capacity of Trial Counsel of State Bar of California; STATE BAR OF CALIFORNIA, a public corporation; STATE BAR COURT, a non court of record created by statute; STATE BAR STAKEHOLDERS; and DOES 1-1,000 inclusive;<br><br>        Defendants. | **VERIFIED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS OF:**<br>1. **U.S. Const. amend. XIV;**<br>2. **U.S. Const. amend. I;**<br>3. **42 U.S.C. § 1983;**<br>4. **42 U.S.C. § 1985(2);**<br>5. **Cal. Const. art. I, § 7;**<br>6. **State Bar Act § 6094.5, subd. (a);**<br>7. **Elder Abuse,**<br>    **Welf. & Inst. Code § 15610.53;**<br>8. **Conversion;**<br>**AND FOR:**<br>1. **Class Action,**<br>    **Fed. R. Civ. P. 23(b)(2);**<br>2. **Temporary Restraining Order,**<br>    **Fed. R. Civ. P. 65(b);**<br>3. **Prohibitory Injunctive Relief,**<br>    **Fed. R. Civ. P. 65(a);**<br>4. **Declaratory Relief,**<br>    **22 U.S.C. §§ 2201(a) and 2202;**<br>5. **Attorney's Fees,**<br>    **42 U.S.C. § 1988(b)** |

*KRAUSE & ASSOCIATES* (vertical sidebar text)

VERIFIED CIVIL RIGHTS COMPLAINT

## COMPLAINT

**COME NOW** ERNEST KRAUSE and FREDERICK MITCHELL ("Plaintiffs") against: MANJARI CHAWLA, *individually* and in official capacity of Judge of the State Bar Court; LEAH T. WILSON, *individually* and in official capacity of Executive Director of State Bar of California; RUBEN DURAN, *individually* and in official capacity of Chair of the Board of Trustees of State Bar of California; GEORGE S. CARDONA, *individually* and in official capacity of Chief Trial Counsel of State Bar of California; RYAN T. CHIN, *individually* and in official capacity of Trial Counsel for State Bar of California; TIFFANY F. SORENSEN, *individually* and in official capacity of Trial Counsel for State Bar of California; MICHAEL NGUYEN, *individually* and in official capacity of Trial Counsel for State Bar of California; STATE BAR OF CALIFORNIA, a public corporation; STATE BAR COURT, a non court of record created by statute; STATE BAR STAKEHOLDERS; and DOES 1-1000 inclusive ("Defendants"), for civil rights violations of U.S. Const. amend. XIV; U.S. Const. amend. I; Cal Const. art. I, § 7; 42 U.S.C. § 1983; 42 U.S.C § 1985(2); State Bar Act § 6094.5(a); Elder Abuse - Cal. Welf. & Inst. Code § 15610.53; Conversion; Class Action - Fed. R. Civ. P. 23(b)(2); Temporary Restraining Order – Fed. R. Civ. P. 65(b); Prohibitory Injunctive Relief - Fed. R. Civ. P. 65(a); Declaratory Relief - 22 U.S.C. §§ 2201(a) and 2202; Attorney's Fees - 42 U.S.C. § 1988(b).

## I.

### INTRODUCTION

1.      Plaintiffs bring this civil rights suit pursuant to U.S. Const. amend. XIV and 42 U.S.C. § 1983, and Cal. Const. art. I, § 7 on grounds that ALL DEFENDANTS acting under color of rule 5.21(A) of the Rules of Procedure of the State Bar ("rule 5.21(A)"), subjects, or causes to be subjected, Plaintiffs and putative classes to the deprivation of rights, privileges, or immunities secured by the Constitution and State Bar Act § 6094.5, subd. (a); and depriving Plaintiffs and putative classes of a nonpublic "**Confidential Warning Letter**" that Defendants afforded to more than 700 other attorneys against whom complaints alleging attorney misconduct had been received by Defendants between 2010 and 2021.

KRAUSE & ASSOCIATES

2.    Plaintiffs bring this civil rights suit pursuant to U.S. Const. amend. XIV, Cal. Const. art I, § 7, and 42 U.S.C. § 1985(2) on the grounds that ALL DEFENDANTS, jointly and severally, and acting individually and in concert with each other, conspired for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of California and in the United States, with intent to deny to Plaintiffs and putative class members and subclass members, the equal protection of the laws, specifically of State Bar Act § 6094.5, subd. (a), and to injure Plaintiffs and the putative classe and subclasses, in his or her property for lawfully enforcing, or attempting to enforce, Plaintiffs' rights and the rights of the class of persons similarly situated, to the equal protection of the laws, including U.S. Const. amend. XIV and 42 U.S.C. § 1985(2), Cal. Const. art. I, § 7, and State Bar Act § 6094.5, subd. (a).

3.    Plaintiffs further bring this civil rights suit on behalf of themselves and putative class and subclass members to enforce State Bar Act § 6094.5, subd. (a) on the grounds that the condition precedent in subd. (a) is jurisdictional; ALL DEFENDANTS have failed and refused to perform the condition; the condition precedent constitutes mandatory instruction to Defendants and not a discretionary one that Defendants may avoid; Defendants have no right of selection between the two prongs of the condition precedent and must perform both prongs to accrue any rights thereunder; and substantial compliance is neither expressly nor impliedly authorized by the Legislature.

4.    Plaintiffs bring this civil rights suit as a Class Action under Rule 23(b)(2) of the Federal Rules of Civil Procedure on the grounds that ALL DEFENDANTS opposing the class have acted or refused to act on grounds that apply generally to the putative class and subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class and subclasses as a whole.  ALL DEFENDANTS have deprived Plaintiffs and the putative class and subclass members of rights, privileges, or immunities secured by U.S. Const. amend. XIV and 42 U.S.C. § 1983, 42 U.S.C. § 1985(2); and Cal. Const. art. I § 7, Cal. Const. art. III, § 3.5, and State Bar Act § 6094.5, subd. (a), jointly and severally.

- 3 -

_____

5.      Plaintiffs seek a <u>Temporary Restraining Order</u> and <u>Prohibitory Injunctive Relief</u> under Fed. R. Civ. P. 65(b) and (a) respectively because Plaintiffs are likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in Plaintiffs' favor, and an injunction is in the public interest. ALL DEFENDANTS will continue illegal prosecutions in violation of State Bar Act § 6094.5, subd. (a) under color of rule 5.21(A), unless and until Defendants are enjoined from further violations of U.S. Const. amend. XIV, 42 U.S.C. § 1983 and 42 U.S.C. 1985(2); Cal. Const. art. I, § 7; Cal. Const. art. III, § 3.5, and State Bar Act § 6094.5(a), as prayed for below:

A.      Pursuant to State Bar Act § 6094.5, subd. (a), and retroactive to January 1, 2022, Defendants are enjoined from prosecuting complaints alleging attorney misconduct where Defendants failed to file formal charges within six months after Defendants received a complaint alleging attorney misconduct for complaints designated "noncomplex."

B.      Pursuant to State Bar Act § 6094.5, subd. (a), and retroactive to January 1, 2022, Defendants are enjoined from prosecuting complaints alleging attorney misconduct where Defendants failed to file formal charges within twelve months after Defendants received a complaint alleging attorney misconduct for complaints designated as "complex."

C.      Pursuant to State Bar Act § 6094.5, subd. (a), and retroactive to January 1, 2022, Defendants are enjoined from public disclosure of disciplinary actions taken, proposed, the filing of Notice of Disciplinary Charges or similar information, and from public disclosure of judgments, rulings, admonishment, or notices against members of the putative classes where Defendants failed to file formal charges within six months after Defendants received a complaint alleging attorney misconduct for complaints designated "noncomplex."

D.      Pursuant to State Bar Act § 6094.5, subd. (a), and retroactive to January 1, 2022, Defendants are enjoined from public disclosure of disciplinary actions taken, proposed, the filing of Notice of Disciplinary Charges or similar information, and from public disclosure of judgments, rulings, admonishment, or notices against members of the putative classes where Defendants failed to file formal charges within twelve months after Defendants received a complaint alleging attorney misconduct for complaints designated "complex."

- 4 -

E.    Pursuant to State Bar Act § 6094.5, subd. (a), and retroactive to January 1, 2022, Defendants are enjoined from enforcing any recommendation, decision, ruling, judgment, or admonishment against members of the putative classes where Defendants failed to file formal charges within six months after Defendants received a complaint alleging attorney misconduct for complaints designated "noncomplex."

F.    Pursuant to State Bar Act § 6094.5, subd. (a), and retroactive to January 1, 2022, Defendants are enjoined from enforcing any recommendation, decision, ruling, judgment, or admonishment against members of the putative classes where Defendants failed to file formal charges within twelve months after Defendants received a complaint alleging attorney misconduct for complaints designated "complex."

6.    Plaintiffs bring this civil rights suit against STATE BAR DEFENDANTS, *infra*, for Declaratory Relief under 22 U.S.C. §§ 2201(a) and 2202 to declare the use of Ernest Krause' membership dues to fund unauthorized practice of law as unconstitutional for Prohibitory Injunctive Relief to enjoin Defendants, restitution, and attorney's fees.

7.    Plaintiffs bring this civil rights suit because Plaintiffs, who have suffered and are imminently threatened with concrete and particularized 'injury in fact' of illegal disbarment of Plaintiff Krause, and illegal conspiracy to deprive Plaintiff Mitchell of an Admittance Ticket to the California Bar Examination in 2024, is fairly traceable to the challenged actions of Defendants and likely to be redressed by a prohibitory injunction, and declaratory relief, if necessary, in favor of Plaintiffs and the putative classes and subclasses.

8.    The Federal District Court may enjoin active proceedings in State Bar Court because 42 U.S.C. § 1983 is an "express exception" to 22 U.S.C. § 2283, which generally prohibits a federal court from enjoining state court proceedings.  State Bar Court is not a "state court." Nor does Cal. Const. art. VI §, 1 imbue the State Bar Court with power as a court of record.  The State Bar Court is statutory in construction and is purely administrative pursuant to State Bar Act § 6086.5, subd. (a). Proceedings in State Bar Court are nonjudicial and neither civil nor criminal under common law.  Therefore, the principles of comity embodied in 22 U.S.C. § 2283 must yield to the jurisdiction of the Federal District Court.

## II.

### FACTS COMMON TO ALL COUNTS

9.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 8 as if fully set forth herein, and respectfully:

10.     The matter before the Hon. District Court is relatively straightforward. There are no novel theories requiring judicial construction. On January 1, 2022, in response to the State Bar's heinous corruption and plea for millions of dollars, the Legislature enacted State Bar Act § 6094.5, subd. (a) as jurisdictional[1] to expunge garden variety complaints alleging attorney misconduct that Defendants had deliberately warehoused for years as "backlog."

11.     The Legislature chaptered the statute [ibid] in plain English and unambiguous language, imposing a mandatory condition precedent upon the State Bar that states in relevant part: "**Until** processing goals are established pursuant to subdivision (b) **and** codified in statute, the goal **and** policy of the State Bar is to dismiss a complaint, admonish the attorney, or have the Office of Chief Trial Counsel file formal charges within six months after it receives a complaint alleging attorney misconduct."[emphasis/underline].

12.     Insofar as "complicated" cases are concerned, the Legislature plainly stated that, "it shall be the goal **and** policy of the State Bar to dismiss a complaint, admonish the attorney or have the Office of Chief Trial Counsel file formal charges within 12 months after it receives a complaint alleging attorney misconduct." [emphasis/underline added]. (Ibid.)

13.     Establishing processing goals is the first prong of the condition.  Codifying the processing goals in statute is the second prong of the condition.  The State Bar has no right of selection between the two prongs.  The State Bar must perform the acts to satisfy each prong of the condition before it accrues any rights thereunder. (Civil Code § 1436.)

14.     On January 20, 2022,  approximately 19 days after State Bar Act § 6094.5(a) became law, Defendant, George S. Cardona, willfully defied the Legislature and illegally amended rule 5.21 of the Rules of Procedure of the State Bar.[2] (Proposed amend., p. 2 ¶ 2.)

---

[1] State Bar Act § 6094.5, Authenticated, Ex. 1.

[2] George Cardona's proposed amendment to rule 5.21 of Rules of Procedure of the State Bar, Ex. 2.

KRAUSE & ASSOCIATES

15.     On April 4, 2022, three months after State Bar Act § 6094.5(a) became law, the Board of Trustees, or other governing body of the Bar, flouted the law and attempted to usurp State Bar Act § 6094.5, subd. (a). The Board authorized and ratified rule 5.21(A) of the Rules of Procedure of the State Bar, which reads in relevant part:

> "**Time Limit for Complaint**. If a disciplinary proceeding is based solely on a complainant's allegations of a violation of the State Bar Act or Rules of Professional Conduct, the initial pleading must be filed within the later of (1) five years from the date the violation occurred or (2) two years from the date the first complaint regarding the violation is submitted to the State Bar, so long as that complaint is submitted to the State Bar within five years from the date the violation occurred." [emphasis original].

16.     The amendments, in fact the entirety of rule 5.21, is inapposite the statutory and mandatory condition precedent in State Bar Act § 6094.5, subd. (a) and purports to disregard and usurp it entirely.

17.     On October 28, 2022, Defendants submitted proposed caseload processing standards to the California Legislative Analyst's Office ("LAO") as required by Chapter 723 of 2021 (SB 211, Umberg).  The LAO authored a detailed report in January 2023 with its concerns, observations, and recommendations.[3]  Not too surprisingly, the LAO did not endorse Defendants' proposed caseload processing standards. The LAO reiterated the time limits set forth in State Bar Act § 6094.5(a), stating: "State law currently **requires** the State Bar to complete the first three stages of the disciplinary process—specifically for OCTC to dismiss a complaint, admonish an attorney, or file formal charges against an attorney— within 180 days after receipt of a written complaint for "noncomplex" cases and 365 days for "complex" cases." [emphasis/underline added]. (LAO Report, p. 1 ¶ 3, Ex. 3.)

18.     On December 5, 2022, Senator Thomas Umberg of the Senate Judiciary Committee, clearly **_not_** persuaded by Defendants' proposal, introduced Senate Bill 40 (SB40) during the Legislature-2023-2024 Regular Session.[4] Much of the State Bar Act was amended, but not one word of Section 6094.5(a) changed from the January 1, 2022 law.

---

[3] Legislative Analyst's Office Report, Ex. 3.

[4] Senate Bill 40 (SB40) Bill Text 2023-09-20, Legislative Counsel's Digest, Authenticated, Ex. 4.

_____
VERIFIED CIVIL RIGHTS COMPLAINT

19.     Senator Umberg did not include any part of rule 5.21(A) in SB40. Nor did the Legislature amend Section 6094.5(a) to refer to rule 5.21(A).

20.     The condition precedent in State Bar Act § 6094.5, subd. (a) remained in full force and effect on December 5, 2022.

21.     The condition precedent in State Bar Act § 6094.5, subd. (a) is a mandatory instruction to Defendants, not a discretionary one that Defendants may avoid.

22.     The Legislature neither expressly nor impliedly authorized substantial compliance with the condition precedent in State Bar Act § 6094.5, subd. (a).

23.     While the Legislature controls the second prong of the condition, Defendants must perform both prongs of the condition. (Civil Code § 1436.) Defendants' proposal was unavailing to the Legislature and therefore not codified in statute.

24.     On September 20, 2023, the Legislature presented SB40 to Governor Gavin Newsom. (Legislative Counsel's Digest, Ex. 4.) Again, no changes to Section 6094.5(a).

25.     Senator Umberg had not proposed to codify rule 5.21 in statute and therefore the Legislature did __*not*__ codify rule 5.21 in statute.

26.     As a matter of law, rule 5.21(A) was void *ab initio* on January 1, 2022.

27.     As a matter of law, rule 5.21(A) was void *ab initio* on January 20, 2022.

28.     As a matter of law, rule 5.21(A) was void *ab initio* on April 4, 2022.

29.     As a matter of law, rule 5.21(A) was void *ab initio* on October 28, 2022.

30.     As a matter of law, rule 5.21(A) was void *ab initio* on December 5, 2022.

31.     As a matter of law, rule 5.21(A) was void *ab initio* on March 16, 2023.

32.     As a matter of law, rule 5.21(A) was void *ab initio* on June 16, 2023.

33.     As a matter of law, rule 5.21(A) was void *ab initio* on September 20, 2023.

34.     Rule 5.21(A) of the Rules of Procedure of the State Bar is void *ab initio* as of the date Plaintiffs filed this verified complaint for civil rights violations.

35.     Further, rule 5.21(A) is without legal authority since January 1, 2022.

36.     Defendants admittedly failed and refused to challenge the condition precedent.  Defendants also failed and refused to perform both of the mandatory conditions

in State Bar Act § 6094.5, subd. (a). As such, the *six month or twelve month time limitation means six months or twelve months as stated there*.

37. Defendants have acquired no rights under State Bar Act § 6094.5(a) and can neither prosecute nor impose discipline on Plaintiffs or putative classes under rule 5.21(A).

38. State Bar Act § 6094.5, subd. (a) is controlling law for Defendants' time limits to file formal charges and is expressly limited to six months or twelve months after receipt of a complaint alleging attorney misconduct, as was the Legislature's intent. (the "**Policy**").

39. The immutable fact is that the mandatory condition precedent makes the **Policy** in State Bar Act § 6094.5, subd. (a) jurisdictional, whereas Defendants' *goals* in subdivision (b) are expressly not jurisdictional.  Policy and "goals" are distinct.

40. The unambiguous language in subdivision (b) affords Defendants no exemption from the mandatory condition precedent in subdivision (a), a point reinforced by legislative intent in subdivision (b)(6) which states: "It is the intent of the Legislature to enact legislation that would codify in statute case processing goals for the State Bar's discipline system based on the State Bar's proposal and the Legislative Analyst's Office review of that proposal" in relevant part.  Defendants' proposal failed to pass muster with the Legislature.

41. Defendants failed to persuade the Legislative Analyst's Office, and therefore failed to persuade Senator Umberg or the Legislature, to codify any part of rule 5.21 in statute.  Not satisfied that Senator Umberg had voided rule 5.21, and in willful defiance of the Senator and the Legislature, Defendants took matters into their own hands and purport to amend rule 5.21 to directly contravene State Bar Act § 6094.5(a). Defendants' amendment failed to cure rule 5.21's legislative voidness. Defendants have illegally prosecuted attorneys.

42. The LAO discussed Defendants' goals, stating: "the State Bar proposes an average case processing standard of 120 days for high-risk, noncomplex cases closed in the Investigation Stage and a backlog standard of 180 days. This means that high-risk, noncomplex cases that take longer than 180 days to close in the Investigation Stage would be deemed to be "closed in backlog" or "not meeting goals." (LAO Report,   p. 14, col. 2 ¶ 1, Ex. 3.) Defendants'  "backlog" scheme and plea for millions of dollars were breaking points.

_____

KRAUSE & ASSOCIATES

43.     The "Investigation Stage" is only the second stage of four stages of the disciplinary process. (Id. p. 1 ¶ 3.)   Upon information and belief, Defendants' proposal is a "shell game" wrought with ulterior motives, trap doors, and loopholes that allow the Defendants to persist in "Girardian" corruption.  Thus, the Legislature did **not** codify in statute **any** of Defendants' goals. Defendants have utterly failed to perform prong two of the condition precedent from January 1, 2022 through September 20, 2023.

44.     As opposed to subdivision (b), subdivision (a) of State Bar Act § 6094.5 neither expressly nor impliedly waives defects in subject matter jurisdiction or personal jurisdiction after six or twelve months. This express limitation is legislative intent.

45.     In a scathing article in Bloomberg Law on March 13, 2023,[5] Joyce E. Cutler quoted University of San Francisco adjunct law professor, Carol Langford, who defends attorneys before the Bar as stating, "What makes it sickening is the Bar itself—the ruling body—was self serving and self dealing all while prosecuting solo practitioners." Langford said, "Even worse, they allowed the bad players to jump out with golden parachutes and so far pay no price for their actions." (Bloomberg Law, p. 1 ¶¶ 3-4.)  In an equally scathing Los Angeles Times piece on April 14, 2023,[5] Matt Hamilton reported that between 2010 and 2021, Defendants used confidential letters and warnings with more than 700 attorneys accused of attorney misconduct ("privileged offenders").  (LA Times, p. 6 ¶¶ 3-4.)

46.     The nonpublic communications arise from deliberate loopholes created by Leah Wilson, Ruben Duran, George Cardona, and Eli David Morgenstern as rule 5.21(C) to conceal privileged offender misconduct from the public for years, i.e. Girardi, Duran, and Morgenstern. (Davis VanGuard, pp. 2-3.)[7]

---

[5] Joyce E. Cutler, *Girardi Probe Shows An Internally Corrupt California State Bar(1)*, Bloomberg Law (March 13, 2023, 5:01 PM CDT), https://news.bloomberglaw.com/legal-ethics/girardi-probe-reveals-an-internally-corrupt-california-state-bar, Ex. 6.

[6] Matt Hamilton, *After 'Real Housewives' scandal, scathing audit says California fails to stop corrupt lawyers*, Los Angeles Times (April 14, 2022, 6:25 PM PT), **https://www.latimes.com/california /story/ 2022-04-14/california-state-bar-failed-stop-corrupt-attorneys-tom-girardi-audit**, Ex. 5.

[7] Robert J. Hansen, *The California State Bar's Failure to Hold Attorneys Accountable*, The Davis Vanguard (May 29, 2023), https://www.davisvanguard.org/2023/05/the-california-state-bars-failure-to-hold-attorneys-accountable/, Ex. 7.

47.     Plaintiffs are informed and believe and based upon such information and belief allege, that the lawmaking lawyers in the State Legislature reasoned that aging cases in Defendants' backlog would be time-barred under State Bar Act § 6094.5, subd. (a), and that the Legislature would have known that a class action suit to enforce subdivision (a) was imminent given Defendants' selective enforcement of rules and favorable treatment of more than 700 other attorneys during the relevant time period.  Senator Thomas Umberg is Chair of the Senate Judiciary Committee.  He is also an attorney. (SBN: 94345.) Assembly Majority Leader Emeritus Eloise Gomez Reyes, Senator Umberg's colleague and staunch opponent of Defendants' rampant corruption, is also an attorney (SBN: 102707.) (Davis VanGuard, p. 3.) The legislative intent of these lawmaking lawyers is hardly ambiguous.

48.     Plaintiffs are informed and believe and based upon such information and belief allege, that the Legislature determined that Defendants' rule 5.21(C) deliberately allowed 700 privileged offenders to evade prosecution for decades for serious offenses, i.e., Thomas Girardi. Thus, the Legislature did not codify any part of rule 5.21 in statute.

49.     The express language in State Bar Act § 6094.5, subd. (a) does **not** exempt the "backlog" of garden variety complaints from the jurisdictional limits of the **Policy**.  Upon information and belief, the State Legislature is comprised of 20 percent lawyers who undoubtedly know the law. Had the Legislature intended to exempt the backlog from the jurisdictional limits of the **Policy**, it would have said so in the statute. Moreover, Fig. 13 on page 22 of the LAO Report, informs the Legislature of the backlog as of October 28, 2022. The Legislature did not exempt the backlog on December 5, 2022 or on September 20, 2023.

50.     Defendants failed to account for, or even to make mention of, the more then 700 privileged offenders in Defendants' October 28, 2022 proposal.  Nor are the privileged offenders included in Defendants backlog. As Matt Hamilton points out in the LA Times article, *id*., Defendants gave nonpublic confidential letters and warnings to more than 700 attorneys accused of attorney misconduct.  At the same time, Defendants willfully denied Plaintiffs and putative class and subclass members, i.e., the "solo practitioners," of nonpublic confidential letters and warnings that Defendants afforded to its privileged offenders.

- 11 -

51.     Defendants sought to increase membership dues to generate $10.6 million dollars annually to hire 119 employees to manage backlog cases. (LAO Report, Fig. 10.) Pragmatism suggests that the mandatory **Policy** in State Bar Act § 6094.5, subd. (a) is articulated to expunge the backlog, obviating an increase in membership fees and hiring 119 employees at member expense.  Upon information and belief, the mandatory **Policy** saves the Bar's members $10.6 million dollars annually and aligns with Senator Umberg's stated opposition against increasing fees to ameliorate Defendants' gross mismanagement of a corrupted State Bar.  At the May 23, 2023 Joint Judiciary Committee hearing on Defendants corruption, Defendant Leah Wilson, stated: "while new policies have been in place since Thomas Girardi was disbarred, new policies won't change the culture of the State Bar." Wilson alludes to Defendants' culture of corruption. (Davis VanGuard, p. 3 ¶ 4.)

52.     Plaintiffs are informed and believe, and based upon such information and belief allege, that because the Legislature did not exempt the backlog, that the Legislature supported Senator Umberg's statement that his bill, SB 40, is a response to the State Bar's failed operations and that he is personally not in support of an increase in fees. (Id., p. 3 ¶ 6)

53.     On December 5, 2022, Senator Umberg introduced to the State Legislature amendments to the State Bar Act, but no amendments to section 6094.5, subd. (a) nor inclusion of any of Defendants' purported goals.

54.     As of this filing, Defendants have made no effort to comply with, nor have Defendants complied with, State Bar Act § 6094.5, subd. (a).

55.     Defendants had actual knowledge on January 1, 2022 that the State Legislature had enacted the **Policy** in State Bar Act § 6094.5, subd. (a).

56.     Defendants had actual knowledge on January 20, 2022 that the State Legislature had enacted the **Policy** in State Bar Act § 6094.5, subd. (a).

57.     Defendants had actual knowledge on April 4, 2022 that the State Legislature had enacted the **Policy** in State Bar Act § 6094.5, subd. (a).

58.     Defendants had actual knowledge on July 5, 2022, prior to filing a Notice of Disciplinary Charges against putative subclass member, Joseph L. Dunn, on complaints

- 12 -

1  alleging attorney misconduct received by Defendants on July 31, 2014,  August 29, 2014, and

2  May 4, 2017, that the State Legislature had enacted the **Policy** in State Bar Act § 6094.5,

3  subd. (a) that barred the proceedings. (See State Bar v. Dunn, Case No. SBC-22-O-30655.)

4      59.    Defendants had actual knowledge on October 28, 2022 that the State

5  Legislature had enacted the **Policy** in State Bar Act § 6094.5, subd. (a).

6      60.    Defendants had actual knowledge on March 16, 2023, prior to filing a Notice

7  of Disciplinary Charges against Plaintiffs, on complaints alleging attorney misconduct

8  received by Defendants on December 29, 2020, February 13, 2021, and February 2, 2022,

9  that the State Legislature had enacted the **Policy** in State Bar Act § 6094.5, subd. (a) that

10 barred the proceedings.  (See State Bar v. Krause, Case No. SBC-23-O-30409.)

11     61.    Defendants had actual knowledge on May 22, 2023, prior to filing a Notice of

12 Disciplinary Charges against putative subclass member, Renee Michelle Daughetee, on a

13 complaint alleging attorney misconduct received by Defendants on December 20, 2021, that

14 the State Legislature had enacted the **Policy** in State Bar Act § 6094.5, subd. (a) that barred

15 the proceedings. (See State Bar v. Daughetee, Case No. SBC-23-O-30661.)

16     62.    Defendants had actual knowledge at the May 23, 2023 Joint Judiciary

17 Committee hearing led by Senator Umberg, that the State Legislature had enacted the **Policy**

18 in State Bar Act § 6094.5, subd. (a).

19     63.    Defendants had actual knowledge on June 15, 2023, prior to filing a Notice of

20 Disciplinary Charges against Plaintiffs, on a complaint alleging attorney misconduct received

21 by Defendants on July 20, 2022, that the State Legislature had enacted the **Policy** in State

22 Bar Act § 6094.5, subd. (a) that barred the proceedings.  (See State Bar v. Krause, Case No.

23 SBC-23-O-30697.)

24     64.    Defendants illegally prosecute Plaintiffs and putative subclass members.  In

25 the Plaintiffs' cases, Defendants filed Notice of Disciplinary Charges against Plaintiffs on

26 March 16, 2023 (Ex. 8) and June 15, 2023 (Ex. 9.)

27     65.    The utter falsity of the allegations notwithstanding, on December 29, 2020,

28 Defendants received a complaint from the losing attorney Keith M. Banks. (Ex. 10.)

- 13 -

66.     The utter falsity of the allegations notwithstanding, on February 13, 2021, Defendants received a complaint from the losing attorney's unsupervised paralegal Dawn Wigeri van <u>Edema</u>. (Ex. 11.)

67.     The utter falsity of the allegations notwithstanding, on February 2, 2022, Defendants received a complaint from a restrained client William R. <u>Maroni</u>. (Ex. 12.)

68.     The utter falsity of the allegations notwithstanding, on July 20, 2022, Defendants received a complaint from a prosecuted attorney Lawrence T. <u>Ring</u>. (Ex. 13.)

69.     The <u>Banks</u>, <u>Edema</u>, and <u>Maroni</u> complaints constitute the formal charges in the March 16, 2023 NDC as Case No. SBC-23-30409.

70.     The <u>Ring</u> complaint constitutes the formal charges in the June 15, 2023 NDC as Case No. SBC-23-30697.

71.     Defendants failed and refused to file formal charges on the <u>Banks</u>, <u>Edema</u>, <u>Maroni</u>, and <u>Ring</u> complaints within six months after Defendants received the anti-competitive complaints alleging attorney misconduct.

72.     Defendants not only lack standing to prosecute Plaintiffs under the **Policy**, Defendants Judge Chawla and the State Bar Court's want of subject matter jurisdiction cannot be waived.  If the Legislature had intended to waive jurisdictional defects precipitated by the Defendants' failure and refusal to perform the condition in State Bar Act § 6094.5(a), it would have said so in the statute on January 1, 2022 or on December 5, 2022, or on September 20, 2023.

73.     Defendants lack subject matter jurisdiction and personal jurisdiction of the Plaintiffs and the putative class and subclasses, pursuant to the legislative **Policy** in State Bar Act § 6094.5, subd. (a).

74.     Plaintiffs submit the redacted first pages of Exhibits 8-13 to evidence filing dates.  If the Court requires unredacted versions, Plaintiffs request to file under seal.

75.     Defendants are illegally prosecuting [proposed] Class Representatives Ernest Krause and Frederick Mitchell, and putative subclass members Joseph Lawrence Dunn and Renee Michelle Daughetee under color of rule 5.21(A).

- 14 -

76.     No equitable power, real or imagined, authorizes illegal prosecution of Ernest Krause and Frederick Mitchell, Joseph Dunn, or Renee Daughetee under color of rule 5.21. Defendants have no power not to enforce the **Policy** in State Bar Act § 6094.5(a). Failure to enforce the statute violates Cal. Const. art. III, § 3.5.

77.     Assuming, *arguendo*, that Defendants Judge Manjari Chawla and State Bar Court once might have had equitable power to confer standing upon the co-Defendants to file charges more than six months or twelve months after receipt of a complaint alleging attorney misconduct under rule 5.21(A), and before State Bar Act § 6094., subd. (a) became law, Defendants Judge Chawla and State Bar Court do **not** have that power to confer standing anymore, and no equitable power derived from rule 5.21.

78.     The Legislature has not codified any part of rule 5.21 in statute.  None of the language in rule 5.21 comports to the plain English of the **Policy** in State Bar Act § 6094.5, subd. (a). **To wit**: rule 5.21 has no legal effect and is void *ab initio* as a matter of law. Thus, State Bar Act § 6094.5, subd. (a) is controlling law for Defendants' complaint processing times and jurisdictional limit. The Legislature has firmly established the **Policy**.

79.     Pursuant to California Civil Code § 1436, "[a] condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed.  Conditions precedent also applies in litigation involving state government and private parties. In the seminal case <u>Williams v. Horvath</u>, 16 Cal.3d 834 (Cal. 1976), cited here for its mandatory authority on Section 1436 of the Civil Code, the court applied Section 1436 stating: "The 100-day claim provision of section 911.2 is a condition precedent to the maintenance of an action under state law. " (<u>Id</u>. at 842.)  Section 6094.5, subd. (a) is analogous to <u>Williams</u> because the statutory time limits in the **Policy** determines standing, subject matter jurisdiction, and personal jurisdiction of the parties.

80.     The State Bar conceded that it had not performed the condition nor satisfied the second prong of the condition.  Therefore, the State Bar lacks standing.  It is well-established law that "[f]or a lawsuit properly to be allowed to continue, standing must exist at all times until judgment is entered and not just on the date the complaint is filed."

- 15 -

KRAUSE & ASSOCIATES

(<u>Californians For Disability Rights v. Mervyn's, LLC</u> (2006) 39 Cal.4th 223, 232-233.) A "plaintiff may lose standing even where an actual controversy originally existed 'but, by the passage of time or a change in circumstances, ceased to exist.'" (<u>Wolf v. CDS Devco</u> (2010) 185 Cal.App.4th 903, 916-917.)

81.   Defendants lacked standing pursuant to the **<u>Policy</u>**.  Defendants lacked standing from the outset of the prosecutions. Defendants' conduct of prosecuting Plaintiffs and putative class and subclass members constitutes illegal prosecution by state government.

82.   Universally, "California courts will decide only justiciable controversies." <u>Wilson & Wilson v. City Council of Redwood City</u>, 191 Cal.App.4th 1559, 1573 (Cal. Ct. App. 2011); "This means they must not decide issues before they have become ripe and must cease entertaining a case after it has become moot." (<u>Id</u>. at 1573.); Justiciability thus "involves the intertwined criteria of ripeness and standing.  Further, "standing must exist at all times until judgment is entered and not just on the date the complaint is filed." (<u>Californians For Disability Rights v. Mervyn's, LLC</u> (2006) 39 Cal.4th 223, 232-233) (a change in law deprived plaintiff of standing to sue.  The court reversed the lower court's ruling denying defendant's motion to dismiss because plaintiff lacked standing under the new law); Thus, "[a] plaintiff may lose standing even where an actual controversy originally existed 'but, by the passage of time or a change in circumstances ceased to exist.'" (<u>Wolf v. CDS Devco</u> (2010) 185 Cal.App.4th 903, 916-917) (the plaintiff was a director of the defendant corporation at the time he filed suit demanding to inspect the corporate books. The following day, plaintiff was not re-elected to the board.  Plaintiff lost standing to sue for review of corporate records as a director of the corporation.  Dismissal sustained.) Thus, "'[s]tanding' is an aspect of justiciability, which is decided upon the intertwined criteria of standing and ripeness." (<u>3 Witkin</u>, Cal. Procedure, (5th ed. 2008) Actions, § 21, pp. 84-85.) A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (<u>California Water Tele. v. County of Los Angeles</u>, 253 Cal.App.2d 16, 23 (Cal. Ct. App. 1967); But, "ripeness is not a static state" (<u>Consumer Cause, Inc. v. Johnson Johnson</u>, 132 Cal.App.4th

_____

1175, 1183 (Cal. Ct. App. 2005); A true controversy at its inception becomes moot 'if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character.'" (Wilson at 1573.)

83.   There was no justiciable controversy before Hon. Yvette D. Roland and State Bar Court on July 5, 2022.  There was no justiciable controversy before Defendants Judge Manjari Chawla and State Bar Court on March 16, 2023, May 22, 2023, or June 15, 2023.

84.   The Fourteenth Amendment to the U.S. Constitution, similar to the Takings Clause of the Fifth Amendment, states in pertinent part: "nor shall any State deprive any person of… property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const. amend. XIV, § 1.)  As the Court of Appeals divined in Downing v. Municipal Court, 88 Cal.App.2d 345, 350 (Cal. Ct. App. 1948): "The word 'property' has been subjected to innumerable and various definitions. Courts have said that the word 'property' is 'all-embracing so as to include every intangible benefit and prerogative susceptible of possession or disposition… the construction of the word 'property' depends on the context with which it is used and "signifies any valuable right or interest protected by law." [Citations omitted]; "Generally, the subjects of property comprise all valuable rights or interests protected by law… In modern legal systems, property includes practically all valuable rights. The term is indicative and descriptive of every possible interest which a person can have, extends to every species of valuable right or interest, and comprises a vast variety of rights. The right to be protected in a person's privileges belonging to him as an individual or secured to him as a member of the commonwealth is property, as is any valuable interest in or to any object of value that a person may lawfully acquire or hold." Hunt v. Authier, 28 Cal.2d 288, 296 (Cal. 1946).

85.   Plaintiff's license to practice law is his personal property to the exclusion of all others. It signifies a valuable right or interest protected by State Bar Act § 6094.5, subd. (a).

86.   Despite actual knowledge of the **Policy**, Defendants have willfully denied, and will continue to deny, Plaintiffs and the putative classes of the equal protection of State Bar Act § 6094.5, subd. (a).

- 17 -
_____
VERIFIED CIVIL RIGHTS COMPLAINT

87.     Despite actual knowledge of the **Policy**, Defendants act under color of rule 5.21(A), and have subjected, and will continue to subject, or causes to be subjected, Plaintiffs and putative class and subclass members, who are citizens of the United States and within the jurisdiction thereof, to the deprivation of rights, privileges, or immunities secured by the Constitution and laws.

88.     Despite actual knowledge of the **Policy**, Defendants have willfully engaged in, and will continue to engage in, an illegal conspiracy to illegally prosecute Plaintiffs and putative class and subclass members in violation of State Bar Act § 6094.5, subd. (a).

89.     Despite actual knowledge of the **Policy**, Defendants' conduct is willful. Defendants, jointly and severally, individually and in his or her official capacity, have been guilty of oppression, fraud, and malice.

90.     Defendants are the direct and proximate cause of Plaintiffs' injuries and the injuries of putative class and subclass members.  But for Defendants' willful violation of U.S. Const. amend. I; U.S. Const. amend. XIV; Cal. Const. art. I, § 7; Cal. Const. art. III, § 3.5, 42 U.S.C. § 1983, 42 U.S.C. 1985(2), and State Bar Act § 6094.5 (a), neither Plaintiffs nor putative class members would have been injured. Defendants have shown no remorse.

### III.

### JURISDICTION AND VENUE

91.     Plaintiffs re-allege and incorporate by reference paragraphs 9 through 90 as if fully set forth herein, and respectfully:

92.     The Federal District Court has jurisdiction over Plaintiffs' verified civil rights complaint for Defendants' violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(2).

93.     The Federal District Court has jurisdiction over Plaintiffs' verified civil rights complaint on the grounds of Class Action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the Defendants opposing the class have acted or refused to act on grounds that apply generally to the putative class and subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class and subclasses as a whole.

_____
VERIFIED CIVIL RIGHTS COMPLAINT

94.     The Federal District Court has jurisdiction over Plaintiffs' verified civil rights complaint for Defendants' violations of U.S. Const. amend. XIV, Cal. Const. art. I, § 7,   Cal. Const. art. III, § 3.5, and State Bar Act § 6094.5, subd. (a).

95.     Jurisdiction exists based on 28 U.S.C. §§ 1331 and 1343 because Plaintiffs bring this civil rights complaint pursuant to 42 U.S.C. § 1983 and 42 U.S.C § 1985(2), and because the complaint raises questions of federal constitutional law under the Fourteenth Amendment to the United States Constitution.

96.     Jurisdiction further exists on the grounds that 42 U.S.C. § 1983 is an "express exception" to 22 U.S.C. § 2283.

## IV.

### IDENTIFICATION OF PARTIES

97.     Plaintiffs re-allege and incorporate by reference paragraphs 91 through 96 as if fully set forth herein, and respectfully:

98.     Plaintiff, ERNEST KRAUSE, is an attorney licensed by Defendant State Bar of California; has been a member of the State Bar for more than 50 years; is the State Bar Authorized Supervising Attorney under written contract with Defendant State Bar since March 16, 2020 to train Plaintiff Frederick Mitchell to become an attorney. The written contract ERNEST KRAUSE signed with Defendant State Bar is active as of this filing.

99.     Plaintiff, FREDERICK MITCHELL, is a Verified Law Student completing his fourth year of academic legal studies and practical legal training (4L). On March 16, 2020, Defendant State Bar verified Plaintiff Mitchell's Notice of Intent to Study Law in the law office of Plaintiff, attorney Ernest Krause.  Defendant State Bar issued to FREDERICK MITCHELL State Bar Verification No. 00541560 under which FREDERICK MITCHELL completed more than 6,030 hours of supervised and verified academic legal studies and practical legal training equivalent to graduation from a course of study in law at a traditional law school.  Plaintiff will complete four years of academic studies and practical legal training on March 16, 2024, and is qualified to take the California Bar Examination. Plaintiff's Verified Law Student Status is active as of this filing. Plaintiffs are in privy and in privity.

- 19 -

_____
VERIFIED CIVIL RIGHTS COMPLAINT

100.    Defendant, MANJARI CHAWLA, is a judge employed by Defendant State Bar, sued herein individually and in her official capacity of Judge of the State Bar Court.

101.    Defendant, LEAH T. WILSON, is the Executive Director of the State Bar of California, sued herein individually and in her official capacity.

102.    Defendant, RUBEN DURAN, is Chair of the Board of Trustees of the State Bar of California, sued herein individually and in his official capacity.

103.    Defendant, GEORGE S. CARDONA, is Chief Trial Counsel for the State Bar of California, sued herein individually and in his official capacity.

104.    Defendant, RYAN T. CHIN is Trial Counsel for the State Bar of California, sued herein individually and in his official capacity.

105.    Defendant, TIFFANY F. SORENSEN, is Trial Counsel for the State Bar of California, sued herein individually and in her official capacity.

106.    Defendant, MICHAEL NGUYEN, is Trial Counsel for the State Bar of California, sued herein individually and in his official capacity.

107.    Defendant, STATE BAR OF CALIFORNIA, is a public corporation pursuant to Cal. Const. art. VI ¶ 9, and may sue and be sued under State Bar Act § 6001.

108.    Defendant, STATE BAR COURT, is a non court of record created by state statute,  State Bar Act § 6086.5(a) and is an extension of Defendant State Bar of California.

109.    Defendants, STATE BAR STAKEHOLDERS, are undisclosed judges, attorneys, and members of the Public.

110.    Plaintiffs do not know the true identities or capacities of those defendants sued herein as DOES 1 through 1,000, and therefore sues such defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that DOES 1 through 1,000 are Stakeholders in the State Bar of California, members of the Board of Trustees of the State Bar, and other officials within or without the State Bar, and that they are responsible in some manner for the injuries and damages sustained by Plaintiffs and putative class and subclass members as set forth herein. Plaintiffs shall amend this verified complaint to substitute the true names and capacities of such DOE defendants when they are known.

# V.

## APPLICABLE LEGAL STANDARDS

111.    Plaintiffs re-allege and incorporate by reference paragraphs 97 through 110 as if fully set forth herein, respectfully:

112.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states in relevant part: "nor shall any State… deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const. amend. XIV.)

113.    Federal civil rights law 42 U.S.C. § 1983 states in relevant part: "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.. ."

114.    Federal civil rights law 42 U.S.C. § 1985(2) states in relevant part that it is conspiracy to interfere with civil rights "if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

115.    The Equal Protection Clause of the California Constitution states in relevant part: "A person may not be… denied equal protection of the laws" (Cal. Const. art. I §, 7.)

116 .    Under state law, Cal. Const. art. III, § 3.5, states in relevant part that: "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:  [¶ (a)] To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional… ." Plaintiffs are informed and believe and based upon such information and belief allege, that Defendants effectively declared State Bar Act § 6094.5(a) unconstitutional and unenforceable, and refuse to enforce it.

- 21 -

117.    Under state law, State Bar Act § 6094.5, subd (a) states: "It is the goal and policy of the State Bar to ensure that matters are handled competently, accurately, and timely. Until processing goals are established pursuant to subdivision (b) and codified in statute, the goal and policy of the State Bar is to dismiss a complaint, admonish the attorney, or have the Office of Chief Trial Counsel file formal charges within six months after it receives a complaint alleging attorney misconduct. As to complaints designated as complicated matters by the Chief Trial Counsel, it shall be the goal and policy of the State Bar to dismiss a complaint, admonish the attorney or have the Office of Chief Trial Counsel file formal charges within 12 months after it receives a complaint alleging attorney misconduct."

118.  Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL are in privity. As the Ninth Circuit Court of Appeals divined in pertinent part in <u>Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency</u>, 322 F.3d 1064, 1082 (9th Cir. 2003), "'privity' has been found where there is a 'substantial identity' between the party and nonparty, where the nonparty 'had a significant interest and participated in the prior action,' and where the interests of the nonparty and party are 'so closely aligned as to be virtually representative.' Finally, a relationship of privity can be said to exist when there is an 'express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues.'"

119.    Plaintiff ERNEST KRAUSE is Plaintiff FREDERICK MITCHELL'S <u>State Bar Authorized Supervising Attorney</u> under written contract with Defendant STATE BAR since March 16, 2020 to train FREDERICK MITCHELL to become an attorney. Defendants attempt to illegally disbar ERNEST KRAUSE to illegally deprive FREDERICK MITCHELL of all 6,030 hours of supervised and verified academic legal studies and practical legal training accomplished in the past 3.5 years. Defendants' illegal objective is to deny FREDERICK MITCHELL an Admittance Ticket to sit for the California Bar Exam in 2024.  Thus, disbarment of ERNEST KRAUSE is irreparable injury to FREDERICK MITCHELL because the Plaintiffs are in privity since March 16, 2020.

_____
VERIFIED CIVIL RIGHTS COMPLAINT

## FIRST CLAIM FOR RELIEF
### (Violation of U.S. Const. amend. XIV; 42 U.S.C. § 1983; State Bar Act 6094.5(a)) (Equal Protection Clause and Deprivation of Rights Under Color of Law) [State Bar v. Krause, Case No. SBC-23-O-30409]

120.     Plaintiffs re-allege and incorporate by reference paragraphs 111 through 119 as if fully set forth herein, respectfully:

121.     ALL DEFENDANTS, acting under color of rule 5.21(A), subjected Plaintiffs and the putative class and subclasses within Defendants' jurisdiction, to the deprivation of rights, privileges, or immunities in violation of Plaintiffs' civil rights secured to Plaintiffs by U.S. Const. amend. XIV, 42 U.S.C. § 1983, and State Bar Act § 6094.5, subd. (a).

122.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that rule 5.21(A) was void *ab initio*.

123.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that Cal. Evid. Code § 623 barred the March 16, 2023 NDC.

124.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30409.

125.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30409.

126.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

127.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that ALL DEFENDANTS **lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30409.

KRAUSE & ASSOCIATES

128.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that ALL DEFENDANTS were illegally prosecuting Plaintiffs in Case No. SBC-23-O-30409 in willful, wanton, knowing, deliberate, and intentional violation of the **Policy** in State Bar Act § 6094.5, subd. (a).

129.     ALL DEFENDANTS are the direct and proximate cause that Plaintiff ERNEST KRAUSE suffers  a concrete and particularized injury in fact that is actual and imminent of illegal disbarment in violation of the **Policy** in State Bar Act § 6094.5, subd. (a). Plaintiff will suffer additional injuries to include loss of thousands of hours and thirty-eight months of legal services invested in pro bono civil rights litigation and habeas matters in Busher v. Yolo County, Case Nos. JV-2017-567/568. Plaintiff will be disqualified from four years of litigation against complainants Keith Banks and Dawn Wigeri van Edema where Plaintiff prevailed over Banks and his paralegal in two eviction cases and is currently moving for summary judgment in Mitchell v. Rutaganira, Yolo Case No. CV-2021-0248.  Keith Banks is a judge pro tem in Yolo County.  Plaintiff is in imminent danger of disqualification from three and half years of litigation in Richardson v. Select Portfolio Servicing, Inc., U.S. Bankruptcy Court for the Eastern District of California, Adv. No. 20-02166, where Plaintiff prevailed over Defendant State Bar witnesses and attorneys Douglas C. Straus and Tiffany F. Ng on the oldest automatic stay violation in bankruptcy history where Plaintiff ERNEST KRAUSE is seeking an award of $156,060,332.73 for his client.  Plaintiff is in imminent danger of disqualification from LH Real Estate Rentals, LLC, Sacramento County, Case No. 22UD00831, where Plaintiff is prosecuting Defendant State Bar's witness and attorney Lawrence T. Ring for fraudulently inducing Plaintiffs' client, Dominique Robinson, to enter into a confession of judgment without attorney representation resulting in a judgment for more than $12,000 and subsequent eviction.  Plaintiff is prosecuting Dominique Robinson's civil rights action pro bono.  ALL DEFENDANTS are illegally prosecuting Plaintiff for anti-competition ulterior motives to deny Plaintiff his right to zealously advocate for his clients and to deprive Plaintiff of his license to practice law in retaliation for succeeding against privileged law firms, privileged attorneys, and STATE BAR STAKEHOLDERS.

130.     ALL DEFENDANTS are the direct and proximate cause that Plaintiff FREDERICK MITCHELL suffers a concrete and particularized injury in fact that is actual and imminent of vacating 6,030 hours of academic legal studies and practical legal training, preventing FREDERICK MITCHELL from completing legal training on March 16, 2024, and denying him an Admittance Ticket to sit for the California Bar Examination in 2024, in violation of the **Policy** in State Bar Act § 6094.5, subd. (a).  Separately from the foregoing, FREDERICK MITCHELL sued Defendant STATE BAR in Mitchell v. State Bar, CA Supreme Court, Case No. S278784.  Defendants refused to answer the complaint and tendered written default on February 28, 2023. (Notice of Intent, Ex. 14.)  Under Evidence Code § 623 ALL DEFENDANTS equitable estoppel bars ALL DEFENDANTS from prosecuting the forfeited claims in State Bar Court. For the anti-competitive reasons stated above, ALL DEFENDANTS illegally prosecute Plaintiff FREDERICK MITCHELL to deny Plaintiff practical legal training provided by of his State Bar Authorized Supervising Attorney, and to deny Plaintiff equal educational opportunity in retaliation for succeeding against privileged law firms, privileged attorneys, and STATE BAR STAKEHOLDERS.

131.     At all times relevant, ALL DEFENDANTS acted with oppression, fraud, and malice to illegally prosecute Plaintiffs in Case No. SBC-23-O-30409 in violation of Plaintiffs' civil rights secured to Plaintiffs by U.S. Const. amend. XIV and 42 U.S.C. § 1983, and the **Policy** in State Bar Act § 6094.5, subd. (a).

132.     Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL, on behalf of themselves and the putative class and subclass members, ask the Hon. Court for Prohibitory Injunctive Relief under Fed. R. Civ. P. 65(a) to enjoin ALL DEFENDANTS, individually and in his or her official capacity, from engaging in the conduct and acts complained of .

133.     Plaintiffs, as proposed Class Counsel, seek an award of reasonable attorney's fees as part of the costs under 42 U.S.C. § 1988(b) as necessary to enforce the rights of the putative classes to the equal protection of the laws that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class and subclasses as a whole.

KRAUSE & ASSOCIATES

## SECOND CLAIM FOR RELIEF
**(Violation of U.S. Const. amend. XIV; 42 U.S.C. § 1983; State Bar Act 6094.5(a))**
**(Equal Protection Clause and Deprivation of Rights Under Color of Law)**
**[State Bar v. Krause, Case No. SBC-23-O-30697]**

134.    Plaintiffs re-allege and incorporate by reference paragraphs 120 through 133 as if fully set forth herein, respectfully:

135    ALL DEFENDANTS, acting under color of rule 5.21(A), subjected Plaintiffs and the putative class and subclasses within Defendants' jurisdiction, to the deprivation of rights, privileges, or immunities in violation of Plaintiffs' civil rights secured to Plaintiffs by U.S. Const. amend. XIV, 42 U.S.C. § 1983, and State Bar Act § 6094.5, subd. (a).

136.    Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that rule 5.21(A) was void *ab initio*.

137.    Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that Cal. Evid. Code § 623 barred the June 15, 2023 NDC.

138.    Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30697.

139.    Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 16, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30697.

140.    Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

141.    Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that ALL DEFENDANTS **lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30697.

VERIFIED CIVIL RIGHTS COMPLAINT

142.    Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that ALL DEFENDANTS were illegally prosecuting Plaintiffs in Case No. SBC-23-O-30697 in willful, wanton, knowing, deliberate, and intentional violation of the **Policy** in State Bar Act § 6094.5, subd. (a).

143.    Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

144.    Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

145.    At all times relevant, ALL DEFENDANTS acted with oppression, fraud, and malice to illegally prosecute Plaintiffs in Case No. SBC-23-O-30697 in violation of Plaintiffs' civil rights secured to Plaintiffs by U.S. Const. amend. XIV and 42 U.S.C. § 1983, and the **Policy** in State Bar Act § 6094.5, subd. (a).

146.    Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL, on behalf of themselves and the putative class and subclass members, ask the Hon. Court for Prohibitory Injunctive Relief under Fed. R. Civ. P. 65(a) to enjoin ALL DEFENDANTS, individually and in his or her official capacity, from engaging in the conduct and acts complained of.

147.    Plaintiffs, as proposed Class Counsel, seek an award of reasonable attorney's fees as part of the costs under 42 U.S.C. § 1988(b) as necessary to enforce the rights of the putative classes to the equal protection of the laws that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class and subclasses as a whole.

----oo0oo----

### THIRD CLAIM FOR RELIEF
**(Violation of U.S. Const. amend. XIV; 42 U.S.C. § 1985(2); State Bar Act 6094.5(a))**
**(Equal Protection Clause and Conspiracy to Interfere With Civil Rights)**
**[State Bar v. Krause, Case No. SBC-23-O-30409]**

148.    Plaintiffs re-allege and incorporate by reference paragraphs 134 through 147 as if fully set forth herein, respectfully:

*continued...*

149.    ALL DEFENDANTS conspired with each other for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of California, with intent to deny Plaintiffs and putative classes and subclasses of equal protection of the laws, or to injure Plaintiff and putative classes and subclasses or their property for lawfully enforcing, or attempting to enforce, the right of Plaintiffs and putative classes and subclasses, to the equal protection of the laws, in violation of U.S. Const. amend. XIV and 42 U.S.C. § 1985(2), and State Bar Act § 6094.5, subd. (a).  At all times relevant, each co-conspirator had actual knowledge of the acts of the other co-conspirator in furtherance of the conspiracy.

150.    On May 15, 2023 Plaintiffs filed a Motion to Dismiss the charges. (Motion to Dismiss, Caption Page, Ex. 15.)  Defendants response was due May 29, 2023 pursuant to rules 5.28(b) and 5.45(B).

151.    On May 30, 2023, Defendant STATE BAR and RYAN T. CHIN filed a late response to Plaintiffs' motion to dismiss after Plaintiffs filed a motion to strike the unauthorized response on June 6, 2023.  Defendants served the response to Plaintiffs' motion to dismiss on May 30, 2023 and simultaneously filed the response with Defendant STATE BAR COURT. (Response Caption Page and Proof of Service, May 30, 2023 Ex. 16.)

152.    On June 6, 2023, Defendant MANJARI CHAWLA, acting individually and as Judge of the State Bar Court, conspired with ALL DEFENDANTS to ante-date, and did ante-date, Defendants' May 30, 2023 responsive pleading to May 29, 2023 to afford Defendant STATE BAR illegal standing to illegally prosecute Plaintiffs. (Order, Ex. 17.)

153.    Defendant Judge MANJARI CHAWLA stated: "Respondent's motion to dismiss was filed and served electronically on May 15, 2023. The Office of Chief Trial Counsel filed a response on May 29," which Judge CHAWLA knew was a materially false and fraudulent statement in all respects at that time Judge CHAWLA made the statement in a written Order. (Id., p. 1 ¶ 1.)

154.    On July 10, 2023, Defendant MANJARI CHAWLA, acting individually and as Judge of the State Bar Court, and in conspiracy with ALL DEFENDANTS, held an ex parte

KRAUSE & ASSOCIATES

status conference with Defendants STATE BAR and RYAN T. CHIN.  Upon information and belief, the State Bar Court electronically blocked Plaintiffs from speaking at the hearing or participating in the case. (Email to Judge Chawla's Clerk, Jul. 11, 2023, Ex. 18.)

155.    During the ex parte conversation on July 10th, Defendant Judge MANJARI CHAWLA and co-conspirator RYAN T. CHIN agreed to waive written response to Plaintiffs' Motion for Judgment Nunc Pro Tunc filed on June 21, 2021. Written response is mandatory under rule 5.45(b).

156.    Plaintiffs' nunc pro tunc motion specifically argued for reversal of Judge CHAWLA'S June 6, 2023 order on the grounds of felony ante-dating of Defendants' pleadings by the judge, and the judge allying with the prosecution in violation of U.S. Const. amend. XIV.

157.    Upon information and belief, Judge CHAWLA had a "meeting of the minds" with co-conspirators GEORGE S. CARDONA, RYAN T. CHIN, TIFFANY F. SORENSEN, MICHAEL NGUYEN, and STATE BAR to agree to the ante-dating of Defendants' pleadings, which is corroborated by Judge CHAWLA'S June 6, 2023 order.

158.    Judge CHAWLA, acting individually and in concert with ALL DEFENDANTS, made an agreement with Defendants to ante-date Defendants' pleadings, thereby affording Defendants illegal standing to illegally prosecute Plaintiffs.

159.    Pursuant to Penal Code § 132 in relevant part: "Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been… ante-dated, is guilty of felony."  Defendant MANJARI CHAWLA, acting individually, as Judge of the State Bar Court, and in conspiracy with ALL DEFENDANTS, ante-dated the filing date of Defendants responsive pleadings on June 6, 2023 in violation of U.S. Const. amend. XIV and 42 U.S.C. § 1985(2), and State Bar Act § 6094.5, subd. (a), to afford the co-conspirators illegal standing to illegally prosecute Plaintiffs.

*continued…*

160.    Pursuant to Penal Code § 96.5(a) in relevant part: "Every judicial officer… who commits any act that he or she knows perverts or obstructs justice, is guilty of a public offense… ."  Defendant MANJARI CHAWLA, acting individually, as Judge of the State Bar Court, and in conspiracy with ALL DEFENDANTS, obstructed justice in violation of U.S. Const. amend. XIV and 42 U.S.C. § 1985(2), and State Bar Act § 6094.5, subd. (a) to afford the co-conspirators illegal standing to illegally prosecute Plaintiffs.

161.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that rule 5.21(A) was void *ab initio*.

162.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that Cal. Evid. Code § 623 barred the March 16, 2023 NDC.

163.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, co-conspirator MANJARI CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30409.

164.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, co-conspirator MANJARI CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30409.

165.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, co-conspirator MANJARI CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

166.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that ALL **DEFENDANTS lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30409.

*continued…*

- 30 -

_____

167.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that ALL DEFENDANTS were illegally prosecuting Plaintiffs in Case No. SBC-23-O-30409 in willful, wanton, knowing, deliberate, and intentional violation of the **Policy** in State Bar Act § 6094.5, subd. (a).

168.    Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

169.    Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

170.    At all times relevant, ALL DEFENDANTS conspired with each other to achieve the objectives of the conspiracy and acted with oppression, fraud, and malice to illegally prosecute Plaintiffs in Case No. SBC-23-O-30409 in violation of Plaintiffs' civil rights secured by U.S. Const. amend. XIV and 42 U.S.C. § 1985(2), and the **Policy** in State Bar Act § 6094.5, subd. (a).

171.    Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL, on behalf of themselves and the putative class and subclass members, ask the Hon. Court for Prohibitory Injunctive Relief under Fed. R. Civ. P. 65(a) to enjoin ALL DEFENDANTS, individually and in his or her official capacity, from engaging in the conduct and acts complained of.

172.    Plaintiffs, as proposed Class Counsel, seek an award of reasonable attorney's fees as part of the costs under 42 U.S.C. § 1988(b) as necessary to enforce the rights of the putative classes to the equal protection of the laws that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class and subclasses as a whole.

----oo0oo----

**FOURTH CLAIM FOR RELIEF**
**(Violation of U.S. Const. amend. XIV; 42 U.S.C. § 1985(2); State Bar Act 6094.5(a))**
**(Equal Protection Clause and Conspiracy to Interfere With Civil Rights)**
**[State Bar v. Krause, Case No. SBC-23-O-30697]**

173.    Plaintiffs re-allege and incorporate by reference paragraphs 148 through 172 as if fully set forth herein, respectfully:

- 31 -

174.    ALL DEFENDANTS conspired with each other for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of California, with intent to deny Plaintiffs and putative classes and subclasses of equal protection of the laws, or to injure Plaintiff and putative classes and subclasses or their property for lawfully enforcing, or attempting to enforce, the right of Plaintiffs and putative classes and subclasses, to the equal protection of the laws, in violation of U.S. Const. amend. XIV and 42 U.S.C. § 1985(2), and State Bar Act § 6094.5, subd. (a).  At all times relevant, each co-conspirator had actual knowledge of the acts of the other co-conspirator in furtherance of the conspiracy.

175.    Plaintiffs re-allege and incorporate by reference paragraph 150 as if fully set forth herein.

176.    Plaintiffs re-allege and incorporate by reference paragraph 151 as if fully set forth herein.

177.    Plaintiffs re-allege and incorporate by reference paragraph 152 as if fully set forth herein.

178.    Plaintiffs re-allege and incorporate by reference paragraph 153 as if fully set forth herein.

179.    Plaintiffs re-allege and incorporate by reference paragraph 154 as if fully set forth herein.

180.    Plaintiffs re-allege and incorporate by reference paragraph 155 as if fully set forth herein.

181.    Plaintiffs re-allege and incorporate by reference paragraph 156 as if fully set forth herein.

182.    Plaintiffs re-allege and incorporate by reference paragraph 157 as if fully set forth herein.

183.    Plaintiffs re-allege and incorporate by reference paragraph 158 as if fully set forth herein.

*continued...*

VERIFIED CIVIL RIGHTS COMPLAINT

184.    Plaintiffs re-allege and incorporate by reference paragraph 159 as if fully set forth herein.

185.    Plaintiffs re-allege and incorporate by reference paragraph 160 as if fully set forth herein.

186.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that rule 5.21(A) was void *ab initio*.

187.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that Cal. Evid. Code § 623 barred the June 15, 2023 NDC.

188.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, co-conspirator MANJARI CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30697.

189.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, co-conspirator MANJARI CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30697.

190.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, co-conspirator MANJARI CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

191.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that ALL DEFENDANTS **lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30697.

192.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that ALL DEFENDANTS were illegally prosecuting Plaintiffs in Case No. SBC-23-O-30697 in willful, wanton, knowing, deliberate, and intentional violation of the **__Policy__** in State Bar Act § 6094.5, subd. (a).

*continued...*

193.    Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

194.    Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

195.    At all times relevant, ALL DEFENDANTS conspired with each other to achieve the objectives of the conspiracy and acted with oppression, fraud, and malice to illegally prosecute Plaintiffs in Case No. SBC-23-O-30697 in violation of Plaintiffs' civil rights secured by U.S. Const. amend. XIV and 42 U.S.C. § 1985(2), and the **Policy** in State Bar Act § 6094.5, subd. (a).

196.    Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL, on behalf of themselves and the putative class and subclass members, ask the Hon. Court for Prohibitory Injunctive Relief under Fed. R. Civ. P. 65(a) to enjoin ALL DEFENDANTS, individually and in his or her official capacity, from engaging in the conduct and acts complained of.

197.    Plaintiffs, as proposed Class Counsel, seek an award of reasonable attorney's fees as part of the costs under 42 U.S.C. § 1988(b) as necessary to enforce the rights of the putative classes to the equal protection of the laws that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class and subclasses as a whole.

----oo0oo----

**FIFTH CLAIM FOR RELIEF**
**(Violation of Cal. Const. art. I, § 7; 42 U.S.C. § 1983; State Bar Act 6094.5(a))**
**(Equal Protection Clause and Deprivation of Rights Under Color of Law)**
**[State Bar v. Krause, Case No. SBC-23-O-30409]**

198.    Plaintiffs re-allege and incorporate by reference paragraphs 173 through 197 as if fully set forth herein, respectfully:

199.    ALL DEFENDANTS, acting under color of rule 5.21(A), subjected Plaintiffs and the putative class and subclasses within Defendants' jurisdiction, to the deprivation of rights, privileges, or immunities in violation of Plaintiffs' civil rights secured to Plaintiffs by Cal. Const. art. I, § 7, 42 U.S.C. § 1983, and State Bar Act § 6094.5, subd. (a).

- 34 -

KRAUSE & ASSOCIATES

200.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that rule 5.21(A) was void *ab initio*.

201.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that Cal. Evid. Code § 623 barred the March 16, 2023 NDC.

202.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30409.

203.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30409.

204.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

205.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that ALL DEFENDANTS **lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30409.

206.     Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that ALL DEFENDANTS were illegally prosecuting Plaintiffs in Case No. SBC-23-O-30409 in willful, wanton, knowing, deliberate, and intentional violation of the **Policy** in State Bar Act § 6094.5, subd. (a).

207.     Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

208.     Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

*continued...*

KRAUSE & ASSOCIATES

209.    At all times relevant, ALL DEFENDANTS acted with oppression, fraud, and malice to illegally prosecute Plaintiffs in Case No. SBC-23-O-30409 in violation of Plaintiffs' civil rights secured to Plaintiffs by Cal. Const. art. I, § 7 and 42 U.S.C. § 1983, and the **Policy** in State Bar Act § 6094.5, subd. (a).

210.    Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL, on behalf of themselves and the putative class and subclass members, ask the Hon. Court for Prohibitory Injunctive Relief under Fed. R. Civ. P. 65(a) to enjoin ALL DEFENDANTS, individually and in his or her official capacity, from engaging in the conduct and acts complained of.

211.    Plaintiffs, as proposed Class Counsel, seek an award of reasonable attorney's fees as part of the costs under 42 U.S.C. § 1988(b) as necessary to enforce the rights of the putative classes to the equal protection of the laws that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class and subclasses as a whole.

----oo0oo----

### SIXTH CLAIM FOR RELIEF
**(Violation of Cal. Const. art. I, § 7; 42 U.S.C. § 1983; State Bar Act 6094.5(a))**
**(Equal Protection Clause and Deprivation of Rights Under Color of Law)**
**[State Bar v. Krause, Case No. SBC-23-O-30697]**

212.    Plaintiffs re-allege and incorporate by reference paragraphs 198 through 211 as if fully set forth herein, respectfully:

213.    ALL DEFENDANTS, acting under color of rule 5.21(A), subjected Plaintiffs and the putative class and subclasses within Defendants' jurisdiction, to the deprivation of rights, privileges, or immunities in violation of Plaintiffs' civil rights secured to Plaintiffs by Cal. Const. art. I, § 7, 42 U.S.C. § 1983, and State Bar Act § 6094.5, subd. (a).

214.    Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that rule 5.21(A) was void *ab initio*.

215.    Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that Cal. Evid. Code § 623 barred the June 15, 2023 NDC.

*continued...*

- 36 -

216. Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30697.

217. Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 16, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30697.

218. Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

219. Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that ALL DEFENDANTS **lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30697.

220. Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that ALL DEFENDANTS were illegally prosecuting Plaintiffs in Case No. SBC-23-O-30697 in willful, wanton, knowing, deliberate, and intentional violation of the **<u>Policy</u>** in State Bar Act § 6094.5, subd. (a).

221. Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

222. Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

223. At all times relevant, ALL DEFENDANTS acted with oppression, fraud, and malice to illegally prosecute Plaintiffs in Case No. SBC-23-O-30697 in violation of Plaintiffs' civil rights secured to Plaintiffs by Cal. Const. art. I, § 7 and 42 U.S.C. § 1983, and the **Policy** in State Bar Act § 6094.5, subd. (a).

*continued...*

224.    Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL, on behalf of themselves and the putative class and subclass members, ask the Hon. Court for <u>Prohibitory Injunctive Relief</u> under Fed. R. Civ. P. 65(a) to enjoin ALL DEFENDANTS, individually and in his or her official capacity, from engaging in the conduct and acts complained of.

225.    Plaintiffs, as proposed Class Counsel, seek an award of reasonable attorney's fees as part of the costs under 42 U.S.C. § 1988(b) as necessary to enforce the rights of the putative classes to the equal protection of the laws that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class and subclasses as a whole.

----oo0oo----

### SEVENTH CLAIM FOR RELIEF
**(Violation of Cal. Const. art. I, § 7; 42 U.S.C. § 1985(2); State Bar Act 6094.5(a))**
**(Equal Protection Clause and Conspiracy to Interfere With Civil Rights)**
**[State Bar v. Krause, Case No. SBC-23-O-30409]**

226.    Plaintiffs re-allege and incorporate by reference paragraphs 212 through 225 as if fully set forth herein, respectfully:

227.    ALL DEFENDANTS conspired with each other for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of California, with intent to deny Plaintiffs and putative classes and subclasses of equal protection of the laws, or to injure Plaintiff and putative classes and subclasses or their property for lawfully enforcing, or attempting to enforce, the right of Plaintiffs and putative classes and subclasses, to the equal protection of laws, in violation of Cal. Const. art. I, § 7 and 42 U.S.C. § 1985(2), and State Bar Act § 6094.5, subd. (a).  At all times relevant, each co-conspirator had actual knowledge of the acts of the other co-conspirator in furtherance of the conspiracy.

228.    Plaintiffs re-allege and incorporate by reference paragraph 150 as if fully set forth herein.

229.    Plaintiffs re-allege and incorporate by reference paragraph 151 as if fully set forth herein.

230.    Plaintiffs re-allege and incorporate by reference paragraph 152 as if fully set forth herein.

231.    Plaintiffs re-allege and incorporate by reference paragraph 153 as if fully set forth herein.

232.    Plaintiffs re-allege and incorporate by reference paragraph 154 as if fully set forth herein.

233.    Plaintiffs re-allege and incorporate by reference paragraph 155 as if fully set forth herein.

234.    Plaintiffs re-allege and incorporate by reference paragraph 156 as if fully set forth herein.

235.    Plaintiffs re-allege and incorporate by reference paragraph 157 as if fully set forth herein.

236.    Plaintiffs re-allege and incorporate by reference paragraph 158 as if fully set forth herein.

237.    Plaintiffs re-allege and incorporate by reference paragraph 159 as if fully set forth herein.

238.    Plaintiffs re-allege and incorporate by reference paragraph 160 as if fully set forth herein.

239.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that rule 5.21(A) was void *ab initio*.

240.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that Cal. Evid. Code § 623 barred the March 16, 2023 NDC.

241.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, co-conspirator MANJARI CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30409.

242.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, co-conspirator MANJARI

CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30409.

243.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, co-conspirator MANJARI CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

244.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that ALL **DEFENDANTS lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30409.

245.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that ALL DEFENDANTS were illegally prosecuting Plaintiffs in Case No. SBC-23-O-30409 in willful, wanton, knowing, deliberate, and intentional violation of the **<u>Policy</u>** in State Bar Act § 6094.5, subd. (a).

246.    Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

247.    Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

248.    At all times relevant, ALL DEFENDANTS conspired with each other to achieve the objectives of the conspiracy and acted with oppression, fraud, and malice to illegally prosecute Plaintiffs in Case No. SBC-23-O-30409 in violation of Plaintiffs' civil rights secured by Cal. Const. art. I, § 7 and 42 U.S.C. § 1985(2), and the **<u>Policy</u>** in State Bar Act § 6094.5, subd. (a).

249.    Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL, on behalf of themselves and the putative class and subclass members, ask the Hon. Court for <u>Prohibitory Injunctive Relief</u> under Fed. R. Civ. P. 65(a) to enjoin ALL DEFENDANTS, individually and in his or her official capacity, from engaging in the conduct and acts complained of herein.

250.    Plaintiffs, as proposed Class Counsel, seek an award of reasonable attorney's fees as part of the costs under 42 U.S.C. § 1988(b) as necessary to enforce the rights of the putative classes to the equal protection of the laws that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class and subclasses as a whole.

----oo0oo----

## EIGHTH CLAIM FOR RELIEF
**(Violation of Cal. Const. art. I, § 7; 42 U.S.C. § 1985(2); State Bar Act 6094.5(a))**
**(Equal Protection Clause and Conspiracy to Interfere With Civil Rights)**
**[State Bar v. Krause, Case No. SBC-23-O-30697]**

251.    Plaintiffs re-allege and incorporate by reference paragraphs 226 through 250 as if fully set forth herein, respectfully:

252.    ALL DEFENDANTS conspired with each other for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of California, with intent to deny Plaintiffs and putative classes and subclasses of equal protection of the laws, or to injure Plaintiff and putative classes and subclasses or their property for lawfully enforcing, or attempting to enforce, the right of Plaintiffs and putative classes and subclasses, to the equal protection of the laws, in violation of U.S. Const. amend. XIV and 42 U.S.C. § 1985(2), and State Bar Act § 6094.5, subd. (a).  At all times relevant, each co-conspirator had actual knowledge of the acts of the other co-conspirator in furtherance of the conspiracy.

253.    Plaintiffs re-allege and incorporate by reference paragraph 150 as if fully set forth herein.

254.    Plaintiffs re-allege and incorporate by reference paragraph 151 as if fully set forth herein.

255.    Plaintiffs re-allege and incorporate by reference paragraph 152 as if fully set forth herein.

256.    Plaintiffs re-allege and incorporate by reference paragraph 153 as if fully set forth herein.

VERIFIED CIVIL RIGHTS COMPLAINT

257.    Plaintiffs re-allege and incorporate by reference paragraph 154 as if fully set forth herein.

258.    Plaintiffs re-allege and incorporate by reference paragraph 155 as if fully set forth herein.

259.    Plaintiffs re-allege and incorporate by reference paragraph 156 as if fully set forth herein.

260.    Plaintiffs re-allege and incorporate by reference paragraph 157 as if fully set forth herein.

261.    Plaintiffs re-allege and incorporate by reference paragraph 158 as if fully set forth herein.

262.    Plaintiffs re-allege and incorporate by reference paragraph 159 as if fully set forth herein.

263.    Plaintiffs re-allege and incorporate by reference paragraph 160 as if fully set forth herein.

264.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that rule 5.21(A) was void *ab initio*.

265.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that Cal. Evid. Code § 623 barred the June 15, 2023 NDC.

266.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, co-conspirator MANJARI CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30697.

267.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, co-conspirator MANJARI CHAWLA, individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30697.

268.    ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, co-conspirator MANJARI CHAWLA,

- 42 -

individually and as Judge of the State Bar Court, and co-conspirator STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

269.   ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that ALL DEFENDANTS **lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30697.

270.   ALL DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that ALL DEFENDANTS were illegally prosecuting Plaintiffs in Case No. SBC-23-O-30697 in willful, wanton, knowing, deliberate, and intentional violation of the **Policy** in State Bar Act § 6094.5, subd. (a).

271.   Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

272.   Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

273.   At all times relevant, ALL DEFENDANTS conspired with each other to achieve the objectives of the conspiracy and acted with oppression, fraud, and malice to illegally prosecute Plaintiffs in Case No. SBC-23-O-30697 in violation of Plaintiffs' civil rights secured by Cal. Const. art. I, § 7, and 42 U.S.C. § 1985(2), and the **Policy** in State Bar Act § 6094.5, subd. (a).

274.   Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL, on behalf of themselves and the putative class and subclass members, ask the Hon. Court for Prohibitory Injunctive Relief under Fed. R. Civ. P. 65(a) to enjoin ALL DEFENDANTS, individually and in his or her official capacity, from engaging in the conduct and acts complained of herein.

275.   Plaintiffs, as proposed Class Counsel, seek an award of reasonable attorney's fees as part of the costs under 42 U.S.C. § 1988(b) as necessary to enforce the rights of the putative classes to the equal protection of the laws that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class and subclasses as a whole.

**NINTH CLAIM FOR RELIEF**
**ELDER ABUSE (ALL DEFENDANTS)**
**(Violation of U.S. Const. amend. XIV; 42 U.S.C. § 1983; State Bar Act 6094.5(a))**
**(Equal Protection Clause and Deprivation of Rights Under Color of Law)**
**[State Bar v. Krause, Case No. SBC-23-O-30409]**

276.    Plaintiffs re-allege and incorporate by reference paragraphs 251 through 275 as if fully set forth herein, respectfully:

277.    ALL DEFENDANTS, acting under color of rule 5.21(A), subjected Plaintiff ERNEST KRAUSE within Defendants' jurisdiction, to the deprivation of rights, privileges, or immunities in violation of Plaintiff's civil rights secured to Plaintiff ERNEST KRAUSE by U.S. Const. amend. XIV, 42 U.S.C. § 1983, State Bar Act § 6094.5, subd. (a), and Welfare and Institutions Code § 15610.53.

278.    At all relevant times, from March 16, 2023 to October 10, 2023, Plaintiff, ERNEST KRAUSE, was 75 years old and an "Elder" as that term is defined in Welfare & Institutions Code § 15610.27.

279.    At all relevant times, Plaintiff, ERNEST KRAUSE was undergoing dialysis treatments three times per week – Monday, Wednesday, and Friday.

280.    During the relevant time, Plaintiff ERNEST KRAUSE had surgery to remove a kidney.

281.    During the relevant time, Plaintiff ERNEST KRAUSE had surgery to install a "port" in his chest for his dialysis treatments.

282.    During the relevant time, Plaintiff ERNEST KRAUSE had surgery to install a "port" in his arm for his dialysis treatments.

283.    During the relevant time, Plaintiff ERNEST KRAUSE was taking prescription anti-depressant medication.

284.    During the relevant time, Plaintiff ERNEST KRAUSE was suffering from severe and chronic asthma attacks and could not breath, requiring hospitalization.

285.    During the relevant time, Plaintiff ERNEST KRAUSE was suffering from severe low blood pressure.

286. At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing that on March 16, 2023, rule 5.21(A) was void *ab initio*.

287. At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing that California Evidence Code § 623 barred the March 16, 2023 NDC.

288. At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30409.

289. At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30409.

290. At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

291. At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, ALL DEFENDANTS **lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30409.

292. At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, ALL DEFENDANTS were illegally prosecuting Plaintiff KRAUSE in Case No. SBC-23-O-30409 in willful, wanton, knowing, deliberate, and intentional violation of **Policy** in State Bar Act § 6094.5, subd. (a).

293. Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

- 45 -

294.    Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

295.    Plaintiff, ERNEST KRAUSE, suffers fear, agitation, confusion, severe depression, and other forms of serious emotional distress brought on by ALL DEFENDANTS' willful acts of intimidating behavior, threats, harassment, deceptive acts, false or misleading statements made with malicious intent to agitate, confuse, and frighten Plaintiff, and ALL DEFENDANTS inflicted mental suffering on Plaintiff and caused Plaintiff ERNEST KRAUSE to suffer severe depression and serious emotional distress

296.    An example of Defendants' elder abuse in support of illegal prosecution that violates the **Policy** in State Bar Act § 6094.5, subd. (a), Defendant Judge MANJARI CHAWLA willfully denied Plaintiff his constitutional right to counsel of his choice in the illegal proceedings, a right secured to Plaintiff by the Sixth Amendment to the United States Constitution, for the unlawful purpose to inflict mental suffering on ERNEST KRAUSE.

297.    Another example of the elder abuse, is that Defendants Judge MANJARI CHAWLA, STATE BAR OF CALIFORNIA, GEORGE S. CARDONA, RYAN T. CHIN, TIFFANY F. SORENSEN, AND MICHAEL NGUYEN conspired to deprive Plaintiff of his rights secured by the Fifth Amendment to the United States Constitution and State Bar Act § 6079.4, for the unlawful purpose to inflict mental suffering on ERNEST KRAUSE.

298.    ALL DEFENDANTS willfully, wantonly, knowingly, deliberately, intentionally, oppressively, fraudulently, maliciously, and illegally inflicted mental suffering, as that term is defined in Welfare & Institutions Code § 15610.53, on Plaintiff ERNEST KRAUSE

299.    Pursuant to in Welfare & Institutions Code § 15610, the definition of "Mental Suffering" governs its construction as a separate and distinct cause of action for Elder Abuse.

300.    ALL DEFENDANTS acted with reckless disregard of the probability that ERNEST KRAUSE would suffer emotional distress from DEFENDANTS' illegal prosecution and wanton violation of Plaintiff ERNEST KRAUSE' civil rights secured to

VERIFIED CIVIL RIGHTS COMPLAINT

Plaintiff by U.S. Const. amend. XIV, 42 U.S.C. § 1983, Cal. Welf. & Inst. Code § 15610.53, and the **Policy** in State Bar Act § 6094.5, subd. (a).

301.    Plaintiff ERNEST KRAUSE suffers severe emotional distress and that ALL DEFENDANTS' conduct was a substantial factor in causing ERNEST KRAUSE' severe emotional distress.

302.    Due substantially to ALL DEFENDANTS' reckless disregard of the probability that ERNEST KRAUSE would suffer emotional distress as a result of ALL DEFENDANTS' conduct, Plaintiff ERNEST KRAUSE has been harmed, to include, but is not limited to damages as attorney's fees, costs, mental and physical anguish, loss of income, loss of reputation, other harms to be determined at trial, and loss of enjoyment of life.

303.    The conduct of ALL DEFENDANTS is outrageous.

304.    ALL DEFENDANTS have been guilty of recklessness, oppression, fraud, and malice in the commission of the elder abuse.

305.    In committing the acts and conduct described above, ALL DEFENDANTS, jointly and severally, individually and in his or her official capacity, acted with recklessness, oppression, fraud, and malice, and ERNEST KRAUSE is therefore entitled to an award of compensatory damages, exemplary or punitive damages, and attorney's fees pursuant to Welfare and Institutions Code § 15657 and Civil Code § 3294, and treble damages pursuant to Civil Code § 3345 for unfair deceptive acts or practices.

306.    Plaintiff, ERNEST KRAUSE, made formal demand to ALL DEFENDANTS to cease conduct constituting elder abuse, but to no avail.  None of the DEFENDANTS show remorse.  Nor did any of the DEFENDANTS cease the illegal elder abuse.

307.    Plaintiff, ERNEST KRAUSE, therefore asks the jury for judgment in his favor for ELDER ABUSE against ALL DEFENDANTS and that DEFENDANTS take nothing from this action.

*continued...*

KRAUSE & ASSOCIATES

- 47 -

## TENTH CLAIM FOR RELIEF
### ELDER ABUSE (ALL DEFENDANTS)
**(Violation of Cal. Const. art. I, § 7; 42 U.S.C. § 1983; State Bar Act 6094.5(a))**
**(Equal Protection Clause and Deprivation of Rights Under Color of Law)**
**[State Bar v. Krause, Case No. SBC-23-O-30409]**

308.    Plaintiffs re-allege and incorporate by reference paragraphs 276 through 307 as if fully set forth herein, respectfully:

309.    ALL DEFENDANTS, acting under color of rule 5.21(A), subjected Plaintiff ERNEST KRAUSE within Defendants' jurisdiction, to the deprivation of rights, privileges, or immunities in violation of Plaintiff's civil rights secured to Plaintiff ERNEST KRAUSE by Cal. Const. art. I, § 7, 42 U.S.C. § 1983, State Bar Act § 6094.5, subd. (a), and Welfare and Institutions Code § 15610.53.

310.    At all relevant times, from March 16, 2023 to October 10, 2023, Plaintiff, ERNEST KRAUSE, was 75 years old and an "Elder" as that term is defined in Welfare & Institutions Code § 15610.27.

311.    At all relevant times, Plaintiff, ERNEST KRAUSE, was undergoing dialysis treatments three times per week – Monday, Wednesday, and Friday.

312.    During the relevant time, Plaintiff, ERNEST KRAUSE, had surgery to remove a kidney.

313.    During the relevant time, Plaintiff, ERNEST KRAUSE, had surgery to install a "port" in his chest for his dialysis treatments.

314.    During the relevant time, Plaintiff, ERNEST KRAUSE, had surgery to install a "port" in his arm for his dialysis treatments.

315.    During the relevant time, Plaintiff, ERNEST KRAUSE, was taking prescription anti-depressant medication.

316.    During the relevant time, Plaintiff, ERNEST KRAUSE, was suffering from severe and chronic asthma attacks and could not breath, requiring hospitalization.

317.    During the relevant time, Plaintiff, ERNEST KRAUSE, was suffering from severe low blood pressure.

- 48 -

318.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, that rule 5.21(A) was void *ab initio*.

319.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that California Evidence Code § 623 barred the March 16, 2023 NDC.

320.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30409.

321.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30409.

322.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

323.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, ALL DEFENDANTS **lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30409.

324.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on March 16, 2023, ALL DEFENDANTS were illegally prosecuting Plaintiff in Case No. SBC-23-O-30409 in willful, wanton, knowing, deliberate, and intentional violation of the **__Policy__** in State Bar Act § 6094.5, subd. (a).

325.    Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

*continued...*

326.    Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

327.    Plaintiff, ERNEST KRAUSE, suffers fear, agitation, confusion, severe depression, and other forms of serious emotional distress brought on by ALL DEFENDANTS' willful acts of intimidating behavior, threats, harassment, deceptive acts, false or misleading statements made with malicious intent to agitate, confuse, and frighten Plaintiff, and ALL DEFENDANTS inflicted mental suffering on Plaintiff and caused Plaintiff ERNEST KRAUSE to suffer severe depression and serious emotional distress

328.    An example of Defendants' elder abuse in support of illegal prosecution that violates the **Policy** in State Bar Act § 6094.5, subd. (a), Defendant Judge MANJARI CHAWLA willfully denied Plaintiff his constitutional right to counsel of his choice in the illegal proceedings, a right secured to Plaintiff by the Sixth Amendment to the United States Constitution, for the unlawful purpose to inflict mental suffering on ERNEST KRAUSE.

329.    Another example of the elder abuse, is that Defendants Judge MANJARI CHAWLA, STATE BAR OF CALIFORNIA, GEORGE S. CARDONA, RYAN T. CHIN, TIFFANY F. SORENSEN, AND MICHAEL NGUYEN conspired to deprive Plaintiff of his rights secured by the Fifth Amendment to the United States Constitution and State Bar Act § 6079.4, for the unlawful purpose to inflict mental suffering on ERNEST KRAUSE.

330.    ALL DEFENDANTS willfully, wantonly, knowingly, deliberately, intentionally, oppressively, fraudulently, maliciously, and illegally inflicted mental suffering, as that term is defined in Welfare & Institutions Code § 15610.53, on Plaintiff ERNEST KRAUSE

331.    Pursuant to in Welfare & Institutions Code § 15610, the definition of "Mental Suffering" governs its construction as a separate and distinct cause of action for Elder Abuse.

332.    ALL DEFENDANTS acted with reckless disregard of the probability that ERNEST KRAUSE would suffer emotional distress from DEFENDANTS' illegal prosecution and wanton violation of Plaintiff ERNEST KRAUSE' civil rights secured to

KRAUSE & ASSOCIATES

Plaintiff by Cal. Const. art. I, § 7, 42 U.S.C. § 1983, Cal. Welf. and Inst. Code § 15610.53, and the **Policy** in State Bar Act § 6094.5, subd. (a).

333.    Plaintiff, ERNEST KRAUSE, suffers severe emotional distress and that ALL DEFENDANTS' conduct was a substantial factor in causing ERNEST KRAUSE' severe emotional distress.

334.    Due substantially to ALL DEFENDANTS' reckless disregard of the probability that ERNEST KRAUSE would suffer emotional distress as a result of ALL DEFENDANTS' conduct, Plaintiff ERNEST KRAUSE has been harmed, to include, but is not limited to damages as attorney's fees, costs, mental and physical anguish, loss of income, loss of reputation, other harms to be determined at trial, and loss of enjoyment of life.

335.    The conduct of ALL DEFENDANTS is outrageous.

336.    ALL DEFENDANTS have been guilty of recklessness, oppression, fraud, and malice in the commission of the elder abuse.

337.    In committing the acts and conduct described above, ALL DEFENDANTS, jointly and severally, individually and in his or her official capacity, acted with recklessness, oppression, fraud, and malice, and ERNEST KRAUSE is therefore entitled to an award of compensatory damages, exemplary or punitive damages, and attorney's fees pursuant to Welfare and Institutions Code § 15657 and Civil Code § 3294, and treble damages pursuant to Civil Code § 3345 for unfair deceptive acts or practices.

338.    Plaintiff ERNEST KRAUSE made formal demand to ALL DEFENDANTS to cease conduct constituting elder abuse, but to no avail.  None of the DEFENDANTS show remorse.  Nor did any of the DEFENDANTS cease the illegal elder abuse.

339.    Plaintiff ERNEST KRAUSE therefore asks the jury for judgment in his favor for ELDER ABUSE against ALL DEFENDANTS and that DEFENDANTS take nothing from this action.

*continued…*

KRAUSE & ASSOCIATES

KRAUSE & ASSOCIATES

## ELEVENTH CLAIM FOR RELIEF
### ELDER ABUSE (ALL DEFENDANTS)
**(Violation of U.S. Const. amend. XIV; 42 U.S.C. § 1983; State Bar Act 6094.5(a))**
**(Equal Protection Clause and Deprivation of Rights Under Color of Law)**
**[State Bar v. Krause, Case No. SBC-23-O-30697]**

340.    Plaintiffs re-allege and incorporate by reference paragraphs 308 through 339 as if fully set forth herein, respectfully:

341.    ALL DEFENDANTS, acting under color of rule 5.21(A), subjected Plaintiff ERNEST KRAUSE within Defendants' jurisdiction, to the deprivation of rights, privileges, or immunities in violation of Plaintiff's civil rights secured to Plaintiff ERNEST KRAUSE by U.S. Const. amend. XIV, 42 U.S.C. § 1983, State Bar Act § 6094.5, subd. (a), and Welfare and Institutions Code § 15610.53.

342.    At all relevant times, from March 16, 2023 to October 10, 2023, Plaintiff, ERNEST KRAUSE, was 75 years old and an "Elder" as that term is defined in Welfare & Institutions Code § 15610.27.

343.    At all relevant times, Plaintiff, ERNEST KRAUSE, was undergoing dialysis treatments three times per week – Monday, Wednesday, and Friday.

344.    During the relevant time, Plaintiff, ERNEST KRAUSE, had surgery to remove a kidney.

345.    During the relevant time, Plaintiff, ERNEST KRAUSE, had surgery to install a "port" in his chest for his dialysis treatments.

346.    During the relevant time, Plaintiff, ERNEST KRAUSE, had surgery to install a "port" in his arm for his dialysis treatments.

347.    During the relevant time, Plaintiff, ERNEST KRAUSE, was taking prescription anti-depressant medication.

348.    During the relevant time, Plaintiff, ERNEST KRAUSE, was suffering from severe and chronic asthma attacks and could not breath, requiring hospitalization.

349.    During the relevant time, Plaintiff, ERNEST KRAUSE, was suffering from severe low blood pressure.

VERIFIED CIVIL RIGHTS COMPLAINT

350.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing that on June 15, 2023, rule 5.21(A) was void *ab initio*.

351.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing that California Evidence Code § 623 barred the June 15, 2023 NDC.

352.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30697.

353.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30697.

354.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

355.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, ALL DEFENDANTS **lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30697.

356.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, ALL DEFENDANTS were illegally prosecuting Plaintiff KRAUSE in Case No. SBC-23-O-30697 in willful, wanton, knowing, deliberate, and intentional violation of **Policy** in State Bar Act § 6094.5, subd. (a).

357.    Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

*continued...*

358.    Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

359.    Plaintiff, ERNEST KRAUSE, suffers fear, agitation, confusion, severe depression, and other forms of serious emotional distress brought on by ALL DEFENDANTS' willful acts of intimidating behavior, threats, harassment, deceptive acts, false or misleading statements made with malicious intent to agitate, confuse, and frighten Plaintiff, and ALL DEFENDANTS inflicted mental suffering on Plaintiff and caused Plaintiff ERNEST KRAUSE to suffer severe depression and serious emotional distress

360.    An example of Defendants' elder abuse in support of illegal prosecution that violates the **Policy** in State Bar Act § 6094.5, subd. (a), Defendant Judge MANJARI CHAWLA willfully denied Plaintiff his constitutional right to counsel of his choice in the illegal proceedings, a right secured to Plaintiff by the Sixth Amendment to the United States Constitution, for the unlawful purpose to inflict mental suffering on ERNEST KRAUSE.

361.    Another example of the elder abuse, is that Defendants Judge MANJARI CHAWLA, STATE BAR OF CALIFORNIA, GEORGE S. CARDONA, RYAN T. CHIN, TIFFANY F. SORENSEN, AND MICHAEL NGUYEN conspired to deprive Plaintiff of his rights secured by the Fifth Amendment to the United States Constitution and State Bar Act § 6079.4, for the unlawful purpose to inflict mental suffering on ERNEST KRAUSE.

362.    ALL DEFENDANTS willfully, wantonly, knowingly, deliberately, intentionally, oppressively, fraudulently, maliciously, and illegally inflicted mental suffering, as that term is defined in Welfare & Institutions Code § 15610.53, on Plaintiff ERNEST KRAUSE

363.    Pursuant to in Welfare & Institutions Code § 15610, the definition of "Mental Suffering" governs its construction as a separate and distinct cause of action for Elder Abuse.

364.    ALL DEFENDANTS acted with reckless disregard of the probability that ERNEST KRAUSE would suffer emotional distress from DEFENDANTS' illegal prosecution and wanton violation of Plaintiff ERNEST KRAUSE' civil rights secured to

KRAUSE & ASSOCIATES

Plaintiff by U.S. Const. amend. XIV, 42 U.S.C. § 1983,  Welfare & Inst. Code § 15610.53, and the **Policy** in State Bar Act § 6094.5, subd. (a).

365.    Plaintiff, ERNEST KRAUSE, suffers severe emotional distress and that ALL DEFENDANTS' conduct was a substantial factor in causing ERNEST KRAUSE' severe emotional distress.

366.    Due substantially to ALL DEFENDANTS' reckless disregard of the probability that ERNEST KRAUSE would suffer emotional distress as a result of ALL DEFENDANTS' conduct, Plaintiff ERNEST KRAUSE has been harmed, to include, but is not limited to damages as attorney's fees, costs, mental and physical anguish, loss of income, loss of reputation, other harms to be determined at trial, and loss of enjoyment of life.

367.    The conduct of ALL DEFENDANTS is outrageous.

368.    ALL DEFENDANTS have been guilty of recklessness, oppression, fraud, and malice in the commission of the elder abuse.

369.    In committing the acts and conduct described above, ALL DEFENDANTS, jointly and severally, individually and in his or her official capacity, acted with recklessness, oppression, fraud, and malice, and ERNEST KRAUSE is therefore entitled to an award of compensatory damages, exemplary or punitive damages, and attorney's fees pursuant to Welfare and Institutions Code § 15657 and Civil Code § 3294, and treble damages pursuant to Civil Code § 3345 for unfair deceptive acts or practices.

370.    Plaintiff ERNEST KRAUSE made formal demand to ALL DEFENDANTS to cease conduct constituting elder abuse, but to no avail.  None of the DEFENDANTS show remorse.  Nor did any of the DEFENDANTS cease the illegal elder abuse.

371.    Plaintiff ERNEST KRAUSE therefore asks the jury for judgment in his favor for ELDER ABUSE against ALL DEFENDANTS and that DEFENDANTS take nothing from this action.

*continued...*

VERIFIED CIVIL RIGHTS COMPLAINT

## TWELFTH CLAIM FOR RELIEF
### ELDER ABUSE (ALL DEFENDANTS)
**(Violation of Cal. Const. art. I, § 7; 42 U.S.C. § 1983; State Bar Act 6094.5(a))**
**(Equal Protection Clause and Deprivation of Rights Under Color of Law)**
**[State Bar v. Krause, Case No. SBC-23-O-30697]**

372.    Plaintiffs re-allege and incorporate by reference paragraphs 340 through 371 as if fully set forth herein, respectfully:

373.    ALL DEFENDANTS, acting under color of rule 5.21(A), subjected Plaintiff ERNEST KRAUSE within Defendants' jurisdiction, to the deprivation of rights, privileges, or immunities in violation of Plaintiff's civil rights secured to Plaintiff ERNEST KRAUSE by Cal. Const. art. I, § 7, 42 U.S.C. § 1983, State Bar Act § 6094.5, subd. (a), and Welfare and Institutions Code § 15610.53.

374.    At all relevant times, from March 16, 2023 to October 10, 2023, Plaintiff, ERNEST KRAUSE, was 75 years old and an "Elder" as that term is defined in Welfare & Institutions Code § 15610.27.

375.    At all relevant times, Plaintiff, ERNEST KRAUSE, was undergoing dialysis treatments three times per week – Monday, Wednesday, and Friday.

376.    During the relevant time, Plaintiff, ERNEST KRAUSE, had surgery to remove a kidney.

377.    During the relevant time, Plaintiff, ERNEST KRAUSE, had surgery to install a "port" in his chest for his dialysis treatments.

378.    During the relevant time, Plaintiff, ERNEST KRAUSE, had surgery to install a "port" in his arm for his dialysis treatments.

379.    During the relevant time, Plaintiff, ERNEST KRAUSE, was taking prescription anti-depressant medication.

380.    During the relevant time, Plaintiff, ERNEST KRAUSE, was suffering from severe and chronic asthma attacks and could not breath, requiring hospitalization.

381.    During the relevant time, Plaintiff, ERNEST KRAUSE, was suffering from severe low blood pressure.

- 56 -

382.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, that rule 5.21(A) was void *ab initio*.

383.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that California Evidence Code § 623 barred the June 15, 2023 NDC.

384.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked subject matter jurisdiction** over Case No. SBC-23-O-30697.

385.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and Defendant STATE BAR COURT, **lacked personal jurisdiction of Plaintiffs** in Case No. SBC-23-O-30697.

386.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, Defendant MANJARI CHAWLA, individually and as Judge of the State Bar Court, and STATE BAR COURT, **acted in clear absence of all jurisdiction** purporting to grant relief to Defendants.

387.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, ALL DEFENDANTS **lacked standing to prosecute Plaintiffs** in Case No. SBC-23-O-30697.

388.    At all times relevant, Defendants knew, should have known, or were grossly negligent and indifferent in not knowing, that on June 15, 2023, ALL DEFENDANTS were illegally prosecuting Plaintiff in Case No. SBC-23-O-30697 in willful, wanton, knowing, deliberate, and intentional violation of the **Policy** in State Bar Act § 6094.5, subd. (a).

389.    Plaintiffs re-allege and incorporate by reference paragraph 129 as if fully set forth herein.

*continued…*

- 57 -

390.    Plaintiffs re-allege and incorporate by reference paragraph 130 as if fully set forth herein.

391.    Plaintiff, ERNEST KRAUSE, suffers fear, agitation, confusion, severe depression, and other forms of serious emotional distress brought on by ALL DEFENDANTS' willful acts of intimidating behavior, threats, harassment, deceptive acts, false or misleading statements made with malicious intent to agitate, confuse, and frighten Plaintiff, and ALL DEFENDANTS inflicted mental suffering on Plaintiff and caused Plaintiff ERNEST KRAUSE to suffer severe depression and serious emotional distress

392.    An example of Defendants' elder abuse in support of illegal prosecution that violates the **Policy** in State Bar Act § 6094.5, subd. (a), Defendant Judge MANJARI CHAWLA willfully denied Plaintiff his constitutional right to counsel of his choice in the illegal proceedings, a right secured to Plaintiff by the Sixth Amendment to the United States Constitution, for the unlawful purpose to inflict mental suffering on ERNEST KRAUSE.

393.    Another example of the elder abuse, is that Defendants Judge MANJARI CHAWLA, STATE BAR OF CALIFORNIA, GEORGE S. CARDONA, RYAN T. CHIN, TIFFANY F. SORENSEN, AND MICHAEL NGUYEN conspired to deprive Plaintiff of his rights secured by the Fifth Amendment to the United States Constitution and State Bar Act § 6079.4, for the unlawful purpose to inflict mental suffering on ERNEST KRAUSE.

394.    ALL DEFENDANTS willfully, wantonly, knowingly, deliberately, intentionally, oppressively, fraudulently, maliciously, and illegally inflicted mental suffering, as that term is defined in Welfare & Institutions Code § 15610.53, on Plaintiff ERNEST KRAUSE

395.    Pursuant to in Welfare & Institutions Code § 15610, the definition of "Mental Suffering" governs its construction as a separate and distinct cause of action for Elder Abuse.

396.    ALL DEFENDANTS acted with reckless disregard of the probability that ERNEST KRAUSE would suffer emotional distress from DEFENDANTS' illegal prosecution and wanton violation of Plaintiff ERNEST KRAUSE' civil rights secured to

KRAUSE & ASSOCIATES

Plaintiff by Cal. Const. art. I, § 7, 42 U.S.C. § 1983, Cal. Welf. & Inst. Code § 15610.53, and the **Policy** in State Bar Act § 6094.5, subd. (a).

397.    Plaintiff, ERNEST KRAUSE, suffers severe emotional distress and that ALL DEFENDANTS' conduct was a substantial factor in causing ERNEST KRAUSE' severe emotional distress.

398.    Due substantially to ALL DEFENDANTS' reckless disregard of the probability that ERNEST KRAUSE would suffer emotional distress as a result of ALL DEFENDANTS' conduct, Plaintiff ERNEST KRAUSE has been harmed, to include, but is not limited to damages as attorney's fees, costs, mental and physical anguish, loss of income, loss of reputation, other harms to be determined at trial, and loss of enjoyment of life.

399.    The conduct of ALL DEFENDANTS is outrageous.

400.    ALL DEFENDANTS have been guilty of recklessness, oppression, fraud, and malice in the commission of the elder abuse.

401.    In committing the acts and conduct described above, ALL DEFENDANTS, jointly and severally, individually and in his or her official capacity, acted with recklessness, oppression, fraud, and malice, and ERNEST KRAUSE is therefore entitled to an award of compensatory damages, exemplary or punitive damages, and attorney's fees pursuant to Welfare and Institutions Code § 15657 and Civil Code § 3294, and treble damages pursuant to Civil Code § 3345 for unfair deceptive acts or practices.

402.    Plaintiff ERNEST KRAUSE made formal demand to ALL DEFENDANTS to cease conduct constituting elder abuse, but to no avail.  None of the DEFENDANTS show remorse.  Nor did any of the DEFENDANTS cease the illegal elder abuse.

403.    Plaintiff ERNEST KRAUSE therefore asks the jury for judgment in his favor for ELDER ABUSE against ALL DEFENDANTS and that DEFENDANTS take nothing from this action.

*continued...*

KRAUSE & ASSOCIATES

VERIFIED CIVIL RIGHTS COMPLAINT

# THIRTEENTH CLAIM FOR RELIEF
## CONVERSION
### (Violation of U.S. Const. amend. XIV; U.S. Const. amend. I; 42 U.S.C. § 1983)
### (Equal Protection Clause and Deprivation of Rights Under Color of Law)

404.    Respectfully: Plaintiff, ERNEST KRAUSE, on behalf of himself and as [proposed] Class Representative, claims that Defendants GEORGE S. CARDONA, LEAH T. WILSON, RUBEN DURAN, STATE BAR OF CALIFORNIA, and STATE BAR STAKEHOLDERS individually and in his or her official capacity (the "STATE BAR DEFENDANTS"), wrongfully exercised control over the membership dues of Plaintiff and putative class members, all of whom are, or were, attorneys licensed to practice law by Defendant STATE BAR OF CALIFORNIA.

405.    The STATE BAR DEFENDANTS, acting individually and in his or her official capacity under color of State Bar Act §§ 6028(a) and 6140(a), (b), and (c), subjected Plaintiff ERNEST KRAUSE and putative class and subclass members within Defendants' jurisdiction, to the deprivation of rights, privileges, or immunities in violation of Plaintiff's and class members, civil rights secured by U.S. Const. amend. XIV and 42 U.S.C. § 1983.

406.    Plaintiff claims that the STATE BAR DEFENDANTS knowingly and intentionally converted the membership dues of Plaintiff and putative class and subclass members for use for an illegal purpose, and did use the membership dues paid by Plaintiff an putative class and subclass members for an illegal purpose without the knowledge or consent of Plaintiff or putative class or subclass members.

407.    The STATE BAR DEFENDANTS concealed from Plaintiff and the putative class that the STATE BAR DEFENDANTS actively advertised to hire, and did hire and employ, approximately 82 nonlawyers [LAO Rpt., p. 8 ¶ 2] to expressly engage in the unauthorized practice of law in violation of State Bar Act § 6126(a), which states in relevant part: "Any person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active licensee of the State Bar, or otherwise authorized pursuant to statute or court rule to practice law in this state at the time of doing so, is guilty of a misdemeanor… ."

VERIFIED CIVIL RIGHTS COMPLAINT

408.   In a State Bar of California press release on November 23, 2022, Chief Trial Counsel, George Sergeant Cardona, warned: "*California law is clear: to provide legal advice, you must be a fully licensed attorney. Consumers need to be aware of the many pitfalls of hiring someone engaged in the unauthorized practice of law. The Office of Chief Trial Counsel has a duty to protect the public and will continue to enforce the laws prohibiting UPL wherever we find it.*" (Cardona Press Release, p. 1 ¶ 4, Ex. 19.)

409.   Upon information and belief, the STATE BAR DEFENDANTS is the biggest UPL offender in the history of California and probably the United States.

410.   The STATE BAR DEFENDANTS hired and employs 82 non-lawyers who engage in daily unauthorized practice of law with impunity—aided by the State Bar of California and George Cardona himself. (State Bar Employment Offer, Ex. 20.)

411.   The Bar and Cardona purport to entitle its 82 nonlawyers to: (i) interview witnesses; (ii) explain jurisdiction, (iii) issue subpoenas, and (iv) make independent legal determinations. Cardona hires nonlawyers to supervise UPL of other nonlawyers. (Ex. 20.)

412.   Notwithstanding Defendants' illegal job offer for nonlawyers to commit UPL, in practice, the non-lawyers "advise" attorneys on law, discuss third-party contracts, quote law, cite authorities, review and discuss court cases, and send letters to attorneys and members of the public explaining laws, discussing legal ramifications of violating laws, discussing punishments, and citing authorities in support.

413.   The STATE BAR DEFENDANTS pay the wages of the nonlawyers from the membership dues paid by Plaintiff and putative class members without the knowledge or consent of either.

414.   The STATE BAR DEFENDANTS engages in, and uses member dues to fund, the illegal activities of nonlawyers engaged in the unauthorized practice of law.

415.   Upon information and belief, the approximate costs to Plaintiff and class members to fund unauthorized practice of law was $25 million in 2021. (LAO Rpt., p. ¶ 5.)

416.   There are no stated or implied exemptions in State Bar Act §§ 6125 or 6126(a) for nonlawyers employed by the STATE BAR DEFENDANTS to practice law.

VERIFIED CIVIL RIGHTS COMPLAINT

417.    Neither mandatory nor persuasive authority alludes to authorizing the non-lawyers to engage in the unauthorized practice of law as a condition of employment or arising out of employment with the State Bar of California.

418.    The STATE BAR DEFENDANTS' statewide unauthorized practice of law serves no legitimate governmental purpose.

419.    The STATE BAR DEFENDANTS did not afford Plaintiff or putative class members an opportunity to oppose the STATE BAR DEFENDANTS' illegal and nefarious scheme to fund the unauthorized practice of law from membership dues.

420.    The STATE BAR DEFENDANTS' conversion of membership dues to pay the wages of nonlawyers to engage in the unauthorized practice of law is tantamount to embezzlement for expending funds in excess of the State Bar's statutory powers. (Keller v. State Bar of California, 226 Cal. Rptr. 448, 451, 473 (Cal. Ct. App. 1986).)

421.    Plaintiff is informed and believes and based upon such information and belief alleges that the STATE BAR DEFENDANTS aided and abetted approximately 16,355 illegal acts of unauthorized practice of law in 2021-2022, that were funded entirely by the membership dues paid by Plaintiff and putative class members.

422.    Further, State Bar Act § 6125 affords no immunity to the STATE BAR DEFENDANTS or the Bar's 82 non-lawyers.

423.    Rule 5.5(a)(2) of the Rules of Procedure of the State Bar of California does *not* authorize the STATE BAR DEFENDANTS, or any of the 96 actual lawyers employed by the State Bar at the time of this filing, to aid and abet the unauthorized practice law of STATE BAR DEFENDANTS' non-lawyer employees.

424.    Not only has STATE BAR DEFENDANTS illegally prosecuted Plaintiff by falsely alleging aiding unauthorized practice of law, Defendants, and specifically, GEORGE CARDONA, aided and abetted 82 nonlawyers in the unauthorized practice of law, and intentionally misled the public, judges, and the Bar's members, either directly or indirectly, by imputing to himself authority, *ultra vires*, to entitle the State Bar's non-lawyer employees to practice law in view of the public in violation of State Bar Act §§ 6125 and 6126(a).

- 62 -

425.    The STATE BAR DEFENDANTS' reckless negligent hiring of non-lawyers, at member expense, to engage in the unauthorized practice law harmed Plaintiff and the putative classes, harmed the public, and is a crime in violation of State Bar Act §§ 6125 and 6126(a).

426.    It is well-established that: "The right to practice law not only presupposes in its possessor integrity, legal standing and attainment, but also the exercise of a special privilege, highly personal and partaking of the nature of a public trust. **It is manifest that the powers and privileges derived from it may not with propriety be delegated to or exercised by a nonlicensed person.**" [emphasis added]. <u>McGregor v. State Bar</u> (1944) 24 Cal.2d 283, 288 citing <u>Townsend v. State Bar</u> (1930) 210 Cal.362, 364.

427.    The STATE BAR DEFENDANTS did not have legal authority to delegate the practice of law to the State Bar's non-lawyer employees.

428.    At all times relevant, the STATE BAR DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing that State Bar Act § 6028, subd. (a) does not authorize the STATE BAR DEFENDANTS to disburse membership dues to fund inherently illegal activities. Nor does State Bar Act § 6028, subd. (a) authorize the STATE BAR DEFENDANTS to disburse membership dues to fund illegal activities that the STATE BAR DEFENDANTS are mandated by law to investigate and prosecute.

429.    At all times relevant, the STATE BAR DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing that: "No person shall practice law in California unless the person is an active licensee of the State Bar," and that the unauthorized practice of law in California is a crime in violation State Bar Act § 6125.

430.    At all times relevant, the STATE BAR DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing that: "Any person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active licensee of the State Bar, or otherwise authorized pursuant to statute or court rule to practice law in this state at the time of doing so, is guilty of a misdemeanor," in violation State Bar Act § 6126(a).

- 63 -

431.   At all times relevant, the STATE BAR DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing that the STATE BAR DEFENDANTS had failed to disclose intent to covert Plaintiff, ERNEST KRAUSE' membership dues for a use and purpose not intended for his membership dues.

432.   At all times relevant, the STATE BAR DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing that Plaintiff, ERNEST KRAUSE, did not consent to the STATE BAR DEFENDANTS' use of any portion of his membership dues to pay the wages of the State Bar's nonlawyer employees engaged in the illegal activity of the unauthorized practice law.  Nor would Plaintiff have ever consented to the use of any portion of his membership dues to pay the wages of State Bar nonlawyer employees engaged in the illegal activity of the unauthorized practice law had the STATE BAR DEFENDANTS disclosed to Plaintiff the intended illegal use of Plaintiff's membership dues.

433.   ERNEST KRAUSE was harmed by STATE BAR DEFENDANTS' conversion of his membership dues to fund illegal activity of unauthorized practice of law in plain view of the public by the State Bar's nonlawyer employees, in violation of Plaintiff's civil rights secured by the Equal Protection Clause of the Fourteenth Amendment to U.S. Constitution that secures Plaintiff's civil rights under the First Amendment to the U.S. Constitution protecting Plaintiff's free speech and right of association.

434.   PUTATIVE CLASS MEMBERS were harmed by STATE BAR DEFENDANTS' conversion of putative class and subclass members' membership dues to fund illegal activity of unauthorized practice of law in plain view of the public by the State Bar's nonlawyer employees, in violation of class members' civil rights secured by the Equal Protection Clause of the Fourteenth Amendment to U.S. Constitution that secures class members' civil rights under the First Amendment to the U.S. Constitution protecting class members free speech and right of association.

435.   The STATE BAR DEFENDANTS' conduct was a substantial factor in causing Plaintiff harm.

KRAUSE & ASSOCIATES

436. The STATE BAR DEFENDANTS' conduct was a substantial factor in causing putative class and subclass members harm.

437. In committing the acts and conduct described above, the STATE BAR DEFENDANTS, jointly and severally, individually and in his or her official capacity, acted with recklessness, oppression, fraud, and malice, and ERNEST KRAUSE is therefore entitled to an award of compensatory damages, exemplary or punitive damages, and attorney's fees pursuant Civil Code § 3294, and treble damages under Civil Code § 3345 for unfair deceptive acts or practices.

438. In committing the acts and conduct described above, the STATE BAR DEFENDANTS, jointly and severally, individually and in his or her official capacity, acted with recklessness, oppression, fraud, and malice, and putative class and subclass members are therefore entitled to an award of compensatory damages, exemplary or punitive damages, and attorney's fees pursuant Civil Code § 3294.

439. Plaintiff, ERNEST KRAUSE, on behalf of himself and the putative class and subclasses, therefore seeks <u>Prohibitory Injunctive Relief</u> under Fed. R. Civ. P. 65(a), Declaratory Relief under 22 U.S.C. §§ 2201(a) and 2202, restitution for the classes, attorney's fees, and costs.

----oo0oo----

**FOURTEENTH CLAIM FOR RELIEF**
**CONVERSION**
**(Violation of Cal. Const. art. I, § 7; 42 U.S.C. § 1983)**
**(Equal Protection Clause and Deprivation of Rights Under Color of Law)**

440. Plaintiffs re-allege and incorporate by reference paragraphs 404 through 439 as if fully set forth herein, respectfully:

441. Plaintiff, ERNEST KRAUSE, on behalf of himself and as [proposed] Class Representative, claims that Defendants GEORGE S. CARDONA, LEAH T. WILSON, RUBEN DURAN, STATE BAR OF CALIFORNIA, and STATE BAR STAKEHOLDERS individually and in his or her official capacity (the "STATE BAR DEFENDANTS"), wrongfully exercised control over the membership dues of Plaintiff and

VERIFIED CIVIL RIGHTS COMPLAINT

putative class members, all of whom are, or were, attorneys licensed to practice law by Defendant STATE BAR OF CALIFORNIA.

442.    The STATE BAR DEFENDANTS, acting individually and in his or her official capacity under color of State Bar Act §§ 6028(a) and 6140(a), (b), and (c), subjected Plaintiff ERNEST KRAUSE and putative class and subclass members within Defendants' jurisdiction, to the deprivation of rights, privileges, or immunities in violation of Plaintiff's and class members, civil rights secured by Cal. Const. art. I, § 7 and 42 U.S.C. § 1983.

443.    Plaintiff claims that the STATE BAR DEFENDANTS knowingly and intentionally converted the membership dues of Plaintiff and putative class and subclass members for use for an illegal purpose, and did use the membership dues paid by Plaintiff an putative class and subclass members for an illegal purpose without the knowledge or consent of Plaintiff or putative class or subclass members.

444.    The STATE BAR DEFENDANTS concealed from Plaintiff and the putative class that the STATE BAR DEFENDANTS actively advertised to hire, and did hire and employ, approximately 82 nonlawyers [LAO Rpt., p. 8 ¶ 2] to expressly engage in the unauthorized practice of law in violation of State Bar Act § 6126(a), which states in relevant part: "Any person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active licensee of the State Bar, or otherwise authorized pursuant to statute or court rule to practice law in this state at the time of doing so, is guilty of a misdemeanor… ."

445.    In a State Bar of California press release on November 23, 2022, Chief Trial Counsel, George Sergeant Cardona, warned: "*California law is clear: to provide legal advice, you must be a fully licensed attorney. Consumers need to be aware of the many pitfalls of hiring someone engaged in the unauthorized practice of law. The Office of Chief Trial Counsel has a duty to protect the public and will continue to enforce the laws prohibiting UPL wherever we find it*." (Cardona Press Release, p. 1 ¶ 4, Ex. 19.)

446.    Upon information and belief, the STATE BAR DEFENDANTS is the biggest UPL offender in the history of California and probably the United States.

- 66 -

KRAUSE & ASSOCIATES

447.   The STATE BAR DEFENDANTS hired and employs 82 non-lawyers who engage in daily unauthorized practice of law with impunity—aided by the State Bar of California and George Cardona himself. (State Bar Employment Offer, Ex. 20.)

448.   The Bar and Cardona purport to entitle its 82 nonlawyers to: (i) interview witnesses; (ii) explain jurisdiction, (iii) issue subpoenas, and (iv) make independent legal determinations. Cardona hires nonlawyers to supervise UPL of other nonlawyers. (Ex. 20.)

449.   Notwithstanding Defendants' illegal job offer for nonlawyers to commit UPL, in practice, the non-lawyers "advise" attorneys on law, discuss third-party contracts, quote law, cite authorities, review and discuss court cases, and send letters to attorneys and members of the public explaining laws, discussing legal ramifications of violating laws, discussing punishments, and citing authorities in support.

450.   The STATE BAR DEFENDANTS pay the wages of the nonlawyers from the membership dues paid by Plaintiff and putative class members without the knowledge or consent of either.

451.   The STATE BAR DEFENDANTS engages in, and uses member dues to fund, the illegal activities of nonlawyers engaged in the unauthorized practice of law.

452.   Upon information and belief, the approximate costs to Plaintiff and class members to fund unauthorized practice of law was $25 million in 2021. (LAO Rpt., p. ¶ 5.)

453.   There are no stated or implied exemptions in State Bar Act §§ 6125 or 6126(a) for nonlawyers employed by the STATE BAR DEFENDANTS to practice law.

454.   Neither mandatory nor persuasive authority alludes to authorizing the non-lawyers to engage in the unauthorized practice of law as a condition of employment or arising out of employment with the State Bar of California.

455.   The STATE BAR DEFENDANTS' statewide unauthorized practice of law serves no legitimate governmental purpose.

456.   The STATE BAR DEFENDANTS did not afford Plaintiff or putative class members an opportunity to oppose the STATE BAR DEFENDANTS' illegal and nefarious scheme to fund the unauthorized practice of law from membership dues.

KRAUSE & ASSOCIATES

457.    The STATE BAR DEFENDANTS' conversion of membership dues to pay the wages of nonlawyers to engage in the unauthorized practice of law is tantamount to embezzlement for expending funds in excess of the State Bar's statutory powers. (<u>Keller v. State Bar of California</u>, 226 Cal. Rptr. 448, 451, 473 (Cal. Ct. App. 1986).)

458.    Plaintiff is informed and believes and based upon such information and belief alleges that the STATE BAR DEFENDANTS aided and abetted approximately 16,355 illegal acts of unauthorized practice of law in 2021-2022, that were funded entirely by the membership dues paid by Plaintiff and putative class members.

459.    Further, State Bar Act § 6125 affords no immunity to the STATE BAR DEFENDANTS or the Bar's 82 non-lawyers.

460.    Rule 5.5(a)(2) of the Rules of Procedure of the State Bar of California does ***not*** authorize the STATE BAR DEFENDANTS, or any of the 96 actual lawyers employed by the State Bar at the time of this filing, to aid and abet the unauthorized practice law of STATE BAR DEFENDANTS' non-lawyer employees.

461.    Not only has STATE BAR DEFENDANTS illegally prosecuted Plaintiff by falsely alleging aiding unauthorized practice of law, Defendants, and specifically, GEORGE CARDONA, aided and abetted 82 nonlawyers in the unauthorized practice of law, and intentionally misled the public, judges, and the Bar's members, either directly or indirectly, by imputing to himself authority, ***ultra vires***, to entitle the State Bar's non-lawyer employees to practice law in view of the public in violation of State Bar Act §§ 6125 and 6126(a).

462.    The STATE BAR DEFENDANTS' reckless negligent hiring of non-lawyers, at member expense, to engage in the unauthorized practice law harmed Plaintiff and the putative classes, harmed the public, and is a crime in violation of State Bar Act §§ 6125 and 6126(a).

463.    It is well-established that: "The right to practice law not only presupposes in its possessor integrity, legal standing and attainment, but also the exercise of a special privilege, highly personal and partaking of the nature of a public trust. **It is manifest that the powers and privileges derived from it may not with propriety be delegated to or**

_____

**exercised by a nonlicensed person.**" [emphasis added]. <u>McGregor v. State Bar</u> (1944) 24 Cal.2d 283, 288 citing <u>Townsend v. State Bar</u> (1930) 210 Cal.362, 364.

464.    The STATE BAR DEFENDANTS did not have legal authority to delegate the practice of law to the State Bar's non-lawyer employees.

465.    At all times relevant, the STATE BAR DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing that State Bar Act § 6028, subd. (a) does not authorize the STATE BAR DEFENDANTS to disburse membership dues to fund inherently illegal activities. Nor does State Bar Act § 6028, subd. (a) authorize the STATE BAR DEFENDANTS to disburse membership dues to fund illegal activities that the STATE BAR DEFENDANTS are mandated by law to investigate and prosecute.

466.    At all times relevant, the STATE BAR DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing that: "No person shall practice law in California unless the person is an active licensee of the State Bar," and that the unauthorized practice of law in California is a crime in violation State Bar Act § 6125.

467.    At all times relevant, the STATE BAR DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing that: "Any person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active licensee of the State Bar, or otherwise authorized pursuant to statute or court rule to practice law in this state at the time of doing so, is guilty of a misdemeanor," in violation State Bar Act § 6126(a).

468.    At all times relevant, the STATE BAR DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing that the STATE BAR DEFENDANTS had failed to disclose intent to covert Plaintiff, ERNEST KRAUSE' membership dues for a use and purpose not intended for his membership dues.

469.    At all times relevant, the STATE BAR DEFENDANTS knew, should have known, or were grossly negligent and indifferent in not knowing that Plaintiff, ERNEST KRAUSE, did not consent to the STATE BAR DEFENDANTS' use of any portion of his membership dues to pay the wages of the State Bar's nonlawyer employees engaged in the

illegal activity of the unauthorized practice law.  Nor would Plaintiff have ever consented to the use of any portion of his membership dues to pay the wages of State Bar nonlawyer employees engaged in the illegal activity of the unauthorized practice law had the STATE BAR DEFENDANTS disclosed to Plaintiff the intended illegal use of Plaintiff's membership dues.

470.   ERNEST KRAUSE was harmed by STATE BAR DEFENDANTS' conversion of his membership dues to fund illegal activity of unauthorized practice of law in plain view of the public by the State Bar's nonlawyer employees, in violation of Plaintiff's civil rights secured by the Equal Protection Clause of Cal. Const. art. I, § 7 that secures Plaintiff's civil rights under the First Amendment to the U.S. Constitution protecting Plaintiff's free speech and right of association.

471.   PUTATIVE CLASS MEMBERS were harmed by STATE BAR DEFENDANTS' conversion of putative class and subclass members' membership dues to fund illegal activity of unauthorized practice of law in plain view of the public by the State Bar's nonlawyer employees, in violation of class members' civil rights secured by the Equal Protection Clause of Cal. Const. art. I, § 7 that secures class members' civil rights under the First Amendment to the U.S. Constitution protecting class members free speech and right of association.

472.   The STATE BAR DEFENDANTS' conduct was a substantial factor in causing Plaintiff harm.

473.   The STATE BAR DEFENDANTS' conduct was a substantial factor in causing putative class and subclass members harm.

474.   In committing the acts and conduct described above, the STATE BAR DEFENDANTS, jointly and severally, individually and in his or her official capacity, acted with recklessness, oppression, fraud, and malice, and ERNEST KRAUSE is therefore entitled to an award of compensatory damages, exemplary or punitive damages, and attorney's fees pursuant Civil Code § 3294, and treble damages under Civil Code § 3345 for unfair deceptive acts or practices.

475.     In committing the acts and conduct described above, the STATE BAR DEFENDANTS, jointly and severally, individually and in his or her official capacity, acted with recklessness, oppression, fraud, and malice, and putative class and subclass members are therefore entitled to an award of compensatory damages, exemplary or punitive damages, and attorney's fees pursuant Civil Code § 3294.

476.     Plaintiff, ERNEST KRAUSE, on behalf of himself and the putative class and subclasses, therefore seeks <u>Prohibitory Injunctive Relief</u> under Fed. R. Civ. P. 65(a), Declaratory Relief under 22 U.S.C. §§ 2201(a) and 2202, restitution for the classes, attorney's fees, and costs.

----oo0oo----

### PRAYER FOR RELIEF

477.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 476 as if fully set forth herein, respectfully:

478.     WHEREFORE, Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL, on behalf of themselves, and as [proposed] Class Representatives, and as [proposed] Class Counsel for the [proposed] putative class and subclasses, sue ALL DEFENDANTS and DOES 1 through 1,000 inclusive, jointly and severally, individually and in his or her official capacity, for relief as follows:

1.  <u>Temporary Restraining Order</u> against ALL DEFENDANTS to temporarily restrain Defendants from violating State Bar Act §6094.5, subd. (a) and to temporarily enjoin State Bar Court proceedings in Case No. SBC-23-O-30409 and SBC-23-O-30697 scheduled for trial on October 17, 19, and 24 2023;

2.  <u>Prohibitory Injunctive Relief</u>, retroactive to January 1, 2022, to permanently enjoin Defendants from violations of State Bar Act §6094.5, subd. (a);

3.  <u>Declaratory Relief</u>, retroactive to January 1, 2022, that all State Bar actions against the putative class or subclasses, in violation of State Bar Act § 6094.5, subd. (a), and all recommendations, rulings, or judgments arising therefrom, are void *ab initio* as a matter of law;

- 71 -

4. <u>Declaratory Relief</u> that the State Bar of California's conversion of involuntary membership dues to fund nonlawyer employees of the State Bar to engage in the unauthorized practice of law, constitutes expending funds in excess of the State Bar's statutory powers, is a violation of class members' rights secured by the First and Fourteenth Amendments to the U.S. Constitution, a separate violation of class members' rights secured by Cal. Const. art. I, § 7, and a violation of State Bar Act § 6028;

5. <u>Prohibitory Injunctive Relief</u> to permanently enjoin Defendants from expending funds in excess of the State Bar's statutory powers by converting involuntary membership dues to fund the unauthorized practice of law of nonlawyers employed by the State Bar of California;

6. <u>Class Action</u>, pursuant to the concurrently filed Motion for Class Certification, to certify the below classes:

     (a)    **<u>Bar Membership Class</u>**:
         All members of the State Bar of California, regardless of s status, as of January 1, 2022.

     (b)    **<u>Noncomplex Complaint Subclass</u>**:
         All attorneys who received Notice of Disciplinary Charges or similar charging document from the State Bar of California on or after January 1, 2022 where the State Bar failed to file formal charges within six months after it received a complaint, designated "noncomplex" or without designation, alleging attorney misconduct.

     (c)    **<u>Complex Complaint Subclass</u>**:
         All attorneys who received Notice of Disciplinary Charges or similar charging document from the State Bar of California on or after January 1, 2022 where the State Bar failed to file formal charges within 12 months after it received a complaint, designated "complex," alleging attorney misconduct.

7. <u>Class Representatives</u>, to appoint Plaintiffs ERNEST KRAUSE and FREDERICK MITCHELL as Class Representatives;

8. <u>Class Counsel</u>, to appoint Plaintiff, ERNEST KRAUSE and Krause & Associates, as Class Counsel for the putative class and subclasses;

9. <u>Compensatory Damages</u> on ELDER ABUSE and CONVERSION causes of action;

10. <u>Punitive Damages</u> on ELDER ABUSE and CONVERSION causes of action;

11. <u>General Damages</u> on ALL CAUSES OF ACTION;

12. <u>Consequential Damages</u> according to proof at trial;

13. <u>Prejudgment Interest</u> at the maximum legal rate on the ELDER ABUSE and CONVERSION causes of action, jointly and severally, calculated from earliest date of the conduct to the date judgment is entered;

14. <u>Treble Damages</u> on ELDER ABUSE and CONVERSION causes of action;

15. <u>Attorney's Fees</u> as damages and statutory attorney's fees and costs; and

16. For all other relief to which Plaintiffs ERNEST KRAUSE, FREDERICK MITCHELL, and the putative classes and subclasses may be entitled or that the Court deems is just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs, demand a jury trial for all claims so triable.

**Legal Research, Drafting**
Frederick Mitchell (4L)
Legal Assistant

**Review, Edit, Approval**
Ernest Krause, J.D.
*Supervising Attorney*

Dated: October 11, 2023                    Respectfully, SUBMITTED.

_____
Ernest Krause, Plaintiff
Attorney At Law

_____
Frederick Mitchell (4L), Plaintiff
Legal Assistant

- 73 -

## <u>VERIFICATION</u>

I, Ernest Krause, declare that I am over the age of 18, am a party in the above-entitled action; and if called as a witness, could and would competently testify to the matters set forth herein which are within my personal knowledge.

1.      I have read the foregoing **COMPLAINT FOR CIVIL RIGHTS VIOLATIONS** and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Verification was executed on October 11, 2023 at Sacramento, California.

Dated: October 11, 2023

Respectfully,
SUBMITTED.

_____
Ernest Krause, Plaintiff
Attorney At Law

- 74 -

_____
VERIFIED CIVIL RIGHTS COMPLAINT

## **VERIFICATION**

I, Frederick Mitchell, declare that I am over the age of 18, am a party in the above-entitled action; and if called as a witness, could and would competently testify to the matters set forth herein which are within my personal knowledge.

1.      I have read the foregoing **COMPLAINT FOR CIVIL RIGHTS VIOLATIONS** and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Verification was executed on October 11, 2023 at Sacramento, California.

Dated: October 11, 2023

Respectfully,
SUBMITTED.

Frederick Mitchell (4L), Plaintiff
Legal Assistant

- 75 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit**
**-1-**

VERIFIED CIVIL RIGHTS COMPLAINT

STATE OF CALIFORNIA
LEGISLATIVE COUNSEL
BUREAU
AUTHENTICATED
ELECTRONIC LEGAL MATERIAL

**State of California**

**BUSINESS AND PROFESSIONS CODE**

**Section  6094.5**

---

6094.5.  (a)  It is the goal and policy of the State Bar to ensure that matters are handled competently, accurately, and timely. Until processing goals are established pursuant to subdivision (b) and codified in statute, the goal and policy of the State Bar is to dismiss a complaint, admonish the attorney, or have the Office of Chief Trial Counsel file formal charges within six months after it receives a complaint alleging attorney misconduct. As to complaints designated as complicated matters by the Chief Trial Counsel, it shall be the goal and policy of the State Bar to dismiss a complaint, admonish the attorney or have the Office of Chief Trial Counsel file formal charges within 12 months after it receives a complaint alleging attorney misconduct.

(b)  No later than October 31, 2022, the State Bar shall propose case processing standards for competently, accurately, and timely resolving cases within the Office of Chief Trial Counsel.

(1)  The case processing standards shall take into account all relevant factors, including, but not limited to, the mechanics of the discipline process, the risk to public protection, including multiple complaints against the same attorney, reasonable expectations of the public for resolution of complaints, and the complexity of cases. The case processing standards shall be based on and reflect all of the following:

(A)  A review of case processing standards in attorney discipline systems in at least five other states, including large and small jurisdictions, with the goal of reviewing jurisdictions that have strong and effective discipline systems that protect the public.

(B)  Consultation with state and national experts on attorney discipline.

(C)  Reports from the Legislative Analyst's Office.

(D)  Reports from the California State Auditor.

(2)  The State Bar shall conduct an analysis of the data collected in subparagraphs (A) to (D), inclusive, of paragraph (1) and develop proposed case processing standards that reflect the goal of resolving attorney discipline cases in a timely, effective, and efficient manner while having small backlogs of attorney discipline cases and best protecting the public.

(3)  Goals for case processing and disposition that are intended to encourage the prompt disposition of matters and apply to the overall inventory of matters of the type specified in subdivision (b) are not meant to create deadlines for individual cases, are not jurisdictional, and shall not serve as a bar or defense to any disciplinary investigation or proceeding.

(4)  The analysis shall include staffing requirements for the Office of Chief Trial Counsel to achieve the case processing goals described in this paragraph.

(5)  The State Bar shall provide its analysis and recommendations to the Legislative Analyst's Office for review. The Legislative Analyst's Office shall report to the Senate and Assembly Judiciary Committees on its review of the State Bar's proposal. The State Bar shall provide the Legislative Analyst's Office with any available information to assist the Legislative Analyst's Office in its review.

(6)  It is the intent of the Legislature to enact legislation that would codify in statute case processing goals for the State Bar's discipline system based on the State Bar's proposal and the Legislative Analyst's Office review of that proposal to improve the effectiveness of the State Bar's attorney discipline system, best protect the public, and remain in place for an extended period of time to allow for adequate oversight of the State Bar and its performance over time.

(c)  The case processing goals described in subdivision (a) shall not apply to the following matters: Nonattorney Unauthorized Practice of Law (NA-UPL), Section 6007 matters, moral character matters, resignations with charges pending, mini-reinstatements, and criminal conviction matters.

(d)  To ensure that criminal conviction matters are handled competently, accurately, and timely, the State Bar shall report on its compliance with the requirement of Section 6101 to transmit, within 30 days of receipt, the record of any conviction which involves or may involve moral turpitude to the Supreme Court with such other records and information as may be appropriate to establish the Supreme Court's jurisdiction.

(e)  Consistent with Section 6026.11, a notice of disciplinary charges is a public record when filed.

(f)  The State Bar, subject to its record retention policy, shall respond within a reasonable time to inquiries as to the status of pending disciplinary cases in which a notice to show cause has been filed, or as to public discipline that has been imposed upon an attorney in California, or to the extent known by the agency, elsewhere, and, to the extent such information is known to the agency, all criminal cases in which an indictment or information has been brought charging a felony against an attorney or an attorney has been convicted of a felony, or convicted of any misdemeanor committed in the course of the practice of law or in any manner such that a client of the attorney was the victim, or any felony or misdemeanor, a necessary element of which, as determined by the statutory or common law definition of the crime, involves improper conduct of an attorney, including interference with the administration of justice, running and capping, false swearing, misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft, dishonesty or other moral turpitude, or an attempt of a conspiracy or solicitation of another to commit such a crime. Such information acquired from the State Bar under this section shall not be used by an attorney to solicit business. The State Bar shall adopt regulations to carry out the purposes of this subdivision.

(Amended by Stats. 2021, Ch. 723, Sec. 5.  (SB 211)  Effective January 1, 2022.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit -2-**

VERIFIED CIVIL RIGHTS COMPLAINT

 The State Bar *of California*



# REGULATION AND DISCIPLINE COMMITTEE
## NOTICE AND AGENDA

### Teleconference

The State Bar of California

www.calbar.ca.gov

Thursday, January 20, 2022
9:45 a.m.—10:30 a.m.

**Members of the public may access this meeting as follows:**
Zoom Link: https://calbar.zoom.us/j/98727416334
Call-In Number: 669-900-9128
Webinar ID: 987-2741-6334

*OPEN SESSION*

The Chair reserves the right to alter the order of items to run an effective meeting. If you wish to assure yourself of hearing a particular discussion, please attend the entire meeting.


**-- CALL FOR PUBLIC COMMENT --**

Members of the public may speak to any item on the agenda. The Chair reserves the right to limit the duration of the public comment period.

**I. CHAIR'S REPORT**

Oral Report

**II. CONSENT**

A.   Open Session Minutes: November 18, 2021

**III. BUSINESS**

A.   Amendments to the Client Security Fund Rules Regarding Electronic Service: Return from Public Comment and Request for Approval (Meloch/Zawol) [January 54-121] (5 mins.)

B.   Amendment to Rules 5.65, 5.337, and 5.345 of the Rules of Procedure (Discovery): Return from Public Comment and Request for Approval (Cardona) [January 50-3] (5 mins.)

# The State Bar
## of California

**OPEN SESSION**
**AGENDA ITEM**
**REGULATION AND DISCIPLINE COMMITTEE III.C**

**DATE:**        **January 20, 2022**

**TO:**          **Members, Regulation and Discipline Committee**

**FROM:**        **George Cardona, Chief Trial Counsel**

**SUBJECT:**     **Proposed Amendment to Rule 5.21 of the Rules of Procedure: Request for Public Comment**

---

## EXECUTIVE SUMMARY

Rule 5.21 of the Rules of Procedure of the State Bar of California sets out the limitations period for initiation of disciplinary proceedings. It generally requires that a Notice of Disciplinary Charges be filed "within five years from the date of the violation," specifies a range of circumstances that will toll this time, and exempts from the time limitation disciplinary proceedings investigated and initiated "based on information received from an independent source other than a complainant." The proposed revisions to rule 5.21 would:

- Ensure that the Office of Chief Trial Counsel (OCTC) has the necessary time to investigate complaints submitted at or near the five-year time limit by providing the OCTC with up to two years to investigate and initiate disciplinary proceedings based on such complaints;
- Provide that the time limit is tolled while an attorney owes a fiduciary duty to the complainant;
- Provide that tolling during the pendency of related civil, criminal, or administrative actions extends to such actions taken to remediate the violation, including efforts to collect funds owed as the result of the violation;
- Specify that the two-year period for initiating disciplinary proceedings following review of the OCTC's decision to close a complaint applies to review by both the Complaint Review Unit and the California Supreme Court;
- Provide that if a surviving family member or the estate's executor or administrator files a complaint within two years after a prospective complainant's death, OCTC will have two years from the date of filing to initiate disciplinary proceedings;

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

- Clarify that the independent source exception applies even if the State Bar is notified of the independent source by a complainant and provide examples of what constitutes an independent source; and
- Make several more minor modifications for clarity and consistency.

## BACKGROUND

The American Bar Association's Model Rules for Lawyer Disciplinary Enforcement recommend against application of any statute of limitations for disciplinary proceedings, explaining: "Statutes of limitation are wholly inappropriate in lawyer disciplinary proceedings. Conduct of a lawyer, no matter when it has occurred, is always relevant to the question of fitness to practice. The time between the commission of the alleged misconduct and the filing of a complaint predicated thereon may be pertinent to whether and to what extent discipline should be imposed, but should not limit the agency's power to investigate." ABA Model Rules for Lawyer Disciplinary Enforcement, Rule 18, Commentary (July 20, 2020).

Rule 5.21 of the Rules of the Procedure of the State Bar, however, imposes a time limitation for the initiation of disciplinary proceedings. In relevant part, rule 5.21:

1. Establishes a general time limit within which a disciplinary proceeding "based solely on a complainant's allegations of a violation" must begin as "five years from the date of the violation." Rule 5.21(A).
2. Sets a variety of circumstances that will toll the five year limitations period, including:
   a. While the attorney represents the complainant, or the complaint's family member, business, or employer, rule 5.21(C)(1);
   b. While civil, criminal, or administrative investigations or proceedings based on the same acts or circumstances as the violation are pending with any governmental agency, court, or tribunal, rule 5.21(C)(3); and
   c. While the complaint or investigation is pending before the Office of General Counsel Complaint Review Unit, rule 5.21(C)(10), with OCTC allowed two years after the completion of review to begin disciplinary proceedings, rule 5.21(E).
3. Provides that if a prospective complainant dies before the time to begin a disciplinary procedure expires, "a surviving family member or the estate's executor or administrator may file a complaint with the State Bar within two years after the complainant's death." Rule 5.21(F).
4. Exempts from the general time limit disciplinary proceedings "investigated and initiated by the State Bar based on information received from an independent source other than a complainant." Rule 5.21(G).

## DISCUSSION

The proposed amendments to rule 5.21 are shown in redline in Attachment B. The basis for these proposed amendments is as follows:

**General Time Limitation, Subsection (A)**: Under the current rule, absent a tolling provision applying, the OCTC must initiate disciplinary proceedings by filing the initial pleading (most often a Notice of Disciplinary Charges (NDC)) within five years of the occurrence of the violation, regardless of when the OCTC receives the complaint. As a result, whether a complaint is filed three years after a violation or four years and 360 days after a violation, the result is the same, the OCTC must file a NDC within five years from the date of the violation. This poses the risk that the OCTC may be unable to pursue a complaint alleging serious misconduct that would require substantial investigation (for example, a complicated misappropriation of substantial funds) simply because the complaint, though submitted within five years, was submitted by the complainant (most often not an attorney familiar with the rules) too close to the five-year cutoff to permit the necessary investigation. To address this, the OCTC proposes that the general time limitation be modified to provide that a NDC must be filed within the later of: (1) five years from the date of the violation; or (2) two years from the date the complaint is submitted (so long as that submission occurs within five years from the date of the violation). Under this proposed rule, for example, if a complaint alleging serious but complicated misconduct were submitted four years and 10 months after the date of the alleged violation, the OCTC would have time to investigate and could file a NDC at any time prior to two years after the submission of the complaint, that is, up to six years and 10 months after the date of the violation. The two-year period from the date the complaint is filed is consistent the current rule's provision that the OCTC has two years to initiate disciplinary proceedings after review of a closure decision by the Office of General Counsel Complaint Review Unit. *See* Rule 5.21(E).

**Tolling based on an existing attorney-complainant relationship, Subsection (C)(1)**: The current rule tolls the time limitation "while the attorney represents the complainant" or specified individuals or entities related to the complainant. The purpose of this tolling is to enable disciplinary proceedings to be put off until they will not interfere with an ongoing relationship between the attorney and complainant. In *Matter of Bret Merrick Saxon*, SBC 17-O-01259 (Review Department, June 26, 2020), the Review Department held that this tolling applies "during the period of time that the attorney acts in a fiduciary relationship [with the complainant], even if it is other than an attorney-client relationship." Consistent with this holding, the OCTC proposes a modification of the rule to make explicit that the tolling applies while the attorney "represents or otherwise owes a fiduciary duty" to the complainant or specified individuals or entities related to the complainant.

**Tolling based on pending civil, criminal, or administrative proceedings, Subsection (C)(3)**: The current rule tolls the time limitation "while civil, criminal, or administrative investigations or proceedings based on the same acts or circumstances as the violation are pending." In *Saxon, supra*, the Review Department held that proceedings in a Tennessee civil action alleging breach of contract and fraud based on Saxon's fraudulent misuse of funds was based on the same acts or circumstances as the violation because it "directly found that [complainant] had been defrauded by Saxon and was entitled to damages," but proceedings in a California civil action seeking to enforce the Tennessee judgment and an adversary proceeding filed in Saxon's Chapter 7 bankruptcy were not based on the same acts or circumstances as the violation because they were "derivative actions to the Tennessee Action--only filed to collect an outstanding debt (the Tennessee judgment)." The Review Department recognized that the

Bankruptcy court found that "Saxon defalcated the $1.5 million when he fraudulently transferred the funds," but discounted this because the court "did so only to determine if the debt was dischargeable in bankruptcy." *Saxon* demonstrates the difficulties with line drawing between different civil proceedings, particularly for complainants who are most often not lawyers but whose decisions as to when to file a complaint will affect whether disciplinary proceedings are or are not time barred. To limit these difficulties, and account for the fact that "derivative actions" such as those to collect funds owed may nevertheless involve determinations relevant to the scope and harm of a particular violation that may impact disciplinary decisions, the OCTC proposes modifying this tolling provision to provide examples of the types of proceedings that are "based on the same acts or circumstances as the violation," specifically to include "actions to be taken to remediate the violation, including efforts to collect funds owed as the result of the violation." The examples also serve to clarify that habeas actions, which typically address both the scope and nature of an alleged investigatory or prosecutorial violation and the harm from that violation, will toll the time limitation.

**Filing after review, Subsections (C)(10) and (E)**: The current rule tolls the time limitation "while the complaint or investigation is pending before the Office of General Counsel Complaint Review Unit," rule 5.21(C)(10), and allows the State Bar to "begin disciplinary proceedings within two years after proceedings before the Complaint Review Unit conclude," rule 5.21(E). The OCTC's decisions to close complaints are subject to two levels of revies. The first, internal within the State Bar, is currently conducted by the Office of General Counsel Complaint Review Unit but has at various previous times been conducted elsewhere within the State Bar. The second is at the Supreme Court, upon filing by a complainant of a *Walker* petition. *See In re Walker* (1948) 32 Cal.2d 488. The OCTC proposes modifications to these two provisions of the rule to ensure that the tolling and subsequent two-year filing period will apply wherever within the State Bar the review function is assigned and following review by the Supreme Court.

**Filing following the death of a complainant, Subsection (F)**: The current rule provides that if a prospective complainant dies before the time to begin a disciplinary procedure expires, a surviving family member or the estate's executor or administrator, may file a complaint with the State Bar within two years after the complainant's death. The current rule does not specify any time following the filing of such a complaint within which the State Bar may initiate disciplinary proceedings. To address this, the OCTC proposes amendment to specify that a disciplinary proceeding must be initiated within two years after the filing of the complaint.

**Independent source exception, Subsection (G)**: The current rule exempts from the five-year limit disciplinary proceedings "that were investigated and initiated by the State Bar based on information received from an independent source other than a complainant." The rule does not define an independent source and does not specify whether the exception applies if a complaint is submitted based on an independent source. As an example, the OCTC has received complaints against prosecutors submitted by academic researchers premised on their review of public source materials including newspaper reports and judicial opinions. The OCTC believes that disciplinary proceedings arising from complaints of this type should be treated as independent source proceedings given that the complainant is simply a conduit for identifying independent source information, but the rule is unclear. Accordingly, the OCTC proposes

amendments to: (1) provide examples of what constitutes independent source information, including court orders or opinions, a judge's report, or a media report; and (2) make clear that the independent source exception applies regardless of how the State Bar learns of independent source information, even if the State Bar is notified of the information by a complainant.

**Modifications for consistency and clarity:** For clarity and consistency with the modifications to the rule discussed above, the OCTC is proposing additional modifications as show in redline in Attachment B.

**Retroactive application:** The OCTC proposes the addition of language making the proposed amendments effective retroactively to pleadings initiating disciplinary proceedings whose filing would have been timely as of the date of adoption of the amendments. Other rules have provisions calling for retroactive application. *See* Rule 5.137(H) ("This rule shall apply to all disciplinary and criminal conviction proceedings commenced and stipulations signed on or after April 1, 2020."); Rule 2605(e) ("This rule shall apply retroactively to January 1, 2018.").

## FISCAL/PERSONNEL IMPACT

None

## AMENDMENTS TO RULES OF PROCEDURE

Title 5, Division 2, Chapter 4, Rule 5.80

## AMENDMENTS TO BOARD OF TRUSTEES POLICY MANUAL

None

## STRATEGIC PLAN GOALS & OBJECTIVES

Goal: 2. Ensure a timely, fair, and appropriately resourced admissions, discipline, and regulatory system for the more than 250,000 lawyers licensed in California.

## RECOMMENDATIONS

**Should the Regulation and Discipline Committee concur in the proposed action, passage of the following resolution is recommended:**

> **RESOLVED**, that the Regulation and Discipline Committee authorize staff to make available for public comment for a period of 45 days proposed amendments to rule 5.21 of the Rules of Procedure of the State Bar of California, and it is

> **FURTHER RESOLVED**, that this authorization for release for public comment is not, and shall not be construed as, a statement or recommendation of approval of the proposed amended Rules of Procedure of the State Bar of California.

## ATTACHMENT(S) LIST

**A.**  Proposed Rule 5.21 (Clean Version)

**B.**  Proposed Rule 5.21 (Redline Version)

ATTACHMENT A

**Proposed Rule 5.21 (Clean Version)**

**Rule 5.21  Limitations Period**

(A) Time Limit for Complaint. If a disciplinary proceeding is based solely on a complainant's allegations of a violation of the State Bar Act or Rules of Professional Conduct, the initial pleading must be filed within the later of (1) five years from the date the violation occurred or (2) two years from the date the first complaint regarding the violation is submitted to the State Bar, so long as that complaint is submitted to the State Bar within five years from the date the violation occurred.

(B) When Violation Occurs. A violation of the State Bar Act or a Rule of Professional Conduct occurs when every element of a violation has occurred. But if the violation is a continuing offense, the violation occurs when the offensive conduct ends.

(C) Tolling. The time limit for the filing of an initial pleading under section (A) above is tolled:

(1) while the attorney represents or otherwise owes a fiduciary duty to the complainant, or the complainant's family member business, or employer;

(2) while the complainant is a minor, insane, or physically or mentally incapacitated;

(3) while civil, criminal, or administrative investigations or proceedings based on the same acts or circumstances as the violation, including but not limited to proceedings seeking to determine whether a violation has occurred, the scope of the violation, the harm resulting from the violation, or any actions to be taken to remediate the violation, including efforts to collect funds owed as the result of the violation, are pending with any governmental agency, court, or tribunal;

(4) from the time the attorney conceals facts about the violation until the State Bar or the victim of the violation discovers the true facts;

(5) from the time the attorney fails to cooperate with the State Bar's investigation of the violation until the attorney provides substantial cooperation with the State Bar's investigation;

(6) from the time the attorney makes false or misleading statements to the State Bar concerning the violation until the State Bar discovers the true facts;

(7) while the disciplinary investigation or proceeding is abated under rule 5.50;

(8) while the attorney is participating in an Alternative Dispute Resolution Mediation Discipline program, Agreement in Lieu of Discipline Prosecution program, or other authorized diversion program concerning the violation;

(9) while the investigation of the violation is ended by admonition given pursuant to rule 5.126 or 2602;

(10) while the Office of Chief Trial Counsel's decision to close the complaint without the filing of an initial pleading is under review by the Office of General Counsel Complaint Review Unit or an equivalent review unit within the State Bar, or the State Bar's decision to close the complaint without the filing of an initial pleading is under review by the California Supreme Court and for any additional period

necessary to provide the State Bar with two years to file an initial pleading following the later of the conclusion of review by the Office of General Counsel Complaint Review Unit or equivalent review unit within the State Bar or the conclusion of review by the California Supreme Court; or

(11) while the attorney is on inactive status pursuant to Business and Professions Code section 6007, subdivision (a) or (b).

(D) Authorized Diversion Program. If the attorney successfully completes an Alternative Dispute Resolution Mediation Discipline program, Agreement in Lieu of Discipline Prosecution program, or other authorized diversion program concerning the violation, the State Bar will be barred from filing an initial pleading alleging the violation.

(E) Initial Pleading After Review. The State Bar must file an initial pleading within two years after the later of (1) the Office of General Counsel Complaint Review Unit or an equivalent review unit within the State Bar concluding its review of the Office of Chief Trial Counsel's decision to close the complaint without the filing of an initial pleading; or (2) the California Supreme Court concluding its review of the State Bar's decision to close the complaint without the filing of an initial pleading.

(F) Death of Complainant. If a prospective complainant dies before the time to begin a disciplinary procedure expires, a surviving family member of the complainant, or the complainant's estate's executor or administrator, may file a complaint with the State Bar within two years after the complainant's death and if such a complaint is filed an initial pleading initiating a disciplinary proceeding based on that complaint must be filed within two years after the filing of the complaint with the State Bar.

(G) Independent Source. The time limit to begin a disciplinary procedure under section (A) above does not apply to disciplinary proceedings that were initiated and investigated by the State Bar based on information from a source independent of a complainant. The independent source exception to the time limit under section (A) above applies regardless of how the State Bar receives or discovers the information, even if the State Bar is notified of the independent source by a complainant. An independent source may include a court order or opinion, a judge's report pursuant to Code of Judicial Ethics, Canon 3(D)(2), or a media report.

(H) Waiver. The attorney and State Bar may agree in writing to waive or extend the limitations in this rule.

(I) Reinstatement Proceedings. This rule does not apply to reinstatement proceedings.

(J) Retroactive Application. The amendments to this rule adopted March 24, 2022 shall apply retroactively to any initial pleading the filing of which would, as of March 24, 2022, have been within the time limit imposed by this rule prior to the March 24, 2022 amendments.

**Proposed Rule 5.21 (Redline Version)**

**Rule 5.21 Limitations Period**

(A) Time Limit for Complaint. If a disciplinary proceeding is based solely on a complainant's allegations of a violation of the State Bar Act or Rules of Professional Conduct, the ~~proceeding must begin~~ initial pleading must be filed within the later of (1) five years from the date ~~of~~ the violation occurred or (2) two years from the date the first complaint regarding the violation is submitted to the State Bar, so long as that complaint is submitted to the State Bar within five years from the date the violation occurred.

(B) When Violation Occurs. A violation of ~~T~~the State Bar Act or a Rule of Professional Conduct occurs ~~is violated~~ when every element of a violation has occurred. But if the violation is a continuing offense, the violation occurs when the offensive conduct ends.

(C) Tolling. The ~~five-year~~ time limit for the filing of an initial pleading under section (A) above is tolled:

(1) while the attorney represents or otherwise owes a fiduciary duty to the complainant, or the complainant's family member, ~~or the complainant's~~ business, or employer;

(2) while the complainant is a minor, insane, or physically or mentally incapacitated;

(3) while civil, criminal, or administrative investigations or proceedings based on the same acts or circumstances as the violation, including but not limited to proceedings seeking to determine whether a violation has occurred, the scope of the violation, the harm resulting from the violation, or any actions to be taken to remediate the violation, including efforts to collect funds owed as the result of the violation, are pending with any governmental agency, court, or tribunal;

(4) from the time the attorney conceals facts about the violation until the State Bar or the victim of the violation discovers the true facts;

(5) from the time the attorney fails to cooperate with the State Bar's ~~an~~ investigation of the violation until the attorney provides substantial cooperation with the State Bar's investigation;

(6) from the time the attorney makes false or misleading statements to the State Bar concerning the violation until the State Bar discovers the true facts;

(7) while the disciplinary investigation or proceeding is abated under rule 5.50;

(8) while the attorney is participating in an Alternative Dispute Resolution Mediation Discipline program, Agreement in Lieu of Discipline Prosecution program, or other authorized diversion program concerning the violation;

(9) while the investigation of the violation is ended by admonition given pursuant to rule 5.126 or 2602; ~~or~~

(10) while the Office of Chief Trial Counsel's decision to close the complaint without the filing of an initial pleading ~~complaint or investigation~~ is under review by ~~pending before~~ the Office of General Counsel Complaint Review Unit or an equivalent review unit within the State Bar, or the State Bar's decision to close the complaint without the filing of an initial pleading is under review by the California Supreme Court and for any additional period necessary to provide the State Bar with two years to file an

initial pleading following the later of the conclusion of review by the Office of General Counsel Complaint Review Unit or equivalent review unit within the State Bar or the conclusion of review by the California Supreme Court; or

(11) while the attorney is on inactive status pursuant to Business and Professions Code section 6007, subdivision (a) or (b).

(D) Authorized Diversion Program. If the attorney successfully completes an Alternative Dispute Resolution Mediation Discipline program, Agreement in Lieu of Discipline Prosecution program, or other authorized diversion program concerning the violation, the State Bar will be barred from filing an initial pleading alleging the violation underlying allegations are barred.

(E) Initial Pleading After Review. Office of General Counsel Complaint Review Unit. The State Bar must file an initial pleading begin disciplinary proceedings within two years after proceedings before the later of (1) the Office of General Counsel Complaint Review Unit or an equivalent review unit within the State Bar concluding es its review of the Office of Chief Trial Counsel's decision to close the complaint without the filing of an initial pleading; or (2) the California Supreme Court concluding its review of the State Bar's decision to close the complaint without the filing of an initial pleading.

(F) Death of Complainant. If a prospective complainant dies before the time to begin a disciplinary procedure expires, a surviving family member of the complainant, or the complainant's estate's executor or administrator, may file a complaint with the State Bar within two years after the complainant's death and if such a complaint is filed an initial pleading initiating a disciplinary proceeding based on that complaint must be filed within two years after the filing of the complaint with the State Bar.

(G) Independent Source. The time five-year limit to begin a disciplinary procedure under section (A) above does not apply to disciplinary proceedings that were investigated and initiated by the State Bar based on information from a source independent of a complainant. The independent source exception to the time limit under section (A) above applies regardless of how the State Bar receives or discovers the information, even if the State Bar is notified of the independent source by a complainant. An independent source may include a court order or opinion, a judge's report pursuant to Code of Judicial Ethics, Canon 3(D)(2), or a media report received from an independent source other than a complainant.

(H) Waiver. The attorney and State Bar may agree in writing to waive or extend the limitations in this rule.

(I) Reinstatement Proceedings. This rule does not apply to reinstatement proceedings.

(J) Retroactive Application. The amendments to this rule adopted March 24, 2022 shall apply retroactively to any initial pleading the filing of which would, as of March 24, 2022, have been within the time limit imposed by this rule prior to the March 24, 2022 amendments.

The State Bar *of California*                                                           

*CLOSED SESSION*

**I. CONSENT**

    A.    Rule of Procedure 2201: Case Status Update

               *Closed pursuant to Government Code §§ 11126(a)(1) and 11126(c)(2).*

**II. BUSINESS**

    A.    Evaluation of Chief Trial Counsel

               *Closed pursuant to Government Code § 11126(a).*

*ADJOURN*

*In compliance with the Americans with Disabilities Act, those requiring modifications or accommodations to address and observe this meeting should notify Justin Ewert at 415-538-2235. Please provide notification at least 72 hours prior to the meeting to allow sufficient time to make arrangements for accommodations at this meeting.*

Questions regarding any agenda item should be directed to **Committee Coordinator Justin Ewert at 415-538-2235 or Chair Hailyn Chen at 415-538-2300, the State Bar of California, 180 Howard Street, San Francisco, CA 94105**. Committee members are requested to notify the committee coordinator as early as possible in advance of the meeting if they wish to remove any item(s) from the consent agenda.

The notice and agenda are available at http://board.calbar.ca.gov/Board.aspx.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit - 3 -**

VERIFIED CIVIL RIGHTS COMPLAINT

The California State Bar:
# Assessment of Proposed Disciplinary Case Processing Standards





GABRIEL PETEK  |  LEGISLATIVE ANALYST
JANUARY 2023

# Executive Summary

On October 28, 2022, the State Bar provided our office with its proposed (1) caseload processing standards for resolving attorney discipline cases within its Office of Chief Trial Counsel (OCTC), (2) establishment of a backlog goal and metrics to measure such a goal, and (3) staffing requirements needed to achieve the new standards. As required by Chapter 723 of 2021 (SB 211, Umberg), this report presents our assessment of the State Bar's proposal.

***State Bar Licenses Attorneys and Regulates Their Professional Conduct.*** The State Bar functions as the administrative arm of the California Supreme Court for the purpose of admitting individuals to practice law in California and regulating the professional conduct of attorneys by adopting and enforcing rules of professional conduct. As of December 2022, there were more than 286,000 members of the State Bar—of which about 196,000 (or 69 percent) have elected to actively practice law in California.

***State Bar Administers Own Disciplinary Process.*** The State Bar administers its own disciplinary system primarily through OCTC and the State Bar Court (SBC). OCTC receives, investigates, and prosecutes cases against attorneys, while the SBC adjudicates these cases. Generally, the disciplinary process consists of four stages: (1) Intake, in which complaints are received; (2) Investigation, in which cases are investigated; (3) Charging, in which OCTC determines whether to formally file charges; and (4) Hearing, in which OCTC prosecutes cases in the SBC. OCTC currently prioritizes the processing of cases based on potential risk to members of the public. State law currently requires the State Bar to complete the first three stages of the disciplinary process—specifically for OCTC to dismiss a complaint, admonish an attorney, or file formal charges against an attorney—within 180 days after receipt of a written complaint for "noncomplex" cases and 365 days for "complex" cases.

***State Bar Proposal.*** In its report, the State Bar proposes the following changes related to its attorney disciplinary process:

- ***New Case Processing Standards.*** The State Bar proposes that disciplinary cases be prioritized based on both risk to members of the public as well as case complexity. It also proposes average case processing time standards across six case categories based on when a case is closed, the stage at which it is closed, and the case risk/complexity (such as high-risk, complex cases closed in the Investigation Stage).

- ***Establishment of a Backlog Goal and Metrics.*** The State Bar proposes a backlog goal of 10 percent or fewer cases as well as a backlog standard for each of the new case processing standards.

- ***Defers Comprehensive Staffing Analysis.*** The State Bar defers a comprehensive staffing analysis to 2023 in order to incorporate legislative direction on the proposed case processing standards as well as various OCTC operational changes that are currently in progress or are being considered. However, the State Bar preliminarily calculates that an additional 78 to 119 additional OCTC staff could be needed, which would cost between $10.6 million to $16.3 million.

***Analyst's Review of State Bar Proposal.*** We reviewed the State Bar's proposal and identified key questions for legislative consideration on the overall proposal as well as its three key components.

- ***Overarching Comments—Consider Whether Changes for Additional Oversight Are Warranted.*** The State Bar's proposal assumes that the existing disciplinary process is generally reasonable. However, the Legislature will want to consider whether it believes changes are warranted. Additionally, we note that the lack of legislative approval of the State Bar budget can make oversight difficult. Accordingly, the Legislature will want to consider what level of oversight it wants to exercise over State Bar processes and funding.

- ***New Case Processing Standards—Partially Reasonable, but Raises Several Concerns.*** We found it reasonable to include both risk and complexity when prioritizing cases. However, we identified several concerns related to the proposed standards. For example, we find it unclear whether the aggressive time lines reflected in the standards are reasonable. In light of these concerns, we raised five key questions for legislative consideration. For example, the Legislature will want to consider how aggressive they believe case processing standards should be.

- ***Establishment of Backlog Goal and Metrics—Partially Reasonable, but Also Raises Several Concerns.*** We found that alternative definitions of backlog could also be reasonable and identified several concerns with the State Bar's proposal. For example, the State Bar's proposed backlog metrics measure closed, rather than pending, workload. Based on our review, we identified three key questions for legislative consideration. For example, the Legislature will want to consider how backlog should be defined and calculated.

- ***Staffing Analysis—Makes Sense to Delay Analysis.*** We found that it was reasonable that the State Bar report only provides a preliminary estimate of staffing and resource needs. However, we are concerned with the State Bar's plan to conduct a staffing analysis in 2023 given that the full impact of various operational changes will likely not be known at that time. Based on our review, we identified two key questions for legislative consideration. For example, the Legislature will want to consider when would be the most appropriate time for the State Bar to conduct the staffing analysis.

# INTRODUCTION

Chapter 723 of 2021 (SB 211, Umberg) required the State Bar to propose (1) case processing standards for resolving attorney discipline cases within the Office of Chief Trial Counsel (OCTC) in a timely, effective, and efficient manner while allowing for small backlogs of attorney discipline cases and (2) the OCTC staffing requirements needed to achieve these standards. Senate Bill 211 also required that the State Bar's analysis and recommendations be submitted to our office for review. Finally, SB 211 required we report to the Senate and Assembly Judiciary Committees on our review.

On October 28, 2022, the State Bar provided our office with its proposed case processing standards. This report presents our required assessment of these standards. Specifically, in this report, we first provide background on the State Bar and the attorney discipline system. We then summarize the key provisions of the State Bar's proposal. Finally, we provide our assessment of the overall proposal, as well as the individual provisions, and identify key questions for legislative consideration.

# BACKGROUND

## What Is the State Bar?

*Oversees the Practice of Law in California.* The California Constitution requires attorneys to be members of the State Bar to practice law in the state. The California Supreme Court has the power to regulate the practice of law in the state—including establishing criteria for admission to the State Bar and disbarment. The State Bar functions as the administrative arm of the Supreme Court for the purpose of admitting individuals to practice law in California and regulating the professional conduct of attorneys by adopting and enforcing rules of professional conduct. The State Bar is established by the Constitution as a public corporation. The State Bar currently is governed by a 13-member board of trustees. As of December 2022, there were more than 286,000 members of the State Bar—of which about 196,000 (or 69 percent) have elected to actively practice law in California.

## How Are State Bar Activities Funded?

*Fees Are Assessed to Support Activities.* State Bar activities are generally funded by various fees paid by attorneys—most notably the annual mandatory licensing fee. These fees are deposited into the State Bar's General Fund—its main operating account which can be used for various purposes—as well as various special funds that support specific programs administered by the State Bar. For example, the fee collected for the Client Security Fund is used to reimburse clients who suffer financial losses due to attorney misconduct. Other State Bar revenue sources include grants and lease revenue.

The State Bar's adopted 2022 calendar year budget estimates total revenues of $244 million and total expenditures of $257 million, with the difference requiring the use of funds from its reserve. In its 2022 budget, the State Bar estimates that its General Fund will receive $91 million (or 37 percent) of total revenues. Remaining revenues will go to various special funds. Of this amount, $84 million (or 92 percent) will come from a portion of the mandatory annual license fee. As shown in Figure 1 on the next page, the 2023 maximum annual fee that can be charged is $515 for active attorneys and $182.40 for inactive attorneys. The majority of this amount—$415 of the fee paid by active attorneys and $117.40 of the fee paid by inactive attorneys associated with licensing and discipline—is deposited into the State Bar's General Fund. The General Fund, however, is used to support a major portion of State Bar operations. For example, the State Bar estimates total 2022 personnel costs of $95 million—of which $81 million (or 86 percent) will be supported from the General Fund.

Figure 1

## Summary of 2023 Maximum Annual License Fee

|  | Active | Inactive |
|---|---|---|
| **Mandatory Fees** | | |
| Licensing | $390.00 | $92.40 |
| Discipline | 25.00 | 25.00 |
| Client Security Fund | 40.00 | 10.00 |
| Lawyer Assistance Program | 10.00 | 5.00 |
| Subtotals | ($465.00) | ($132.40) |
| **Voluntary Fees**[a] | | |
| Legal Services Trust Fund | $45.00 | $45.00 |
| Lobbying activities | 5.00 | 5.00 |
| Subtotals | ($50.00) | ($50.00) |
| **Total Fees That May Be Charged** | **$515.00** | **$182.40** |

[a] Attorneys are able to choose whether to pay these fees.

*Legislature Establishes Annual Fees, but Does Not Approve State Bar's Annual Budget.* Each year, the judiciary policy committees of the Legislature set the license fees charged to members of the State Bar for the coming year through the annual "fee bill." When a fee bill is not enacted, the California Supreme Court has authority to set the license fees. Under current law, if either the Legislature or the Supreme Court does not approve these fees for a given year, the State Bar does not have authority to levy fees on its members in that year. In contrast, the State Bar's budget is approved by the board and does not require approval by the Legislature. As such, the annual budget of the State Bar is not reviewed by legislative budget committees through the annual state budget process. This is different than the process for nearly all other state licensing entities that regulate other professions, which generally involves an entity's fee structure (such as fee levels) and proposed expenditure levels being approved by the Legislature and the Governor. Moreover, these other entities generally need to provide written budgetary justification for any substantive changes to existing budget levels (such as to cover increased costs of operations or to support new activities) as well as explain why additional revenues in the form of higher fees are needed to support these costs. Annual legislative oversight of both revenues and expenditures allows the Legislature to conduct ongoing oversight of an entity's operations as well as to ensure that any approved funding is used accountably and consistently with legislative expectations.

## How Does the State Bar Oversee Attorney Conduct?

*Attorneys Required to Meet Various Professional and Ethical Requirements.* California—similar to other states—has various professional and ethical requirements for attorneys practicing law in the state. Examples of such requirements include: providing competent service to existing and former clients, prohibiting false or misleading communication or advertising of legal services, keeping certain information provided by clients confidential, and ensuring appropriate use of client monies held in trust accounts. These requirements are outlined in state law, California Rules of Court, rules approved by the board, and the California Rules of Professional Conduct. Claims of attorney misconduct—specifically, complaints that such professional and ethical requirements were violated—are adjudicated by the State Bar.

*State Bar Administers Own Disciplinary Process.* The State Bar administers its own disciplinary system primarily through OCTC and the State Bar Court (SBC). OCTC—consisting of teams of attorneys, investigators, and other legal administrative staff—receives, investigates, and prosecutes cases against attorneys—which we describe in more detail below. The SBC—consisting of judges, attorneys, and other legal and administrative staff—adjudicates these cases. (We note that the Supreme Court reviews and issues the final order when SBC recommends the suspension or disbarment of an attorney.) Various other departments within the State Bar—such as the Probation Department that supervises attorneys who are required to comply with certain conditions set by the SBC or the Supreme Court—also support the disciplinary system.

***Disciplinary Process Consists of Four
Stages.*** The disciplinary system consists of four
stages. We describe each of these stages in
greater detail below.

- ***First Stage: Intake.*** The Intake Stage (also
  known as the Inquiry Stage) generally begins
  with a written complaint filed with OCTC
  that an attorney has violated a professional
  or ethical requirement. The State Bar also
  may initiate its own investigations against
  attorneys. After an initial review and limited
  information-gathering on the complaint,
  OCTC will either close the complaint (for
  example, notifying the complainant that no
  action is to be taken or issuing a warning
  letter to the accused attorney) or refer the
  case for investigation. The State Bar reports
  that about 63 percent of complaints are
  closed at this stage and require an average of
  42 days to close.

- ***Second Stage: Investigation.*** The
  Investigation Stage consists of OCTC
  investigators, under the guidance and
  supervision of OCTC attorneys, analyzing
  the case through interviews, subpoenas,
  document review, and other activities
  to determine whether there is clear
  and convincing evidence that attorney
  misconduct has occurred or if the case
  should be closed. Cases are closed in various
  ways, such as notifying the complainant
  and the accused attorney of the reasons
  why no action is to be taken or reaching an
  agreement in lieu of discipline for low-level
  violations. The State Bar reports that about
  33 percent of complaints are closed at the
  Investigation Stage and require an average of
  230 days to close.

- ***Third Stage: Charging.*** The Charging
  Stage (also known as the Pre-Filing Stage)
  begins with OCTC evaluating the evidence
  collected in the Investigation Stage as well
  as internally documenting potential charges
  and appropriate levels of discipline to
  seek. If the case is closed, the complainant
  and the accused attorney receive letters
  explaining why no action is to be taken.

If OCTC determines there is sufficient
evidence to file charges against an accused
attorney, OCTC will notify the attorney in
writing of its intent to file formal charges
with SBC. Before the charges can be filed,
the accused attorney is entitled to request
a confidential meeting(s)—also known as an
Early Neutral Evaluation Conference (ENEC)—
in which the attorney and OCTC appear
before an SBC hearing judge to evaluate
the facts and charges and potentially
try to resolve the case by negotiating a
settlement. Such meetings are mandatory
if requested by accused attorneys. If the
accused attorney does not request an
ENEC, informal negotiations may still occur
between the accused attorney and OCTC.
The State Bar reports that about 4 percent of
complaints processed by OCTC were closed
at the Charging Stage, reached negotiated
settlement, or resulted in the filing of charges.
Such actions required an average of 449 days
to achieve.

- ***Hearing Stage.*** When disciplinary charges
  are formally filed with the SBC, the Hearing
  Stage begins. OCTC is responsible for filing
  the changes and prosecuting the cases.
  SBC adjudicates the case and imposes
  the appropriate level of discipline—which
  can include case dismissal, public or
  private reprovals, probation, suspension,
  and disbarment. (The SBC also reviews
  settlement terms reached at the end of
  the Charging Stage.) For cases where the
  proposed discipline involves the suspension
  or disbarment of the attorney, the California
  Supreme Court reviews the SBC's findings
  and recommended disciplinary action and
  issues a final order.

## How Much Does the Disciplinary System Cost to Operate?

***System Costs About $89 Million.*** The State
Bar reports it cost $89 million (or 45 percent
of total expenditures) to operate its entire
disciplinary system in 2021—most of which
came from its General Fund. As shown in

**Figure 2**, $59 million (or 66 percent) of this total amount supported about 279 positions in OCTC and $14 million (or 15 percent) supported about 42 positions in SBC. The remaining 19 percent supported various other departments involved with the disciplinary system.

## How Much Disciplinary Workload Is Processed Annually?

*OCTC Workload.* Total OCTC workload steadily increased from 2017-18 through 2019-20. The total number of cases opened peaked in 2019-20 with 20,979 cases. The cases opened decreased in the subsequent years. In 2021-22, 16,355 cases were opened—a decrease of 4,624 cases (or 22 percent) from 2019-20. These opened cases are added to OCTC workload that remained unresolved from prior years. As shown in **Figure 3**, the number of cases closed have not matched the number of cases opened annually. This generally resulted in an increase in the number of the cases pending at the end of the year. This increase has generally slowed between 2019-20 (9,668 pending cases) and 2021-22 (10,054 cases).

As reported by the State Bar, **Figure 4** shows the number of cases that are opened and closed by OCTC as well as the number of cases that resulted in the filing of charges. State law allows OCTC to exclude certain types of workload (such as resolving complaints related to the unauthorized practice of law) when reporting certain workload data. Accordingly, Figure 4 excludes such data, which means that the workload numbers will not be the same as those shown in Figure 3, which reflects total workload. As shown in Figure 4, the number of cases opened and closed have fluctuated in recent years. In 2021-22, the State Bar reports opening 14,989 cases and closing 14,409 cases. Of the cases closed, 13,979 cases (or 97 percent) were closed without charges being filed and 430 case (or 3 percent) resulted in charges being filed in the SBC. Less than 4 percent of OCTC cases closed annually resulted in charges filed in SBC between 2017-18 and 2021-22.



Figure 2

**Two-Thirds of Disciplinary System Costs Support OCTC**

2021 (In Millions)

Other $17

SBC $14

OCTC $59

OCTC = Office of Chief Trial Counsel and SBC = State Bar Court.



Figure 3

**Total OCTC Workload Between 2017-18 and 2021-22**

Number of Cases

- Cases Pending at Beginning of Year
- Cases Opened During Year
- Cases Closed During Year

OCTC = Office of Chief Trial Counsel.

*SBC Workload.* As shown in Figure 5, the number of cases received and resolved annually by SBC has fluctuated in recent years. In 2021-22, SBC received a total of 430 cases and closed 514 cases. Of the cases closed, about 89 percent were closed with SBC imposing disciplinary action. The number of cases closed has generally exceeded the number of cases opened in recent years. This has resulted in a steady reduction in the number of cases pending at the end of the year. Specifically, SBC had 637 cases pending at the end of 2021-22—a decrease of nearly 22 percent from 2017-18.

*Case Processing Time Frame Established by Statute for OCTC Workload.* State law currently requires the State Bar to complete the first three stages of the disciplinary process—specifically, for OCTC to dismiss a complaint, admonish an attorney, or file formal charges against an attorney—within six months (or 180 days) after receipt of a written complaint for "noncomplex" cases and 12 months (or 365 days) for "complex" or "complicated" cases. The Chief of OCTC determines which cases are complex or complicated.

The majority of OCTC closed cases are designated as noncomplex. In 2021-22, OCTC closed 14,409 cases—10,593 noncomplex cases (or 74 percent) and 3,816 complex cases (or 27 percent). However, as shown in Figure 6 on the next page, the proportion of total cases closed that are designated as complex has increased in recent years. In 2017-18, the State Bar reports closing a total of 15,052 cases—which included 2,241 complex cases (or 15 percent). This means that the proportion of complex closed cases has increased by 12 percentage points since 2017-18.



Figure 4

## Less Than 4 Percent of OCTC Closed Cases Result in Charges Filed in SBC

Number of Cases

OCTC = Office of Chief Trial Counsel and SBC = State Bar Court.

LAO



Figure 5

## SBC Pending Workload Has Steadily Declined

Number of Cases

SBC = State Bar Court.

LAO

The State Bar reports that the majority of its closed cases meet the time frames specified in statute for the first three stages of the disciplinary process. Specifically, in 2021-22, the State Bar reports that 12,444 closed cases (or 86 percent) met these time frames and 1,965 closed cases (or 14 percent) did not. The number of noncomplex closed cases not meeting these time frames has decreased in recent years. Specifically, 865 noncomplex cases (or 8 percent) closed in 2021-22 did not meet these time frames—a decrease from the 1,938 noncomplex cases (or 15 percent) closed in 2017-18 that did not meet these time frames. In contrast, as shown in **Figure 7**, the number of complex closed cases not meeting these time frames increased in recent years. Specifically, the number of closed complex cases not meeting such time frames increased from 536 cases (or 24 percent) in 2017-18 to 1,344 cases (or 33 percent) in 2020-21, before decreasing slightly to 1,100 cases (or 29 percent) in 2021-22.

## How Does OCTC Operate?

*OCTC Generally Structured Around Teams.* In 2021, OCTC reported 280 staff positions. This amount consisted of 96 attorneys (34 percent); 82 investigators (29 percent); 73 support staff (26 percent), such as paralegals; and 29 other administrative staff (10 percent). The majority of attorneys, investigators, and support staff are organized by teams, with each team reporting to a single supervising attorney. Staff physically located in the State Bar's San Francisco and Los Angeles offices are fully integrated within these teams.



Figure 6

**Proportion of Total Closed Cases Designated as Complex Increasing**

Figure 7

**Increase in Complex Cases Failing to Meet Statutory Time Frames**
Number of Cases

For example, a couple members of a team may be physically located in San Francisco while the rest are located in Los Angeles.

In general, there are two different types of OCTC teams based on their responsibilities—intake teams and trial teams. Intake teams are responsible for the Intake Stage. OCTC maintains two intake teams that each consist of around seven to nine attorneys and four to five support staff. Trial teams are responsible for the Investigation, Charging, and Hearing Stages. OCTC maintains 13 trial teams that each generally consist of around 4 to 6 attorneys, 6 investigators, and 3 to 4 support staff. The one exception is the trial team designated as an "expeditor team" responsible for addressing complaints OCTC believes can be resolved quickly. This expeditor trial team consists of four attorneys, eight investigators, and one support staff. Of the 13 trial teams, three of them each respectively specialize in addressing immigration, unlawful practice of law, and client trust account matters. (The team specializing in client trust account matters is currently a pilot program.) The remaining trial teams (including the expeditor trial team) are typically generalists capable of processing nearly all complaint types.

***Cases Prioritized Based on Potential Public Risk.*** OCTC currently prioritizes cases into three categories based on the risk of potential impact on members of the public. Priority One cases involve serious misconduct or other behavior with the potential for significant or ongoing harm to members of the public. According to the State Bar, the number of cases referred to the trial teams for investigation that can be designated as Priority One is capped at 20 percent due to the availability of resources. Priority Two cases are those that can be easily resolved or have been identified as needing quick (or "expedited") investigation to determine if significant harm could occur. According to the State Bar, Priority Two cases are expedited by assigning them specifically to the expeditor trial team and eliminating certain OCTC tasks. For example, formal investigation plans, investigator reports, and closing memos prepared by investigators and approved by attorneys may be waived for such cases. The State Bar estimates that Priority Two cases represent about 20 percent

of cases not closed in the Intake Stage. Priority Three cases consist of all other cases. Irrespective of their priority designation, some cases may be designated as "major" cases—typically cases those that meet certain criteria such as those alleging significant public harm, likely to generate publicity, or likely to be of special interest to the public.

***Cases Referred for Investigation Prosecuted Vertically.*** OCTC's two intake teams typically review submitted complaints, resolve those that can be closed, and assign case prioritization to those being referred to the trial teams. Cases are typically assigned to trial teams based on the size of the team. When a case is assigned to a specific trial team, the supervising attorney of the team typically assigns both an investigator and attorney to the case in a vertical prosecution model—meaning assigned staff stay with a case from the case initiation to resolution. (In contrast, a horizontal prosecution model has different staff assigned to specific activities or stages of the case.) During the Investigation Stage, the investigator generally obtains necessary evidence, while the attorney approves documents (such as investigative plans and closing memos) and provides legal advice on the case. During the Charging Stage and Hearing Stage, the attorney typically determines whether additional investigation is needed, files charges and/or settles the case, and prosecutes the case in the SBC.

***Workload Formula Developed and Used to Identify OCTC Staffing Need.*** In 2018, the State Bar implemented a workload study to identify the staffing needs for its disciplinary system. Specifically, for OCTC, the State Bar used a random time-study methodology—similar to one used by the judicial branch—to identify all staff activities required to process a case as well as the amount of staff time associated with these activities. The State Bar then used these data to calculate one set of "case weights" for all case types that represent the average amount of staff time each component of a case is expected to take. For example, the State Bar calculated that intake activities average 110 minutes per case while enforcement activities average 3,332 minutes per case. The State Bar then used (1) historical data to identify patterns between the number of filled investigator positions

and the median amount of time required to close a case and (2) staffing ratios (such as a staffing ratio of 1.4 attorneys for every investigator) to calculate the number of staff needed to meet the existing statutory time frame of 180 days to dismiss a complaint, admonish an attorney, or file formal charges against an attorney after receipt of a written complaint for noncomplex cases.

In 2021, the State Bar reviewed the workload formula and identified potential areas of refinement. For example, the State Bar examined six broad categories of case types—such as the notification from banks about insufficient funds in client trust accounts and certain general complaints filed by members of the public—and identified that the number of staff and resources needed to process cases could differ by case types.

## How Does the Legislature Conduct Oversight of the Disciplinary Process?

*Legislature Has Various Tools Available.* The Legislature has various tools to conduct oversight of the disciplinary process. This includes conducting policy hearings, confirming the appointment of the Chief of OCTC, imposing reporting or other requirements on the State Bar through statute, and directing other state entities—particularly the California State Auditor's Office (CSA) and our office—to conduct evaluations and assessments. Key reporting or evaluation requirements in recent years include:

- *Annual Discipline Report.* State law requires the State Bar to submit an annual report by October 31 describing the performance of the disciplinary system for the most recent fiscal year. State law requires the report to include a range of information—such as the number of inquiries received and their disposition, the median and average processing times, and formal disciplinary outcomes. The statistical information must be presented in a consistent manner for year-to-year comparison and, if available, must include the required information for the preceding five years. This annual report is presented to the Chief Justice, the Governor, the Speaker of the Assembly, the President pro Tempore of the Senate, and the Assembly and

Senate Judiciary Committees. The specific requirements included in statute have been modified over time to reflect legislative oversight needs.

- *State Auditor Performance Audits.* State law requires the State Bar to contract with CSA to conduct a performance audit of the State Bar's operations every two years. State law can require certain information be included in particular years. For example, state law requires the 2023 CSA audit (currently in progress) to evaluate the operations of each program—such as OCTC—supported by the annual licensing fees and whether there are appropriate program performance measures in place. The 2023 audit is also required to evaluate how the State Bar administers discipline cases that require an outside investigator or prosecutor and how that process can be improved, including the cost-effectiveness and timeliness of such investigations and prosecutions. The audit in progress shall be presented by April 2023 to the State Bar Board of Trustees, the Chief Justice, and to the Assembly and Senate Judiciary Committees.

- *One-Time Evaluations.* Statute has been enacted in recent years to require one-time evaluations related to aspects of the State Bar's disciplinary process. For example, SB 211 required CSA to submit a report by April 2022—which has been completed—evaluating whether the disciplinary process adequately protects the public from attorney misconduct, including whether the State Bar takes reasonable steps to determine the existence and extent of alleged misconduct. Additionally, our office was directed to conduct an evaluation of the State Bar's proposed fee increase in 2019, since a portion of the increase would support additional OCTC disciplinary staff.

*Reports Consistently Raised Concerns With Disciplinary Process and Level of Resources Needed.* Various CSA reports have regularly raised concerns with the efficacy of the disciplinary process, the reporting of data, and the use and/or level of resources. Similarly, our office also

raised some concerns in 2019. Key findings and recommendations from these recent reports include:

- *Some Attorneys Not Held Accountable for Misconduct.* The April 2022 CSA report found that (1) some cases were prematurely closed that warranted further investigation and potential discipline, (2) weak processes allowed attorneys who engaged in misconduct in other states to continue practicing in California, and (3) information that the State Bar provided its staff limits their ability to identify patterns of complaints. The report also found that weak safeguards have hampered the State Bar's ability to prevent repeated violations associated with client trust accounts. To address these concerns, CSA presented various recommendations including directing the State Bar revise policies to (1) define specific criteria for the closure of cases using nonpublic disciplinary measures, (2) begin using complaint type categories when determining whether to investigate a complaint in order to more easily identify patterns of similar complaints against an accused attorney, and (3) require staff take certain actions when investigating client trust account complaints.

- *Organizational Changes Decreased Operational Efficiency.* In April 2021, CSA found that the State Bar's changes to its disciplinary system—specifically, converting OCTC trial teams from specialist teams that handle particular case types to generalist teams who generally handle all case types and promoting some of its most senior attorneys to full-time supervisors in 2017—significantly reduced the efficiency of the system by significantly increasing case processing times and the backlog of cases even with attorneys being disciplined at a significantly lower rate. To address these concerns, the report made various recommendations, including directing the State Bar to (1) assess how OCTC's current organizational structure has impacted its ability to efficiently resolve cases and determine whether additional changes are needed and (2) establish a backlog metric,

determine appropriate backlog goals, and determine the level of resources needed to meet such backlog goals.

- *Annual Discipline Report Needs Improvement.* The April 2021 CSA report also found that the State Bar's lack of adequate monitoring has hampered its ability to detect problems in its disciplinary system. CSA also raised concerns with the annual discipline report submitted by the State Bar, including that the report does not fully and consistently provide information about the disciplinary system. To address these concerns, CSA made various recommendations, including requiring appropriate State Bar review and approval of the annual discipline report to ensure information is accurate, complete, and consistent.

- *Request for Additional Resources Premature.* In 2019, the State Bar proposed increasing the annual licensing fee by $40 for active attorneys to support 58 additional OCTC staff to improve disciplinary case processing times. Both the April 2019 CSA report and our June 2019 report found that this request was premature since recently implemented operational changes—such as to the existing organizational structure and case prioritization methodology—were still in the process of being implemented and would not be reflected in the workload study used to calculate the additional resources requested. As such, both offices recommended a fewer number of positions until the impact of the recently implemented changes were known. This resulted in a lower fee increase than originally proposed.

- *Workload Formula May Require Revision.* In 2019, both CSA and our office raised concerns that the State Bar's workload study may not accurately identify staffing needs. Our office specifically found that (1) the case weights capture the average amount of time it takes for OCTC to process a case with existing staffing levels, rather than the time that would be needed to process cases within existing statutory time frames; (2) different case

weights may be needed for different complaint types or priority categories to the extent they require different levels or combinations of disciplinary tasks; and (3) fewer staff could be required if the Legislature changed the statutory time frames.

- *Proposal for Annual Inflationary Adjustment Lacked Justification.* In 2019, the State Bar requested the authority to annually adjust the annual licensing fee, including the existing $25 disciplinary fee (as shown in Figure 1 above), to account for inflation. Our office found that there was a lack of justification for the proposed authority and that the request could severely limit legislative oversight over State Bar operations. Our overall review of State Bar programs indicated that increased legislative oversight could be beneficial and suggested various options for legislative consideration—including potentially including the State Bar in the annual state budget process or approving a fee specifically to support the disciplinary process.

The Legislature has used these various reports in different ways—including changing existing state law, determining the appropriate fee level to approve, and informing discussions with the State Bar. For example, as recommended by CSA, the Legislature amended state law to change the due date for submission of the State Bar's annual discipline report from April 30 to October 31 of each year in order to provide the Legislature with sufficient time to review the discipline report before considering action on the annual fee bill.

# STATE BAR PROPOSAL

*Analysis Required by SB 211.* Senate Bill 211 expressed the Legislature's intent to codify new case processing standards (or time frames) to replace the existing statutory time frames for OCTC to dismiss a complaint, admonish an attorney, or file formal charges against an attorney. To assist with this, SB 211 required the State Bar to propose case processing standards by October 31, 2022 for review by our office. Specifically, the legislation directed the State Bar to propose standards with the goals of (1) resolving cases in a timely, effective, and efficient manner within OCTC; (2) allowing for only small backlogs of attorney discipline cases; and (3) protecting the public. Certain case types—such as the unauthorized practice of law—would be excluded from these standards. The new standards should also consider all relevant factors—including the mechanics of the discipline process, public risk, reasonable public expectations for the resolution of cases, and the complexity of cases. In preparing the standards, the State Bar was required to review attorney disciplinary system case processing standards in at least five states with strong and effective systems, consult with experts on attorney discipline, and review relevant CSA and LAO reports. Finally, SB 211 required that the report from the State Bar include the staffing requirements needed to achieve the new case processing standards being proposed.

The State Bar provided its report on October 28, 2022. In this section, we summarize the key components of the report: (1) new case processing standards, (2) the establishment of a backlog goal and metrics for measuring it, and (3) a staffing analysis.

## New Case Processing Standards

*Prioritizes Cases Based on Both Risk and Complexity.* As discussed earlier, cases are currently prioritized based on risk to members of the public. The State Bar proposes to instead prioritize cases based on both risk and case complexity. Higher-risk cases would include those where the alleged attorney's behavior has caused, or has the potential to cause, significant harm to clients and members of the public. Such cases could include those where clients may have been misled when settling cases, misappropriation of client funds for which restitution has not been paid, or allegations of misconduct to vulnerable populations (such as immigrants and seniors).

It could also include cases in which there are multiple complaints or recurring complaints against the same attorney. The State Bar estimates that 30 percent to 40 percent of cases not closed in Intake would be designated as higher-risk cases.

Higher-complexity cases tend to require longer investigation. For example, such cases could include those cases (1) where multiple charges against an attorney arise from multiple events, (2) designated as "major cases," (3) requiring subpoenas to banks or other third-party entities; (4) where analysis of a large number of documents (such as bank records) may be needed; or (5) where an accused attorney is unresponsive. According to the State Bar, these are the same factors it currently uses to designate cases as complex.

***Proposes Average Case Processing Times in Six Categories.*** The State Bar proposes six case categories based on when a case is closed, the stage at which it is closed, and the case risk/complexity. Specifically, the six case categories are: (1) closed in Intake; (2) high-risk, noncomplex cases closed after Investigation; (3) low-risk, noncomplex cases closed after Investigation; (4) high-risk, complex cases closed after Investigation; (5) low-risk, complex cases closed after Investigation; and (6) cases closed or filed in Charging. As shown in **Figure 8**, for each case category, the State Bar proposes an average case processing standard. For example, the State Bar proposes a 120-day average case processing standard for closing high-risk, noncomplex cases after Investigation—a decrease of 47 days (or 28 percent) from the current average.

Across all six categories, the State Bar proposes to reduce average case processing times by 24 percent to 33 percent. Times in which cases are deferred (or suspended) pending separate criminal or civil litigation are excluded from the case processing standards.

The State Bar calculated the proposed average case processing standards by taking current case processing times for cases closed or filed between 2018 to 2021 (four years) and adjusting them in various ways. First, the State Bar did not include the number of days between case processing events—meaning from the end of one processing event to the start of the next processing event—if the number of days exceeded 59 days. Specifically, if the time period between two different events was 60 days or more, the entire time period would be removed before average processing times were calculated. For example, if a case took 300 days but had a 65 day time period between processing events, the case processing time for that case would be adjusted to 235 days. According to the State Bar, 44 percent of cases closed or filed between 2018 to 2021 were impacted by this adjustment. Second, the processing times were adjusted to be more similar to the caseload processing standards of six other states: Arizona, Colorado, Illinois, Maryland, New Jersey, and Texas. The times were further adjusted based on the State Bar's consultation with three experts on attorney discipline and the State Bar's review of reports by CSA and our office related to the disciplinary system. Finally, the State Bar conducted five internal focus groups of OCTC attorneys and investigators to solicit feedback on the proposed

Figure 8

## State Bar Proposed Average Case Processing Times Compared to Current Average Case Processing Times

| Case Category | Average Case Processing Times | | | |
| --- | --- | --- | --- | --- |
| | Proposed (in Days) | Current (in Days) | Difference | Percent Difference |
| 1: Closed in Intake | 30 | 42 | -12 | -29% |
| 2: Closed After Investigation—High-Risk, Noncomplex Cases | 120 | 167 | -47 | -28 |
| 3: Closed After Investigation—Low-Risk, Noncomplex Cases | 150 | 197 | -47 | -24 |
| 4: Closed After Investigation—High-Risk, Complex Cases | 180 | 248 | -68 | -27 |
| 5: Closed After Investigation—Low-Risk, Complex Cases | 210 | 307 | -97 | -32 |
| 6: Closed or Filed in Charging | 300 | 449 | -149 | -33 |

standards, compared the proposed standards to the standards used by Department of Consumer Affairs (DCA) licensing boards and bureaus, and solicited public feedback.

*Changes Definition of "Filing Charges" for Case Processing Standards.* The State Bar proposes to change the definition of filing charges for the purpose of the case processing standards. (This impacts the proposed case category: "Closed or Filed in Charging.") As discussed above, if requested by the accused attorney, at least one ENEC is mandatory before charges can be filed. Since such meetings require coordination with both the accused attorney and the SBC, the State Bar asserts that OCTC loses control over the timeliness of the charging process at that time. As such, the State Bar proposes to change the definition of "Filed in Charging" to mean the date the accused attorney is notified of their right to request an ENEC—if one is ultimately conducted. If an ENEC is not conducted, the definition remains the date on which OCTC files charges or negotiated resolution with the SBC. If this proposed definition is not adopted, the State Bar recommends increasing the proposed average case processing standard for "Cases Closed or Filed in Charging" from 300 to 330 days.

## Establishment of Backlog Goal and Metrics to Measure Goal

*Proposes Backlog Goal of 10 Percent or Less.* The State Bar proposes defining an appropriate backlog goal of 10 percent or fewer cases. According to the State Bar, this means that no more than 10 percent of cases should be in backlog status at any time.

*Proposes Backlog Standards for Each Proposed Case Processing Standard.* For each of the proposed case processing standards discussed above, the State Bar proposes a calculated backlog time standard. Specifically, the State Bar proposes backlog standards that are 150 percent of the proposed average case processing time for each case category. For example, as shown in Figure 9, the State Bar proposes an average case processing standard of 120 days for high-risk, noncomplex cases closed in the Investigation Stage and a backlog standard of 180 days. This means that high-risk, noncomplex cases that take longer than 180 days to close in the Investigation Stage would be deemed to be "closed in backlog" or "not meeting goals." The number of such cases in each case category would be added together to calculate a single backlog measure.

## Staffing Analysis

*Defers Comprehensive Staffing Analysis to 2023.* Senate Bill 211 required that the State Bar provide a staffing analysis to identify the resources needed to achieve the proposed case processing standards. The State Bar states that a comprehensive final staffing study will be deferred and instead initiated in 2023. The reasons for this delay are to incorporate legislative direction on the proposed case processing standards as well as various OCTC operational changes that are currently in progress or are being considered. Examples of such operational changes include:

- Potential changes related to OCTC's generalist teams after analyzing various opinions and concerns raised by employees, stakeholders, and others about these teams.

- Potential changes to reduce or simplify unnecessary steps, as well as use the appropriate staff for certain tasks (for example, whether certain tasks are best conducted by attorneys or support staff).

Figure 9

## State Bar Proposed Backlog Standards

| Case Category | Average Case Processing Times (in Days) | Backlog Standard (in Days) |
|---|---|---|
| 1: Closed in Intake | 30 | 45 |
| 2: Closed After Investigation—High-Risk, Noncomplex Cases | 120 | 180 |
| 3: Closed After Investigation—Low-Risk, Noncomplex Cases | 150 | 225 |
| 4: Closed After Investigation—High-Risk, Complex Cases | 180 | 270 |
| 5: Closed After Investigation—Low-Risk, Complex Cases | 210 | 310 |
| 6: Closed or Filed in Charging | 300 | 450 |

- Distribution of fliers to all accused attorneys advising them of the importance of having counsel in State Bar disciplinary proceedings in January 2022. (We note that this change resulted from a State Bar contracted study on racial disparities in attorney discipline that found accused Black attorneys were less likely to be represented by counsel than white attorneys.)

- Deployment of operational reports to track key performance measures in 2022 and plans on continuing to develop and test new data reports to help OCTC staff improve efficiency.

The State Bar indicates that the comprehensive staffing analysis will consider a range of factors. These include: risk and complexity to ensure that different cases receive case weights; staffing needs, responsibilities, and expertise (such as the impact experience, turnover, and training has on workload processing speed and the amount of time available for work); the appropriate ratios of staff types (such as attorneys versus administrative support staff); and the allocation of staff time across complaint types and case processing activities.

***Provides Preliminary Estimates of Staffing and Resource Need.*** To meet the requirements of SB 211, the State Bar provides preliminary estimates of the level of staffing and resources needed to meet the proposed case processing standards. Two different methods were used to calculate these preliminary estimates—the workload formula and a mathematical calculation. **Figure 10** summarizes the estimated staffing needs under each method.

- ***Workload Formula.*** This method is based on the existing workload formula developed by the State Bar. The workload formula calculated a need for an additional 119 positions (or a 44 percent increase in staff based on filled positions)—47 attorneys, 25 investigators, 40 support staff, and 7 supervisors. An estimated $16.3 million would be needed to support these additional positions. To support this increased cost, an estimated $83 increase in the annual licensing fee paid by active attorneys would be required.

- ***Mathematical Calculation.*** This method mathematically compares the changes in the current and proposed case processing standards, and assumes that a similar increase in staffing levels would be needed to achieve them. Specifically, the State Bar noted that the proposed caseload standards would result in the reduction of the average case processing times by 29 percent. The State Bar then assumed that a similar percentage increase in investigator staffing levels would be needed to achieve the proposed caseload processing standards. Increases to other positions, such as attorneys, were based on ratios similar to the workload formula. For example, the calculation included a staffing ratio of one attorney for every investigator. In total, this method calculated a need for an additional 78 positions (or a 29 percent increase in staff based on filled positions)—23 attorneys, 23 investigators, 25 support staff, and 7 supervisors. An estimated $10.6 million would be needed to support these additional positions. To support this increased cost, an estimated $55 increase in the annual licensing fee paid by active attorneys would be required.

Figure 10

## State Bar Preliminary Estimate of Additional Staffing Needs

| Staff Type | Filled Positions (2021)[a] | Workload Formula Calculation | | Mathematical Calculation | |
|---|---|---|---|---|---|
| | | Additional Staff Needed | Percent Increase | Additional Staff Needed | Percent Increase |
| Attorney | 80 | 47 | 59% | 23 | 29% |
| Investigator | 79 | 25 | 32 | 23 | 29 |
| Support | 88 | 40 | 45 | 25 | 28 |
| Supervisor | 25 | 7 | 28 | 7 | 28 |
| **Totals** | **272** | **119** | **44%** | **78** | **29%** |

[a] Differs slightly from earlier-referenced numbers due to various factors, such as whether positions were filled.

# ANALYST'S REVIEW OF STATE BAR PROPOSAL

The State Bar's submitted report fulfills the requirements specified in SB 211. Specifically, the State Bar developed the standards after considering the timely and effective processing of cases, potential impacts on public protection, and the allowance of small backlogs of attorney discipline cases. As required, to inform this work, the State Bar reviewed disciplinary systems in six other states, consulted with experts on attorney discipline, reviewed CSA and LAO reports, and solicited public feedback on the proposed standards.

In this section, we provide our review of the State Bar's report. Specifically, we provide our assessment and identify key questions for legislative consideration for the entire proposal as well as for each of the three key components of the report: (1) the proposed new case processing standards, (2) the establishment of a backlog goal and metrics to measure the goal, and (3) the staffing analysis.

## OVERARCHING COMMENTS

### Assessment

*Assumes Existing Disciplinary Process Is Generally Reasonable.* While the State Bar continues to consider operational and procedural changes to improve OCTC efficiency and efficacy, the State Bar's proposed case processing standards generally assume that the existing steps of the disciplinary process are reasonable and should be maintained.

*Lack of Legislative Approval of State Bar Budget Can Make Oversight Difficult.* As discussed above, unlike nearly all other state licensing entities that regulate professions, the State Bar's budget is not reviewed by legislative budget committees through the

annual state budget process. The State Bar is also not required to justify changes to existing budget levels and requests for additional revenues in the same manner as these other entities. This can make it difficult for the Legislature to ensure that the fees authorized annually align with expenditure levels that match legislative priorities and expectations for how such funding will be used.

### Key Questions for Legislative Consideration

*Are Existing Disciplinary Procedures Reasonable?* The Legislature will want to consider whether the existing disciplinary procedures are reasonable or if changes are warranted. This is because the specific steps in the process impact how long it takes to resolve cases, how OCTC should be organized and operated, and the specific level of resources needed. For example, as shown in Figure 11, the average amount of time needed to file cases in the SBC increased by 41 percent between 2017-18 (466 days) and 2021-22 (658 days), and the median amount of time increased by 47 percent between 2017-18



Figure 11

**Average and Median Times Needed to File Cases in SBC Increasing**

Number of Days

SBC = State Bar Court.

(401 days) and 2021-22 (591 days). To the extent that that Legislature would like to reduce such times, it could consider eliminating ENECs. We note that the attorney discipline experts consulted by the State Bar noted that California is the only jurisdiction that they are aware of which uses a formal ENEC before charges are filed. The experts suggested eliminating the ENEC prior to charging and shifting it to after charges have been filed in the SBC. Prior to charges being filed, accused attorneys would continue to be able to informally pursue settlement discussions with OCTC (which they currently are able to do).

*What Level of Legislative Oversight Is Needed?* The Legislature will want to consider what level of oversight it wants to exercise over State Bar processes and funding. As noted above, we previously indicated in 2019 that increased legislative oversight could be beneficial. One such option to consider is including the State Bar in the annual state budget process to increase legislative oversight by leveraging the expertise of the budgetary committees to evaluate State Bar funding requests in a manner similar to other state departments. (The Assembly and Senate Judiciary Committees would retain policy oversight. This would be similar to what is in place for certain other state licensing departments.) Additionally, requiring the State Bar to submit budgetary information in a manner similar to other state departments would enable easier comparison to ensure standardized or similar treatment across the various departments responsible for licensing professions. Another option to increase transparency and oversight is to consider a fee specifically to support the disciplinary system to ensure the State Bar uses the funding for this specific purpose. The current $25 disciplinary fee generates around $5.7 million annually—significantly less than is needed to support the entire disciplinary system. The Legislature could consider adjusting this fee and directing that this fee be placed in a special fund specifically for disciplinary system purposes. This would enable the Legislature to ensure that the authorized level of funding was used to support legislatively expected service levels.

# NEW CASE PROCESSING STANDARDS

## Assessment

*Reasonable to Include Both Risk and Complexity in Case Prioritization System...* We find that it is reasonable for OCTC to prioritize cases based on both the actual or potential risk of public harm and case complexity. Prioritizing and more quickly addressing high-risk cases can help stop an attorney from continuing to engage in problematic behavior and can help obtain justice or restitution for those who are wronged. Additionally, it is reasonable to expect more complex cases to take more time than noncomplex cases to thoroughly investigate, obtain clear and convincing evidence, and resolve. The failure to dedicate sufficient investigatory and prosecutorial time to high-risk and complex cases could result in harm to the public to the extent accused attorneys do not ultimately receive the appropriate level of discipline. We would note, however, that the specific definitions of what types of cases constitute high/low risk as well as complex/noncomplex will be important and should be consistently defined over time. Without clear and consistent definitions, this could result in data reporting fluctuating over time and make comparison difficult—thereby making it difficult to conduct meaningful oversight of OCTC performance. As noted before, existing statute authorizes the Chief of OCTC to determine which cases are complex.

*...But Unclear Why Proposed Case Processing Standards for Cases Closed or Filed in Charging Do Not Incorporate Risk.* Two of the six case categories—specifically those closed in Intake and those closed or filed in Charging—for which the State Bar proposes case processing standards do not explicitly differentiate cases based on risk and complexity. As such, only one case processing standard is proposed for those two case categories—in contrast to the four different standards proposed for cases closed after Investigation. According to the State Bar, cases closed in Intake should inherently be cases that are low risk and noncomplex. Cases of greater risk and complexity should be referred for investigation. We find this logic to be reasonable.

For cases closed or filed in Charging, the State Bar believes that cases that reach this stage are inherently more complex in nature and that risk does not greatly impact the amount of time needed to process the cases. However, if high-risk cases are prioritized in the Investigation Stage, it would be reasonable to assume that those cases would be referred to the Charging Stage more quickly for resolution. This means that the overall amount of time needed to process high-risk cases would likely be less than the amount of time needed to process low-risk cases. Arguably, such cases *should* be expected to be resolved more quickly given the actual or potential for public harm.

***Case Processing Standards Do Not Reflect Full OCTC Workload.*** Both the existing statutory time frames and the proposed case processing standards do not reflect full OCTC workload. Specifically, the case processing standards do not include the Hearing Stage in which OCTC staff engage in activities to prosecute and resolve cases in SBC. Such a metric would be helpful to capture how long it takes to resolves cases generally. For example, DCA includes a formal discipline performance benchmark of 540 days from the complaint receipt through the completion of the entire disciplinary process for cases that are forwarded to the Attorney General for disciplinary proceedings (including intake and investigation).

OCTC should not be solely responsible for achieving a particular time standard as case processing in the Hearing Stage requires coordination with SBC and accused attorneys. However, OCTC is a key participant whose actions will impact the overall ability to effectively resolve cases in the Hearing Stage. As such, OCTC should continue to monitor and to improve the efficacy and efficiency of its actions in this stage. A time standard would provide an expectation for how long it should take to resolve those cases that may result in the most severe disciplinary actions. This serves as a benchmark to measure against actual completion times. In combination with other reporting requirements, the State Bar and Legislature would be better positioned to monitor and identify the particular areas where delays are occurring or where operational, procedural, or staffing changes could improve case processing efficiency or quality.

For example, the Department of Justice (DOJ)—who is responsible for representing DCA licensing boards and bureaus before the Office of Administrative Hearings—reports annually on key metrics to provide greater insight into DOJ-specific actions contributing to overall formal discipline case processing times. Such metrics include the average, median, and standard deviation number of days (as well as the number of cases) for fully adjudicated matters from receipt of the complaint from investigators to when charges are filed; from the filing of an accusation to when a stipulated agreement is reached; from the filing of charges to when a hearing date is requested; and from the date a hearing was requested to when a hearing commenced. We note that OCTC and SBC are fully located within the State Bar, which should make cooperation easier, in contrast to DCA licensing disciplinary processes that require coordination across several separate state entities.

***New Filed in Charging Definition Further Reduces Measurement of OCTC Workload.*** As discussed above, the State Bar proposes to change the definition of filed in Charging to mean the date an accused attorney is notified of their right to request an ENEC—if such a meeting is ultimately conducted. If a meeting is not conducted, the definition remains the date on which OCTC files charges or a negotiated resolution with the SBC. This new definition could exclude a potentially significant amount of time and OCTC workload from the proposed case processing standards. According to the State Bar, more than half of cases that request an ENEC will require multiple ENECs. Multiple ENECs can add an average of 79 days to case processing times for cases to close or for charges to be filed in the Charging Stage.

***Unclear Extent to Which Proposed Standards Are Reasonable.*** In developing the proposed case processing standards, the State Bar assumed that it was unreasonable for there to be time periods of 60 days or more between case processing events. This is because, during such time periods, cases were effectively sitting idle awaiting OCTC staff to take action. The State Bar acknowledges that this is an aggressive approach that assumes that such idle time periods will no longer occur—rather than assuming that idle periods will be shorter in length. It also acknowledges that this approach

could mean that time needed for the investigation process may have been mathematically removed as well. However, the State Bar believes that this is an appropriate starting point as it is reasonable to expect that such idle periods should not exist in cases that have not been deferred and that it provides an estimate of the minimum amount of time required for thorough investigation when there is sufficient staff and resources.

We find that it is reasonable to attempt to minimize the amount of time that cases are sitting idle. However, it is unclear to us how much necessary investigatory or charging time was removed as part of this analysis. For example, conversations with State Bar staff indicated that it could sometimes take more than 60 days for banks to provide documents that are subpoenaed to investigate cases that involve client trust accounts. Such cases that require this investigatory step likely are forced to sit idle while OCTC staff wait for documents to be provided. However, the cases processing standards assume no unavoidable idle times like this take place despite the delays being arguably justified as OCTC requires such information (and cannot obtain it via alternative means) to fully investigate and resolve such cases. Similarly, an April 2021 CSA report documented that the State Bar indicated that it typically takes six months (180 days) or more for the federal government to provide requested immigration records. It is unclear the extent to which OCTC will be able avoid such idle times and/or if they impact particular types of cases. As such, it is unclear the extent to which these case processing standards are reasonable. If case processing standards are unreasonable, it is possible that the quality of case processing—such as the thoroughness of investigations or the proposed disciplinary action—will decrease in order to meet the standards. For example, a July 2015 CSA audit found that the State Bar's focus on reducing an excessive backlog of disciplinary cases in the years preceding the audit resulted in a decrease in the severity of discipline imposed.

We note that alternative approaches may have also been possible. For example, the State Bar could have identified those cases that it believed to be accurate representations of the amount of time

needed to process specific types of complaints and used them to calculate proposed case processing standards. In such an approach, there may be time periods where a case sits idle for more than 60 days—which is reasonable if there is a clearly identified rationale and need for the case to sit idle. The benefit of such an approach is that the resulting case processing standards would be based on actual investigatory and prosecutorial need.

***Unclear Impact of Implemented or Potential Operational and Procedural Changes.*** As noted above, various operational and procedural changes to OCTC processes have recently been implemented. The full impacts of some of these changes are unknown—such as the practice of providing flyers to all accused attorneys notifying them of the benefits to hiring legal counsel as of January 2022. To the extent more legal counsel is hired, it could result in cases taking more time (such as if the accused attorney refuses to settle and chooses to fight the case) or less time (such as if hired counsel helps an accused attorney realize that early settlement of a case would be beneficial). Other changes have drawn concern and/or require additional evaluation. For example, CSA recently identified concerns that the organizational shift to generalist teams decreased operational efficiency, even with attorneys being disciplined at a lower rate. Additionally, the State Bar notes that other potential changes—such as those raised in conversations with staff and stakeholders during the preparation of the State Bar's case processing report—are in the process of being considered and/or implemented. We also note that other changes could be forthcoming as a new Chief of OCTC joined the State Bar in October 2021. Lacking information on the impact of such changes makes it difficult to assess whether they will help staff achieve the proposed case processing standards.

***Annual Reporting Requirements Will Need to Be Updated.*** State law requiring reporting of data and metrics in the State Bar's annual discipline report will need to be updated, regardless of which specific case processing standards are finally adopted by the Legislature. Specific data and metrics will be needed to measure annual performance against any adopted benchmarks.These include those directly related

to the proposed standards. For example, such data and metrics could include average processing times for cases closed at the various disciplinary stages categorized by their risk and complexity, as well as the number of cases deferred and the amount of time that passes while the cases are deferred. Other data and metrics would also provide helpful context. For example, it could be helpful to have mean, median, and standard deviation data between specific steps taken by staff in the disciplinary process—such as the time period between complaint receipt and referral to investigation, as well as the time period between the completion of investigation to the notification of the accused attorney of their right to an ENEC before charges can be filed. Without such metrics, it will be difficult for the Legislature to conduct meaningful and consistent oversight of the disciplinary process and identify potential areas of improvement or concern.

Additionally, to ensure that data is comparable across reports, it is important to clearly specify the definitions for the statistics and metrics included in the report. This should include a requirement for the State Bar to provide clear explanations any time changes are made in the definitions, criteria, or methodologies used to pull and report data. This will ensure that the Legislature receives the necessary information and that performance can be compared consistently and accurately. It would also address CSA concerns that the annual discipline report does not fully and consistently provide information about the disciplinary system.

## Key Questions for Legislative Consideration

***Should There Be Case Processing Standards for the Entire Disciplinary Process?*** The Legislature will want to consider whether there should be case processing standards to monitor the entire disciplinary process or simply OCTC. Focusing on the entire system places responsibility on the State Bar to ensure that OCTC *and* SBC coordinate effectively with one another. It also provides OCTC with an incentive to comprehensively consider the efficacy and efficiency of actions throughout the disciplinary process. Finally, standards for the entire system would also enable the Legislature to identify whether operational or

procedural changes or additional resources are needed by SBC to effectively resolve discipline cases in their entirety—arguably what members of the public would be most concerned about.

***Are Greater Differentiations in the Case Processing Standards Needed?*** In additional to risk and complexity, the Legislature may want to consider whether additional factors should be considered in the establishment of new case processing standards. This would help ensure that disciplinary workload is measured against appropriate benchmarks. For example, the Legislature could have cases that are closed or filed at the Charging Stage incorporate risk as well. The Legislature could also have separate standards for certain types of cases to be prioritized (such as complaints related to client trust funds) or "repeater" cases where there are numerous prior or current complaints against the same attorney.

***Are Changes to OCTC's Organization and Operation Needed?*** The Legislature will also want to consider whether changes to OCTC's current organization and operation are warranted. This is because how OCTC is structured impacts how effectively and efficiently it operates. For example, the Legislature could prefer more specialized trial teams based on case type or approach (such as more expeditor teams) or the use of horizontal prosecution in certain case types or at certain stages of the disciplinary process. Specialized teams or specializing in particular tasks through the use of horizontal prosecution focuses staff work in particular areas which could result in the processing of cases more efficiently and effectively as staff would be more familiar with how to investigate (such as what evidence is needed and how to obtain that evidence) and prosecute such cases.

***How Aggressive Should Case Processing Standards Be?*** The Legislature will want to consider how aggressive case processing standards should be. More aggressive standards will either require a greater increase in resources or more significant operational and/or procedural changes. We note that State Bar staff indicated in focus groups that the State Bar's proposed case processing standards were only achievable if staff caseload was generally lower than existing caseload levels.

At the same time, if the standards are unreasonable (or even unachievable), the quality of investigations and the severity of discipline obtained may suffer. Accordingly, the Legislature may want to consider adopting less aggressive case processing standards. For example, the State Bar identified that about 26 percent of cases that closed after the Intake Stage or resulted in charges being filed between 2018 to 2021 had time periods of 90 days or more where cases were sitting idle and 16 percent had time periods of 120 days or more where cases were sitting idle. As shown in Figure 12, if the Legislature chooses the same approach as the State Bar in which idle time periods of a certain duration are mathematically removed, selecting one of these less aggressive standards—in which times periods of (1) 90 days or more or (2) 120 days or more, respectively, are mathematically removed—would still likely result in improved case processing times but reduce the likelihood that necessary investigatory or charging time is eliminated.

***What Data and Metrics Are Needed to Conduct Legislative Oversight?*** The Legislature will want to consider what specific data and metrics should be required by state law in the annual discipline report to enable effective legislative oversight. The State Bar completed implementation of a new case management system in 2019 that captures more case processing information. As such, more data is potentially available for reporting. In developing such metrics, the Legislature will want to consider what level of detail is necessary to comprehensively and accurately assess disciplinary workload and processing. For example, the Legislature could include some of the statutory reporting requirements related to DCA licensing cases referred to DOJ for prosecution. Additionally, the Legislature could place requirements on the State Bar to ensure that data is being pulled and reported consistently and



Figure 12

**Comparison of 2021 Case Processing Times Assuming Removal of Certain Amounts of Time Where Cases Were Idle**

accurately from year to year. Clearly specifying specific data and metrics, as well as other requirements (such as requiring descriptions of any changes in methodology in pulling and reporting data or prohibiting such changes without legislative approval) will ensure the State Bar consistently and accurately reports the information desired by the Legislature. Such metrics would help the Legislature to conduct meaningful and consistent oversight of the disciplinary process, hold the State Bar accountable for its performance, and identify potential areas of improvement or concern.

# ESTABLISHMENT OF BACKLOG GOAL AND METRICS TO MEASURE SUCH GOAL

## Assessment

*Alternative Definition of "Small Backlog" Could Also Be Reasonable.* The State Bar proposes that a small backlog of cases should constitute 10 percent or fewer cases. This was generally selected as a statistical indicator of outliers—cases that take significantly more time to process than other cases. It would be equally reasonable to select a different percentage.

For example, it could be reasonable to define a small backlog as 15 percent or fewer cases. As noted above, in 2021-22, 14 percent of total closed cases did not meet the statutory time frames to dismiss a case, admonish an attorney, or file formal charges against an attorney within 180 days for noncomplex cases and 365 days for complex cases.

***Proposed Standard Effectively Sets an Upper Limit Goal for Processing Cases.*** The State Bar's proposed case processing standards are based on averages, which means that there are cases that will take both more and less time. In order to ensure that only 10 percent or fewer cases in each case category exceed the proposed backlog standards, the State Bar expects 90 percent of cases closed or filed in the SBC will not exceed these proposed standards—meaning a certain number of cases are expected to exceed these standards. As such, the proposed standards effectively set an upper limit goal for processing cases. For example, the State Bar proposes an average case processing standard of 120 days for high-risk, noncomplex cases closed in the Investigation Stage and a backlog standard of 180 days. This means that nearly all such cases should aim for closure in under 180 days. Such an upper bound can help limit the number of cases that could otherwise drag on without valid reasons.

***Backlog Metrics Tend to Measure Pending, Rather Than Closed, Workload.***
Our understanding is that backlog metrics tend to measure pending workload in order to provide administrators, policymakers, and others with timely information on when workload is outstanding and/or not able to be completed in a timely manner. For example, state law prior to 2021 generally defined annual backlog as cases that were pending—meaning that OCTC did not dismiss a complaint, admonish an attorney, or file formal charges against an attorney—six months after complaint receipt as of December 31 of the preceding year. State law required reporting on

this backlog, including the age of the cases in the backlog. By focusing on pending workload, such metrics provide a sense of how much work has not been started or remains unaddressed (such as due to long gaps between case processing events).

In contrast, the proposed backlog time standards are based on closed workload. This means that cases that remain open, for whatever reasons, will not be captured. For example, a case that remains open in the Investigation Stage for over a year—such as due to a lack of staff to investigate the case or because the investigation is complicated and lengthy—would not be reflected as backlog. Such a case would only be reflected under the proposed standards once it was closed after Investigation or in Charging, or if charges were filed—which could be some time in the future. As shown in **Figure 13**, backlog data reported in 2020 under the prior state definition demonstrates that at least half of cases remained open longer than one year after complaint receipt. About 20 percent to 25 percent of cases remained open for more than two years—including some that were pending for more than five years. Measuring pending workload helps ensure that all cases are being captured and monitored in real time. This provides administrators, policymakers, and others with the ability to conduct effective and timely oversight.



Figure 13

## At Least Half of Backlog Cases Open More Than One Year After Complaint Receipt
Number of Cases

Legend:
- Over Two Years
- Over One Year - Two Years
- 181 Days - One Year

**Good Reasons Why Cases May Remain Pending.** There may be good reasons why cases remain pending. For example, some cases may be deferred pending resolution of criminal or civil cases. Some cases may also be deferred, or take longer to resolve, if OCTC is already pursuing serious discipline against an accused attorney or if numerous complaints are being assessed to see if OCTC can establish a case that there has been gross negligence or a pattern of repeated failures to provide competent service. According to the State Bar, one of the attorney discipline expert consultants raised concern that deferral was overused and that OCTC is developing guidelines for case deferral. Appropriate backlog metrics should separately categorize workload that is pending for valid, clearly understandable reasons and those that are not.

## Key Questions for Legislative Consideration

**How Should Backlog Be Defined and Calculated?** The Legislature will want to consider what is an appropriate backlog definition. The Legislature could restore the definition used previously or develop new ones. For example, the Legislature could define backlog to constitute cases that were pending after 300 days without case closure, admonishment, or filing of charges from date of receipt. (This is the time proposed by the State Bar by which 90 percent of cases that reach the Charging Stage should either be closed or result in the filing of charges.) At minimum, we recommend the Legislature focus this definition on pending workload so that it can monitor OCTC workload in a comprehensive and timely manner. It is also important to define how backlog should be calculated. For example, the Legislature could exclude cases deferred for valid reasons from the calculation of backlog. This would mean that the backlog metric would only reflect those cases for which there is a lack of resources or no valid reason for delay. We note that the criteria for deferral would be important in this situation and could merit legislative consideration as well.

**Should There Be a Single Backlog Metric?** The Legislature will want to consider whether there should be a single backlog metric. For example,

the State Bar proposes average case processing standards that recognize that higher-risk cases should proceed faster, while more complex cases should take longer. On the one hand, the Legislature could determine that having different backlog metrics for high-risk versus low-risk cases is warranted, because it recognizes the differences in how long such cases should take and could make it easier to track where delays are occurring. On the other hand, the Legislature could determine that a single metric for all cases (such as the prior statutory backlog definition) is warranted, because it would be easier to track/calculate and focus on all cases that exceed a designated time period.

**What Data or Metrics Are Needed to Conduct Legislative Oversight?** The Legislature will want to consider what specific data and metrics should be required by state law in the annual discipline report to enable effective legislative oversight of the backlog. For example, depending on the definition of backlog used, the Legislature may want to require reporting on how long cases have been pending as well as the reasons why they are pending. This would help identify how many cases are pending for valid reasons and whether certain actions (such as case deferral) are being used more frequently. Such information would provide the Legislature with comprehensive context to assess the backlog and what actions may need to be taken. Additionally, the Legislature will want to ensure that accurate and consistent data is being reported over time for comparison—such as clearly specifying how to pull or calculate these backlog-related statistics and metrics as well as what types of cases are included.

## STAFFING ANALYSIS

### Assessment

**Reasonable That Only Preliminary Estimates of Staffing and Resource Need Are Provided.** We find it reasonable that the State Bar only provided preliminary estimates of staffing needs to fulfill SB 211 requirements and indicated its intent to conduct a comprehensive analysis in the future. It would be premature to assess appropriate staffing needs since OCTC has recently implemented, or is considering implementing, various organizational

and disciplinary process changes that could substantially change how cases are addressed as well as what types of staff and how much of their time is needed to resolve cases. OCTC may also need to consider further operational and procedural changes in order to meet the proposed case processing standards (such as additional expeditor teams and/or staff) or to address concerns with previously implemented changes (such as concerns that OCTC's shift to its current generalist teams in 2017 resulted in decreased efficiency).

Additionally, legislative action in response to the State Bar's report, as well as our review, could impact staffing and resource needs. For example, less staff could be needed (or a different mix of staff may be needed) if the Legislature modifies the proposed case processing standards to provide more time or takes steps to streamline the disciplinary process (such as eliminating ENECs prior to charging). As such, we think it makes sense to delay a comprehensive staffing and resource analysis to incorporate legislative priorities.

***Full Impact of Organizational and Procedural Changes Will Likely Not Be Known in 2023.*** The State Bar indicates its intent to begin a comprehensive staffing analysis in 2023. However, the full impacts of recently impacted organizational and procedural changes as well as any that will be implemented in the near future will not be known at that time. Such changes typically require time to implement and for those involved to adapt to before the full potential of the changes is realized. In some cases, changes that were expected to increase efficiency or quality may actually decrease them unintentionally. For example, as noted above, CSA identified concerns that the State Bar's changes to its disciplinary system—specifically, converting OCTC trial teams from specialist teams that handle particular case types to generalist teams who generally handle all case types and promoting some of its most senior attorneys to full-time supervisors in 2017—significantly reduced the efficiency of the system. Additionally, some changes will have greater impacts than others. For example, an OCTC shift to make greater use of specialized teams or horizontal prosecution could have a much more significant impact on ongoing staffing and resource

needs compared to minor changes to the criteria for what types of cases constitute complex cases.

A staffing analysis that begins in 2023 will, by necessity, use data that reflects workload conducted before such changes are fully implemented. As such, all of these impacts would not be accounted for in the analysis. Alternatively, the staffing analysis may make assumptions related to expectations of the full impacts of such changes, which may not actually be realized. Accordingly, the resulting study may suffer which could lead to both too many resources or too few resources being identified as being needed—and potentially provided—to support OCTC workload.

***Difficult to Assess Impact of Additional Positions Funded in 2019.*** The Legislature authorized an increase in the annual license fee beginning in 2019 to support 19 additional OCTC disciplinary staff—6 attorneys, 9 investigators, and 4 support staff. A new trial team was created with 12 of these additional positions, while the remainder were distributed to other OCTC teams. The specific impact of these positions is difficult to assess as the State Bar is unable to provide data clearly demonstrating their impact. Such information would have been helpful to determine whether the additional resources and staff were used effectively as well as to estimate the impact of any additional provided resources.

***Workload Formula Needs Revision.*** The workload formula will need to be revised to reflect all operational and procedural changes that have, or will be, implemented since the formula was adopted in 2018. As we raised in our 2019 report, the resulting case weights should capture the amount of time *actually* needed to process cases within the proposed case processing time periods rather than actual processing times reflected in data. (We note that the workload formula actually captures all OCTC activities, including workload associated after charges are filed in the Hearing Stage.) This is even more important given that available data does not reflect the impacts of changes that have recently, or will need to be implemented. For the same reasons, the State Bar should also be cautious of using relationships identified in historical data in the workload formula.

As we previously reported in 2019, different case weights may be needed for different complaint types or priority categories to the extent that they require different levels or combinations of disciplinary tasks. For example, expedited cases move more quickly because certain investigatory or other tasks are omitted which means less staff work is required. At the same time, the expeditor team requires more investigators than attorneys to meet internal benchmarks for such cases. It is unknown at this time whether more cases will be handled in an expedited manner to meet the proposed case processing time standards. We note that the State Bar subsequently identified that there were differences between the resources allocated to process particular case types. Additionally, analysis could be merited regarding whether investigator and attorney responsibilities are sufficiently different to merit separate case weights.

## Key Questions for Legislative Consideration

***When Should a Comprehensive Staffing Analysis Be Conducted?*** The Legislature will want to consider when the State Bar should conduct a comprehensive staffing analysis. Given that various operational and procedural changes may be forthcoming, the analysis would be the most accurate and helpful if it was delayed until after the full impacts of those changes on staffing and resource needs were realized. We think potentially delaying the staffing analysis further to 2024 or 2025 would allow for the preliminary impacts of such changes to be observed and incorporated into the analysis. The analysis could then be updated in 2028 or 2029 to reflect the full impacts of such changes. At the same time, we recognize that it would be difficult to determine

what level of additional resources would be justified without an updated study.

***Should Certain Organizational or Procedural Changes Be Assessed Separately From and/or Prior to the Comprehensive Staffing Analysis?*** The Legislature will want to consider whether the impacts of certain organizational or procedural changes should be assessed separately from and/or prior to the initiation of a comprehensive staffing analysis (if the analysis is delayed). As noted above, an April 2021 CSA report recommended OCTC assess how its current organizational structure impacted its ability to efficiently resolve case and what additional changes are needed. To the extent significant changes are made to OCTC's organizational structure, it could seriously impact OCTC operations and ensuing staffing and resource needs. For example, the amount of staff available to process workload (such as fewer or more supervisors), the amount of time available to process workload (such as more or less time needed for more senior staff to mentor less experienced staff), the amount of time needed to complete particular tasks (such as less time being needed with more experienced staff due to the specialization of certain tasks), or the mix of staff needed (such as shifting certain responsibilities from attorneys or investigators to support staff) could all be impacted. Having such analyses could provide the Legislature with the necessary information to determine whether statutory changes or informal feedback to the State Bar are needed. Making such decisions prior to the completion of a comprehensive staffing analysis could help ensure the resulting the staffing analysis reflects the Legislature's perspective and expectations.

# CONCLUSION

Pursuant to state law, the State Bar submitted a report to our office for review which proposes new caseload processing standards for resolving attorney discipline cases within OCTC, the establishment of a backlog goal and metrics to measure such a goal, and the staffing requirements needed to achieve the new standards. We generally found some portions of the report reasonable, but also identified concerns with other portions. Based on our review, we also identified a series of key questions for legislative consideration to assist with any future decisions.

Case 2:23-cv-02307-DAD-SCR   Document 1   Filed 10/11/23   Page 120 of 225

## LAO PUBLICATIONS

This report was prepared by Anita Lee, and reviewed by Drew Soderborg and Anthony Simbol. The Legislative Analyst's Office (LAO) is a nonpartisan office that provides fiscal and policy information and advice to the Legislature.

To request publications call (916) 445-4656. This report and others, as well as an e-mail subscription service, are available on the LAO's website at www.lao.ca.gov. The LAO is located at 925 L Street, Suite 1000, Sacramento, California 95814.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit - 4 -**

VERIFIED CIVIL RIGHTS COMPLAINT

**Senate Bill No. 40**

──────

Passed the Senate  September 13, 2023

───────────────────────────────
*Secretary of the Senate*

──────

Passed the Assembly  September 12, 2023

───────────────────────────────
*Chief Clerk of the Assembly*

──────

This bill was received by the Governor this _____ day

of _____, 2023, at _____ o'clock ____M.

───────────────────────────────
*Private Secretary of the Governor*

CHAPTER _____

An act to amend Sections 6001, 6001.3, 6007, 6021, 6026.7, 6036, 6037, 6054, 6060, 6060.3, 6063, 6065, 6086.1, 6086.15, 6102, 6140, 6140.5, 6141, 6144.1, and 6145 of, to amend, repeal, and add Sections 6140.55 and 6140.9 of, to add Sections 6001.5, 6011, 6012, 6086.20, 6090.8, and 6145.1 to, and to repeal Section 6238 of, the Business and Professions Code, relating to attorneys.

LEGISLATIVE COUNSEL'S DIGEST

SB 40, Umberg. State Bar of California.

Existing law, the State Bar Act, provides for the licensure and regulation of attorneys by the State Bar of California (State Bar), a public corporation governed by a board of trustees. Under existing law, the officers of the State Bar are a chair, a vice chair, and a secretary. Existing law requires the chair to preside at all meetings of the State Bar and of the board, and requires the vice chair to preside at those meetings in the event of the chair's absence or inability to act. Existing law authorizes the board to prescribe additional duties of the chair and the vice chair and to prescribe the duties of the secretary. Existing law sets the length of the terms of the chair and the vice chair at one year, and requires them to assume the duties of their office at the conclusion of the annual meeting following their appointment.

This bill instead would extend the length of those terms up to 2 years, and would require them to assume the duties of their office at the conclusion of the September meeting following their appointment.

This bill would require the board to appoint an executive director of the State Bar, who would be responsible for the leadership and management of the State Bar according to the strategic direction set by the board, and to appoint a general counsel of the State Bar to serve as the chief legal advisor to the board on issues not related to attorney discipline, as specified. The bill would set the length of the term for those appointments at 4 years, and would authorize reappointment for additional 4-year terms. The bill would require the State Bar to notify the Senate Committee on Rules and the Senate and Assembly Committees on Judiciary within seven days

of the dismissal or hiring of those positions, and would make those appointments subject to confirmation by the Senate, as specified. The bill would limit the application of these provisions to persons appointed on or after January 1, 2024.

Existing law exempts the State Bar from laws restricting, or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies, as specified.

This bill would subject members of the board of trustees and employees of the State Bar to specified conflicts of interest provisions relating to contracts, which are generally applicable to public officers and employees. By expanding the scope of provisions, the violation of which would be a crime, this bill would impose a state-mandated local program.

Existing law requires a member of the board to disqualify themself from making, participating in the making of, or attempting to influence any decisions of the board or a committee of the board in which the member has a financial interest, as defined, that it is reasonably foreseeable may be affected materially by the decision. Existing law makes an intentional violation of this requirement subject to specified criminal penalties. Existing law also requires a member to disqualify themself when there exists a personal nonfinancial interest that will prevent the member from applying disinterested skill and undivided loyalty to the State Bar in making or participating in the making of decisions.

Under this bill, the scope of the disqualification requirement relating to decisions in which a member has a financial interest, as described, would be expanded to include any decision of the State Bar. By expanding the scope of this requirement, an intentional violation of which is a crime, this bill would impose a state-mandated local program. Under the bill, the scope of the disqualification requirement relating to a member's personal interests would also be expanded to include any personal interests that may have that effect on the member's making or participating in the making of decisions.

Under existing law, the State Civil Service Act, certain acts, including convictions of certain crimes, are cause for discipline of a state employee or of a person whose name appears on an employment list. Existing provisions of the Penal Code require the Attorney General to furnish state summary criminal history information to various entities, including an agency, officer, or

official of the state if the information, among other things, is required to implement a statute or regulation that expressly refers to specific criminal conduct applicable to that person. Existing law authorizes the agency, officer, or official of the state to perform state and federal criminal history information checks, as provided. If a fingerprint-based criminal history information check is required pursuant to any statute, existing law requires the check to be requested from the Department of Justice and requires the applicable agency or entity to submit to the Department of Justice fingerprint images and related information required by the Department of Justice, as specified. Existing law requires the Department of Justice to provide a state or federal response or a fitness determination, as appropriate, to the agency or entity, as specified.

This bill would revise and recast these provisions, as applicable to the State Bar, within the State Bar Act. In this regard, the bill would require the State Bar to require all employees and prospective employees to submit fingerprints to the Department of Justice and to the Federal Bureau of Investigation to establish identity and to determine whether the individual has a record of criminal conviction in this state or in other states, including through a national criminal history check. The bill would authorize the State Bar to impose this requirement on volunteers, contractors, and subcontractors.

This bill would also revise and recast similar provisions of the State Bar Act relating to applicants for admission or reinstatement and licensees. In this regard, the bill would require an applicant for admission or reinstatement to submit or resubmit fingerprints to the Federal Bureau of Investigation, in addition to the Department of Justice, in order to establish the identity of the applicant and in order to determine whether the applicant or licensee has a record of criminal conviction in this state or in other states, including through a national criminal history check.

Existing law states legislative intent and findings regarding diversity and inclusion in the practice of law. Existing law requires the State Bar to develop and implement a plan to meet specified goals and to prepare and submit a report to the Legislature, by March 15, 2019, and every 2 years thereafter, on the plan and its implementation, as prescribed.

This bill would change the date for the submission of the report to March 30 every 2 years.

Existing law authorizes the State Bar Court to order the involuntary inactive enrollment of an attorney for violation of probation under specified circumstances and requires the State Bar Court to terminate such an enrollment upon expiration of a period equal to the period of stayed suspension in the probation matter, or until the State Bar Court makes an order regarding the recommended actual suspension in the probation matter, whichever occurs first.

This bill would require the State Bar Court to terminate enrollment upon expiration of that described period or until the effective date of a Supreme Court order imposing an actual suspension on account of the probation violation or other disciplinary matter, whichever occurs first.

Existing law provides for the creation of an examining committee within the State Bar with varied responsibilities relating to examinations and other requirements for admission to the practice of law, including, among others, registration of law students, receiving applications for the general bar examination, and collecting fees fixed by the board and paid by applicants to defray the expense of administering existing law relating to admission to practice.

This bill would, with respect to these specified responsibilities, replace the examining committee with the State Bar. The bill would make related conforming changes. The bill would delete obsolete provisions relating to passing the law students' examination.

Existing law requires an applicant for admission and licensure to practice law to meet certain requirements, including passing a general bar examination. Existing law gives an unsuccessful applicant for admission to practice, after they have taken any examination and within 4 months after results have been declared, the right to inspect their examination papers at the office of the examining committee located nearest to the place at which the applicant took the examination. The applicant also has the right to inspect the grading of the papers.

This bill would delete those inspection provisions and, instead, would require that an applicant for admission to practice who did not pass the California bar examination, for 30 days following the release of examination results, have electronic access to their

answers to the written sessions of the bar examination, including the ability to download, save, and print.

Existing law, except as specified, requires hearings and records of original disciplinary proceedings in the State Bar Court to be public, following a notice to show cause.

This bill would, instead, require those proceedings to be public following the filing of a notice of disciplinary charges.

Existing law requires disciplinary investigations of licensees to be confidential until formal charges are filed, and requires investigations of certain related matters to be confidential until the formal proceeding is instituted. Existing law authorizes waiver of that confidentiality requirement by specified entities under specified circumstances, including by the Chief Trial Counsel or the chair of the board when warranted for the protection of the public.

This bill would revise the circumstances under which the confidentiality of those investigations may be waived. In this regard, the bill would additionally authorize the board to vote to waive confidentiality, but only when warranted for protection of the public. The bill would require the board to hold a meeting under these provisions in closed session and to provide notice to a licensee whose confidential information is being considered for disclosure. The bill, for the board's assessment whether to waive confidentiality, would establish a presumption in favor of maintaining confidentiality and establish specified considerations. The bill would provide for related public announcements by the Chief Trial Counsel or Chair of the State Bar and for prior notice of such announcements to the licensee. The bill would authorize a licensee to file a motion to prevent the State Bar from disclosing information pursuant to the waiver. The bill would require the State Bar Court to rule on the motion within 10 court days of the filing.

This bill would also restrict the Chief Trial Counsel's and the chair of the board's authority to waive confidentiality of disciplinary investigation. In this regard, the bill would require the Chief Trial Counsel to exercise the authority with the written concurrence of the chair, and would require a determination that disclosure is needed to prevent an immediate harm to the public, as specified, and that the above-described provisions relating to

the board's authority to waive confidentiality are inadequate for the protection of the public.

This bill, beginning January 1, 2025, would prohibit the Chief Trial Counsel from issuing private reprovals to an attorney accused of misconduct. The bill, by April 1, 2024, would require the board, in consultation with the Chief Trial Counsel, to provide to the Assembly and Senate Judiciary Committees recommendations for codifying a formal disciplinary diversion program for attorneys accused of minor violations of the Rules of Professional Conduct.

Existing law requires the State Bar to issue an Annual Discipline Report by October 31 of each year describing the performance and condition of the State Bar discipline system, including all matters that affect public protection, as prescribed.

This bill would change the deadline for that report to November 30 of each year.

Existing law authorizes the board, with the approval of the Supreme Court, to formulate and enforce rules of professional conduct for all licensees of the State Bar. Under existing law, a person who reports to the State Bar or causes a complaint to be filed with the State Bar that an attorney has engaged in professional misconduct, knowing the report or complaint to be false and malicious, is guilty of a misdemeanor. Existing law authorizes the State Bar to notify the appropriate district attorney or city attorney that a person has filed what the State Bar believes to be a false and malicious report or complaint against an attorney and recommend prosecution of that person.

This bill would require a licensee to inform the State Bar if the licensee knows that another licensee has conspired to engage in or has engaged in seditious conspiracy, treason, rebellion, or insurrection, as specified. The bill would deem to have committed professional misconduct any licensee of the State Bar who makes a complaint to the State Bar pursuant to this reporting provision with the intent to intimidate, harass, or otherwise deter a fellow licensee from engaging in the lawful practice of law. The bill would authorize the board to amend the rules of professional conduct, and require the board to propose those amendments to the Supreme Court for approval, to implement these reporting provisions.

Existing law relating to suspension or disbarment of an attorney requires a court that finds after prescribed proceedings that a crime of which an attorney was convicted or the circumstances of its

commission involved moral turpitude, to enter an order disbarring the attorney or suspending them from practice for a limited time, according to the gravity of the crime and the circumstances of the case, or to otherwise dismiss the proceedings.

This bill, in lieu of the alternative of dismissing the proceedings, would require a court to determine if the facts and circumstances surrounding the conviction involve other misconduct warranting discipline, and if so, impose the appropriate discipline.

Existing law, until January 1, 2024, requires the board to charge an annual license fee for active licensees for 2023 of up to $390, or of up to $386 if the State Bar has entered into a contract to sell its San Francisco office building by October 31, 2022. Existing law requires the board to charge an annual license fee for inactive licensees of up to $97.40, or of up to $96.40 if the State Bar has entered into a contract to sell its San Francisco office building by October 31, 2022.

This bill, until January 1, 2025, would, instead, require the board to charge an annual license fee of up to $390 for active licensees for 2024, without the exception relating to the sale of the San Francisco office building described above. The bill, beginning January 1, 2024, would require the board to charge an annual license fee of up to $97.40 for inactive licensees, without the exception relating to the sale of the San Francisco office building described above.

Existing law generally requires the State Bar to hold the net proceeds from the sale of real property, as described, without expenditure or commitment for any purpose until approved by the Legislature by statute. Existing law, as an exception to that provision, authorizes up to 10% of the net proceeds from the sale of the State Bar's San Francisco office to be used for improvement of the State Bar's discipline system, as specified.

This bill would revise that exception to instead authorize the State Bar to use the net proceeds from the sale of the State Bar's San Francisco office to cover employee salaries and to cover operational costs associated with the State Bar's discipline system and administration of the biannual admissions exam.

Existing law requires the board to establish and administer a Client Security Fund to relieve or mitigate pecuniary losses caused by the dishonest conduct of active licensees, registered foreign legal consultants, and certain other attorneys, arising from or

connected with the practice of law. Existing law requires reimbursement of the fund by an attorney whose actions have caused payment from the fund and provides for collection, as specified.

This bill would further provide that the licensee's obligation to reimburse the fund is imposed as a penalty, payable to and for the benefit of the State Bar, to promote rehabilitation and protect the public. The bill would also provide that the reimbursement provisions are declaratory of existing law.

Existing law authorizes the board to increase the annual license fee for active licensees by up to $40 and the annual license fee for inactive licensees by up to $10 for the purposes of the Client Security Fund and the costs of its administration, as specified.

This bill, until January 1, 2025, would authorize the board to disburse or appropriate any excess funds not needed to support the Client Security Fund, including reserve funds, to the State Bar's general fund. The bill would require funds that are disbursed or transferred pursuant to that authority to first be used to cover salaries and benefits of employees in bargaining units for which a memorandum of understanding has been agreed to by the State Bar before being used for any other purpose.

Existing law requires the board to establish and administer an Attorney Diversion and Assistance Program, as prescribed, to identify and rehabilitate attorneys with impairment due to substance use or a mental health disorder affecting competency so that attorneys so afflicted may be treated and returned to the practice of law in a manner that will not endanger the public health and safety.

Existing law requires moneys for the support of the program, treatment services for those who cannot afford to pay, and related programs to be paid in whole or part by an annual fee of $10 per active licensee and annual fee of $5 per inactive licensee. Existing law authorizes the board to seek alternative sources for funding the program. Existing law authorizes the transfer of any excess funds not needed to support the Attorney Diversion and Assistance Program, including reserve funds, to the Client Security Fund if there are sufficient funds available to fully support the program.

This bill, until January 1, 2025, would authorize the board to disburse or appropriate any excess funds not needed to support the program, including reserve funds, to the State Bar's general fund.

93

The bill would require funds that are disbursed or transferred pursuant to that authority to first be used to cover salaries and benefits of employees in bargaining units for which a memorandum of understanding has been agreed to by the State Bar before being used for any other purpose.

Existing law requires the board to establish a committee to oversee the operation of the Attorney Diversion and Assistance Program with membership and responsibilities as prescribed. Existing law requires the committee to report to the board and to the Legislature annually on March 1 on the implementation and operation of the program, as specified.

This bill would delete that committee report requirement.

Existing law requires the board to engage the services of an independent national or regional public accounting firm with specified experience for an audit of its financial statement for each fiscal year. Existing law requires that a copy of the audit and financial statement be submitted within 120 days of the close of the fiscal year to the board, the Chief Justice of the Supreme Court, and the Assembly and Senate Committees on Judiciary.

This bill would require that submission annually on or before May 31.

This bill would require the State Bar to prepare a report on how it would use revenue generated by an increase in the mandatory annual license fees for active and inactive licensees. The bill would require the report to include, among other things, the State Bar's calculation of the necessary fee increase to maintain its existing operations and service levels and the State Bar's assessment of all programs and activities that require additional funding, as specified. The bill would also require the State Bar to provide a progress report on the Office of Chief Trial Counsel's case processing standards, as specified. The bill would require the State Bar to submit these reports no later than April 1, 2024, to the board of trustees, the Chief Justice of the Supreme Court, and the Assembly and Senate Committees on Judiciary.

This bill would make findings and declarations relating to the intent of the Legislature to work on issues relating to client trust accounts.

Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings

demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

*The people of the State of California do enact as follows:*

SECTION 1.   The Legislature finds and declares the following:

(a)  The arrest of and ongoing scandals surrounding disgraced former attorney Tom Girardi exposed that the State Bar of California's existing tools for overseeing attorney's client trust accounts are inadequate and expose everyday Californians to the risk of fraud.

(b)  Presently, the State Bar of California estimates that over $14,000,000,000 of clients' funds are currently being held on deposit in more than 59,000 attorney client trust accounts.

(c)  In the coming year the Legislature intends to work with all stakeholders, including the State Bar of California, financial institutions, and legal organizations, to craft a structure for regulating client trust accounts that minimizes the risk of financial fraud while protecting the consumer and privacy interests of clients and account holders.

SEC. 2.   Section 6001 of the Business and Professions Code is amended to read:

6001.   (a)  The State Bar of California is a public corporation. It is hereinafter designated as the State Bar.

(b)  The State Bar has perpetual succession and a seal and it may sue and be sued. It may, for the purpose of carrying into effect and promoting its objectives:

(1)  Make contracts.

(2)  Borrow money, contract debts, issue bonds, notes, and debentures, and secure the payment or performance of its obligations.

(3)  Own, hold, use, manage, and deal in and with real and personal property.

— 12 —

(4)  Construct, alter, maintain, and repair buildings and other improvements to real property.

(5)  Purchase, lease, obtain options upon, acquire by gift, bequest, devise, or otherwise, any real or personal property or any interest therein.

(6)  Sell, lease, exchange, convey, transfer, assign, encumber, pledge, or dispose of any of its real or personal property or any interest therein, including without limitation all or any portion of its income or revenues from license fees paid or payable by licensees.

(7)  Do all other acts incidental to the foregoing or necessary or expedient for the administration of its affairs and the attainment of its purposes.

(c)  Pursuant to those powers enumerated in subdivision (b), it is recognized that the State Bar has authority to raise revenue in addition to that provided for in Section 6140 and other statutory provisions. The State Bar is empowered to raise that additional revenue by any lawful means. However, as of March 31, 2018, the State Bar shall not create any foundations or nonprofit corporations.

(d)  The State Bar shall conspicuously publicize to its licensees in the annual fees statement and other appropriate communications, including its internet website and electronic communications, that its licensees have the right to limit the sale or disclosure of licensee information not reasonably related to regulatory purposes. In those communications the State Bar shall note the location of the State Bar's privacy policy, and shall also note the simple procedure by which a licensee may exercise the licensee's right to prohibit or restrict, at the licensee's option, the sale or disclosure of licensee information not reasonably related to regulatory purposes. On or before May 1, 2005, the State Bar shall report to the Assembly and Senate Committees on Judiciary regarding the procedures that it has in place to ensure that licensees can appropriately limit the use of their licensee information not reasonably related to regulatory purposes, and the number of licensees choosing to utilize these procedures.

(e)  (1)  No law of this state restricting, or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies, or classes thereof, including, but not by way of limitation, the provisions contained in Division 3 (commencing

with Section 11000), Division 4 (commencing with Section 16100), and Part 1 (commencing with Section 18000) and Part 2 (commencing with Section 18500) of Division 5, of Title 2 of the Government Code, shall be applicable to the State Bar, unless the Legislature expressly so declares.

(2) Notwithstanding paragraph (1) or any other law, pursuant to Sections 6026.7 and 6026.11, the State Bar is subject to the California Public Records Act (Division 10 (commencing with Section 7920.000) of Title 1 of the Government Code) and, commencing April 1, 2016, the Bagley-Keene Open Meeting Act (Article 9 (commencing with Section 11120) of Chapter 1 of Part 1 of Division 3 of Title 2 of the Government Code).

(3) Notwithstanding paragraph (1) or any other law, members of the board of trustees of the State Bar and employees of the State Bar shall be subject to the conflicts of interest provisions relating to contracts in Sections 1090 to 1097.2, inclusive, set forth in Article 4 of Chapter 1 of Division 4 of Title 1 of the Government Code, and members of the board of trustees of the State Bar shall be deemed state officers and employees of the State Bar shall be deemed state employees thereunder.

 SEC. 3.  Section 6001.3 of the Business and Professions Code is amended to read:

 6001.3.  (a)  It is the intent of the Legislature that the State Bar maintain its commitment to and support of effective policies and activities to enhance access, fairness, and diversity in the legal profession and the elimination of bias in the practice of law.

 (b)  The Legislature finds and declares the following:

 (1)  The rich diversity of the people of California requires a justice system that is equally accessible and free of bias and is a core value of the legal profession.

 (2)  Diversity and inclusion are an integral part of the State Bar's public protection mission to build, retain, and maintain a diverse legal profession to provide quality and culturally sensitive services to an ever-increasing diverse population.

 (3)  Diversity increases public trust and confidence and the appearance of fairness in the justice system and therefore increases access to justice.

 (4)  The State Bar should continue to increase diversity and inclusion in the legal profession.

(c)  The State Bar shall develop and implement a plan to meet the goals set forth in this section, which may include, but is not limited to, an assessment of needed revenue. The State Bar shall prepare and submit a report to the Legislature, by March 30, 2019, and every two years thereafter, on the plan and its implementation, including a description of activities undertaken to support the plan, their outcomes, and their effectiveness.

SEC. 4.   Section 6001.5 is added to the Business and Professions Code, to read:

6001.5.   (a)  The State Bar of California shall require that all employees and prospective employees, and may require volunteers, contractors, and subcontractors, to submit fingerprints to the Department of Justice and to the Federal Bureau of Investigation in order to establish identity and to determine whether the individual has a record of criminal conviction in this state or in other states, including through a national criminal history check.

(b)  The State Bar shall submit to the Department of Justice fingerprint images and related information required by the Department of Justice for all employees, prospective employees, volunteers, contractors, and subcontractors, pursuant to subdivision (u) of Section 11105 of the Penal Code. The Department of Justice shall provide a state or federal level response pursuant to subdivision (p) of Section 11105 of the Penal Code.

SEC. 5.   Section 6007 of the Business and Professions Code is amended to read:

6007.   (a)  When a licensee requires involuntary treatment pursuant to Article 6 (commencing with Section 5300) of Chapter 2 of Division 5 of, or Part 2 (commencing with Section 6250) of Division 6 of the Welfare and Institutions Code, or when under an order pursuant to Section 3051, 3106.5, or 3152 of the Welfare and Institutions Code they have been placed in or returned to inpatient status at the California Rehabilitation Center or its branches, or when they have been determined insane or mentally incompetent and is confined for treatment or placed on outpatient status pursuant to the Penal Code, or on account of their mental condition a guardian or conservator, for their estate or person or both, has been appointed, the Board of Trustees or an officer of the State Bar shall enroll the licensee as an inactive licensee.

The clerk of any court making an order containing any of the determinations or adjudications referred to in the immediately

preceding paragraph shall send a certified copy of that order to the State Bar at the same time that the order is entered.

The clerk of any court with which is filed a notice of certification for intensive treatment pursuant to Article 4 (commencing with Section 5250) of Chapter 2 of Division 5 of the Welfare and Institutions Code, upon receipt of the notice, shall transmit a certified copy of it to the State Bar.

The State Bar may procure a certified copy of any determination, order, adjudication, appointment, or notice when the clerk concerned has failed to transmit one or when the proceeding was had in a court other than a court of this state.

In the case of an enrollment pursuant to this subdivision, the State Bar shall terminate the enrollment when the licensee has had the fact of their restoration to capacity judicially determined, upon the licensee's release from inpatient status at the California Rehabilitation Center or its branches pursuant to Section 3053, 3109, or 3151 of the Welfare and Institutions Code, or upon the licensee's unconditional release from the medical facility pursuant to Section 5304 or 5305 of the Welfare and Institutions Code; and on payment of all fees required.

When a licensee is placed in, returned to, or released from inpatient status at the California Rehabilitation Center or its branches, or discharged from the narcotics treatment program, the Director of Corrections or their designee shall transmit to the State Bar a certified notice attesting to that fact.

(b)  The State Bar Court shall also enroll a licensee of the State Bar as an inactive licensee in each of the following cases:

(1)  A licensee asserts a claim of insanity or mental incompetence in any pending action or proceeding, alleging their inability to understand the nature of the action or proceeding or inability to assist counsel in representation of the licensee.

(2)  The court makes an order assuming jurisdiction over the licensee's law practice, pursuant to Section 6180.5 or 6190.34.

(3)  After notice and opportunity to be heard before the State Bar Court, the State Bar Court finds that the licensee, because of mental infirmity or illness, or because of the habitual use of intoxicants or drugs, is (i) unable or habitually fails to perform their duties or undertakings competently, or (ii) unable to practice law without substantial threat of harm to the interests of their clients or the public. No proceeding pursuant to this paragraph

shall be instituted unless the State Bar Court finds, after preliminary investigation, or during the course of a disciplinary proceeding, that probable cause exists therefor. The determination of probable cause is administrative in character and no notice or hearing is required.

In the case of an enrollment pursuant to this subdivision, the State Bar Court shall terminate the enrollment upon proof that the facts found as to the licensee's disability no longer exist and on payment of all fees required.

(c)  (1)  The State Bar Court may order the involuntary inactive enrollment of an attorney upon a finding based on all the available evidence, including affidavits, that the attorney has not complied with Section 6002.1 and cannot be located after reasonable investigation.

(2)  The State Bar Court may order the involuntary inactive enrollment of an attorney if it finds, based on all the available evidence, including affidavits:

(A)  The attorney has caused or is causing substantial harm to the attorney's clients or the public.

(B)  There is a reasonable probability that the chief trial counsel will prevail on the merits of the underlying disciplinary matter, and that the attorney will be disbarred.

(3)  In the case of an enrollment under paragraph (2), the underlying matter shall proceed on an expedited basis.

(4)  The State Bar Court shall order the involuntary inactive enrollment of an attorney upon the filing of a recommendation of disbarment after hearing or default. For purposes of this section, that attorney shall be placed on involuntary inactive enrollment regardless of the license status of the attorney at the time.

(5)  The State Bar Court shall order the involuntary inactive enrollment of an attorney who is sentenced to incarceration for 90 days or more as a result of a criminal conviction for at least the period of time in which the attorney is incarcerated.

(6)  The State Bar Court shall order attorneys who are placed on inactive enrollment pursuant to this subdivision to comply with Rule 9.20 of the California Rules of Court.

(7)  The board shall formulate and adopt rules of procedure to implement this subdivision.

In the case of an enrollment pursuant to this subdivision, the State Bar Court shall terminate the involuntary inactive enrollment

upon proof that the attorney's conduct no longer poses a substantial threat of harm to the interests of the attorney's clients or the public or where an attorney who could not be located proves compliance with Section 6002.1.

(d) (1)  The State Bar Court may order the involuntary inactive enrollment of an attorney for violation of probation upon the occurrence of all of the following:

(A)  The attorney is under a suspension order any portion of which has been stayed during a period of probation.

(B)  The State Bar Court finds that probation has been violated.

(C)  The State Bar Court recommends to the Supreme Court that the attorney receive an actual suspension on account of the probation violation or other disciplinary matter.

(2)  The State Bar Court shall terminate an enrollment under this subdivision upon expiration of a period equal to the period of stayed suspension in the probation matter, or until the effective date of a Supreme Court order imposing an actual suspension on account of the probation violation or other disciplinary matter, whichever occurs first.

(3)  If the Supreme Court orders a period of actual suspension in the probation matter, any period of involuntary inactive enrollment pursuant to this subdivision shall be credited against the period of actual suspension ordered.

(e) (1)  The State Bar Court shall order the involuntary, inactive enrollment of a licensee whose default has been entered pursuant to the State Bar Rules of Procedure if both of the following conditions are met:

(A)  The notice was duly served pursuant to subdivision (c) of Section 6002.1.

(B)  The notice contained the following language at or near the beginning of the notice, in capital letters:

IF YOU FAIL TO FILE AN ANSWER TO THIS NOTICE WITHIN THE TIME ALLOWED BY STATE BAR RULES, INCLUDING EXTENSIONS, OR IF YOU FAIL TO APPEAR AT THE STATE BAR COURT TRIAL, (1) YOUR DEFAULT SHALL BE ENTERED, (2) YOU SHALL BE ENROLLED AS AN INVOLUNTARY INACTIVE LICENSEE OF THE STATE BAR AND WILL NOT BE PERMITTED TO PRACTICE LAW UNLESS THE DEFAULT IS SET ASIDE ON MOTION TIMELY MADE UNDER THE RULES OF PROCEDURE OF THE STATE

93

BAR, (3) YOU SHALL NOT BE PERMITTED TO PARTICIPATE FURTHER IN THESE PROCEEDINGS UNLESS YOUR DEFAULT IS SET ASIDE, AND (4) YOU SHALL BE SUBJECT TO ADDITIONAL DISCIPLINE.

(2)  The State Bar Court shall terminate the involuntary inactive enrollment of a licensee under this subdivision when the licensee's default is set aside on motion timely made under the State Bar Rules of Procedure or the disciplinary proceedings are completed.

(3)  The enrollment under this subdivision is administrative in character and no hearing is required.

(4)  Upon the involuntary inactive enrollment of a licensee under this subdivision, the notice required by subdivision (b) of Section 6092.5 shall be promptly given.

(f)  The pendency or determination of a proceeding or investigation provided for by this section shall not abate or terminate a disciplinary investigation or proceeding except as required by the facts and law in a particular case.

(g)  No license fees shall accrue against the licensee during the period they are enrolled as an inactive licensee pursuant to this section.

(h)  The State Bar Court may order a full range of interim remedies or final discipline short of involuntary inactive enrollment, including, but not limited to, conditions of probation following final discipline, or directly ordered interim remedies, to restrict or supervise an attorney's practice of law, as well as proceedings under subdivision (a), (b), (c), or (d), or under Section 6102 or 6190. They may include restrictions as to scope of practice, monetary accounting procedures, review of performance by probation or other monitors appointed by the board, or such other measures as may be determined, after hearing, to protect present and future clients from likely substantial harm. These restrictions may be imposed upon a showing as provided in subdivision (c).

SEC. 6.  Section 6011 is added to the Business and Professions Code, to read:

6011.  (a)  The board shall appoint an executive director of the State Bar, who shall be responsible for the leadership and management of the State Bar according to the strategic direction set by the board.

(b)  The board shall appoint a lawyer admitted to practice in California to serve as the executive director of the State Bar. The

executive director shall be appointed for a term of four years and may be reappointed for additional four-year terms. The executive director shall serve at the pleasure of the board. The executive director shall not engage in private practice. The State Bar shall notify the Senate Committee on Rules and the Senate and Assembly Committees on Judiciary within seven days of the dismissal or hiring of an executive director.

(c) The appointment of the executive director is subject to confirmation by the Senate, and the time limits prescribed in Section 1774 of the Government Code for Senate confirmation and for service in office are applicable to the appointment.

(d) This section applies to persons appointed as the executive director on or after January 1, 2024.

SEC. 7.   Section 6012 is added to the Business and Professions Code, to read:

6012.   (a) The board shall appoint a general counsel of the State Bar to serve as the chief legal advisor to the board on issues not related to attorney discipline.

(b) The board shall appoint a lawyer admitted to practice in California to serve as general counsel of the State Bar. The general counsel shall be appointed for a term of four years and may be reappointed for additional four-year terms. The general counsel shall serve at the pleasure of the board. The general counsel shall not engage in private practice. The State Bar shall notify the Senate Committee on Rules and the Senate and Assembly Committees on Judiciary within seven days of the dismissal or hiring of a general counsel.

(c) The appointment of the general counsel is subject to confirmation by the Senate, and the time limits prescribed in Section 1774 of the Government Code for Senate confirmation and for service in office are applicable to the appointment.

(d) This section applies to persons appointed general counsel on or after January 1, 2024.

SEC. 8.   Section 6021 of the Business and Professions Code is amended to read:

6021.   (a) The selection of the chair and vice chair of the board shall be made by appointment of the Supreme Court.

(b) The chair and the vice chair shall each be appointed for a term not to exceed two years. The chair and vice chair shall assume the duties of their respective offices at the conclusion of the

September meeting following their appointment. The chair and vice chair shall not serve more than two terms, except that a chair or vice chair who is appointed to fill a vacancy for the balance of a term is eligible to serve two full terms in addition to the remainder of the term for which they were appointed.

SEC. 9.  Section 6026.7 of the Business and Professions Code is amended to read:

6026.7.  (a)  The State Bar is subject to the Bagley-Keene Open Meeting Act (Article 9 (commencing with Section 11120) of Chapter 1 of Part 1 of Division 3 of Title 2 of the Government Code) and all meetings of the State Bar are subject to the Bagley-Keene Open Meeting Act.

(b)  Notwithstanding any other law, the Bagley-Keene Open Meeting Act shall not apply to the Judicial Nominees Evaluation Commission or the State Bar Court.

(c)  In addition to the grounds authorized in the Bagley-Keene Open Meeting Act, a closed session may be held for those meetings, or portions thereof, relating to any of the following:

(1)  Appeals from decisions of the Board of Legal Specialization refusing to certify or recertify an applicant or suspending or revoking a specialist's certificate.

(2)  The preparation of examination materials, the approval, the grading, or the security of test administration of examinations for certification of a specialist.

(3)  The preparation of examination materials, the approval, the grading, or the security of test administration of the California Bar Examination or the First-Year Law Students' Examination.

(4)  Matters related to the Committee of Bar Examiners' consideration of moral character, including allegations of criminal or professional misconduct, competence, or physical or mental health of an individual, requests by applicants for testing accommodations in connection with an application for admission to practice law, or appeals of the Committee of Bar Examiners' determinations.

(5)  Information about a law school's operations that constitutes a trade secret as defined in subdivision (d) of Section 3426.1 of the Civil Code.

(6)  Matters related to the board's consideration of waiving confidentiality related to records of disciplinary proceedings under subdivision (c) of Section 6086.1.

(d)  Notwithstanding subdivision (e) of Section 11125.7 of the Government Code, the State Bar shall accept public comment in open session on all matters that are agendized for discussion or decision by the board of trustees, whether in an open or a closed session.

SEC. 10.   Section 6036 of the Business and Professions Code is amended to read:

6036.   (a)  Any member of the board of trustees shall disqualify themself from making, participating in the making of, or attempting to influence any decisions of the State Bar in which the member has a financial interest, as that term is defined in Section 87103 of the Government Code, that it is reasonably foreseeable may be affected materially by the decision.

(b)  Any member of the board of trustees shall likewise disqualify themself when there exists a personal interest that may prevent the member from applying disinterested skill and undivided loyalty to the State Bar in making or participating in the making of decisions.

(c)  Notwithstanding subdivisions (a) and (b), no member shall be prevented from making or participating in the making of any decision to the extent that the member's participation is legally required for the action or decision to be made. The fact that a member's vote is needed to break a tie does not make the member's participation legally required for the purposes of this section.

(d)  A member required to disqualify themself because of a conflict of interest shall (1) immediately disclose the interest, (2) withdraw from any participation in the matter, (3) refrain from attempting to influence another member, and (4) refrain from voting. It is sufficient for the purpose of this section that the member indicate only that the member has a disqualifying financial or personal interest.

(e)  For purposes of this article and unless otherwise specified, "member" means any appointed or elected member of the board of trustees.

SEC. 11.   Section 6037 of the Business and Professions Code is amended to read:

6037.   No action or decision of the State Bar shall be invalid because of the participation therein by a member or members of the board of trustees in violation of Section 6036. However, any member who intentionally violates the provisions of subdivision

(a) of Section 6036 is guilty of a misdemeanor, punishable by imprisonment in the county jail not exceeding five days, or by a fine not exceeding one thousand dollars ($1,000), or by both, and, if the member is an attorney member of the board, a certified copy of the record of conviction shall be transmitted to the Supreme Court for disposition as provided in Sections 6101 and 6102. Upon entry of final judgment of conviction, the member's term of office on the board of trustees, and duties and authority incidental thereto, shall automatically terminate. Any member who intentionally violates the provisions of subdivision (b) of Section 6036 shall be liable for a civil penalty not to exceed five hundred dollars ($500) for each violation, which shall be assessed and recovered in a civil action in a court of competent jurisdiction brought in the name of the state only by a district attorney of a county in which the member resides or maintains offices and the penalty collected shall be paid to the treasurer of that county.

SEC. 12.   Section 6054 of the Business and Professions Code is amended to read:

6054.   (a)   State and local law enforcement and licensing bodies and departments, officers and employees thereof, and officials and attachés of the courts of this state shall cooperate with and give reasonable assistance and information, including the providing of state summary criminal history information and local summary criminal history information, to the State Bar of California or any authorized representative thereof, in connection with any investigation or proceeding within the jurisdiction of the State Bar of California, regarding the admission to the practice of law or discipline of attorneys or their reinstatement to the practice of law.

(b)   The State Bar of California shall require that an applicant for admission or reinstatement to the practice of law in California, or may require a licensee, to submit or resubmit fingerprints to the Department of Justice and to the Federal Bureau of Investigation in order to establish the identity of the applicant and in order to determine whether the applicant or licensee has a record of criminal conviction in this state or in other states, including through a national criminal history check.

(c)   (1)   Pursuant to subdivision (u) of Section 11105 of the Penal Code, the State Bar shall submit to the Department of Justice fingerprint images and related information required by the Department of Justice for all persons applying for admission to

the State Bar of California for all applicants for reinstatement, and for licensees that are required to be fingerprinted under Rule 9.9.5 of the California Rules of Court, as it read on January 1, 2023. The Department of Justice shall provide a state or federal level response pursuant to subdivision (p) of Section 11105 of the Penal Code.

(2) As used in this subdivision, "applicant for reinstatement" means individuals initiating reinstatement proceedings with the State Bar after resignation with or without charges pending and after disbarment.

(d) The State Bar may use the information obtained from the Department of Justice and the Federal Bureau of Investigation as a result of the fingerprinting of an applicant or licensee, and the State Bar's use of that information shall be limited to the official use of the State Bar in establishing the identity of the applicant and in determining the character and fitness of the applicant for admission or reinstatement, and in discovering prior and subsequent criminal arrests of an applicant, licensee, or applicant for reinstatement. The State Bar shall notify the Department of Justice about individuals who are no longer licensees and applicants who are denied admission to the State Bar within 30 days of any change in status of a licensee or denial of admission. All fingerprint records of applicants admitted or licensees reinstated, or provided by a licensee, shall be retained thereafter by the Department of Justice for the limited purpose of criminal arrest notification to the State Bar.

(e) If required to be fingerprinted pursuant to this section, a licensee of the State Bar who fails to be fingerprinted may be enrolled as an inactive licensee pursuant to rules adopted by the board of trustees.

SEC. 13.  Section 6060 of the Business and Professions Code is amended to read:

6060.  To be certified to the Supreme Court for admission and a license to practice law, a person who has not been admitted to practice law in a sister state, United States jurisdiction, possession, territory, or dependency or in a foreign country shall:

(a) Be at least 18 years of age.

(b) (1) Be of good moral character.

(2) (A) In reviewing whether an applicant is of good moral character under this subdivision, the staff of the State Bar or the

members of the examining committee shall not review or consider the person's medical records relating to mental health, except

if the applicant seeks to use the record for either of the following purposes:

(i)  To demonstrate that the applicant is of good moral character.

(ii)  As a mitigating factor to explain a specific act of misconduct.

(B)  The staff of the State Bar and members of the examining committee shall not request or seek to review any medical records relating to mental health, including by obtaining the consent of the applicant to disclose such records, except as requested by an applicant and for a purpose specified in subparagraph (A).

(c)  Before beginning the study of law, have done either of the following:

(1)  Completed at least two years of college work, which college work shall be at least one-half of the collegiate work acceptable for a bachelor's degree granted on the basis of a four-year period of study by a college or university approved by the examining committee.

(2)  Have attained in apparent intellectual ability the equivalent of at least two years of college work by taking examinations in subject matters and achieving the scores as are prescribed by the examining committee.

(d)  Have registered with the State Bar as a law student within 90 days after beginning the study of law. The State Bar, upon a showing of good cause, may permit a later registration.

(e)  Have done either of the following:

(1)  Had conferred upon them a juris doctor (J.D.) degree or a bachelor of laws (LL.B.) degree by a law school accredited by the examining committee or approved by the American Bar Association.

(2)  Studied law diligently and in good faith for at least four years in any of the following manners:

(A)  (i)  In a law school that is authorized or approved to confer professional degrees and requires classroom attendance of its students for a minimum of 270 hours a year.

(ii)  A person who has received their legal education in a foreign state or country where the common law of England does not constitute the basis of jurisprudence shall demonstrate to the satisfaction of the State Bar that the person's education, experience, and qualifications qualify them to take the examination.

(B) In a law office in this state and under the personal supervision of a licensee of the State Bar of California who is, and for at least the last five years continuously has been, engaged in the active practice of law. It is the duty of the supervising attorney to render any periodic reports to the State Bar as required.

(C) In the chambers and under the personal supervision of a judge of a court of record of this state. It is the duty of the supervising judge to render any periodic reports to the State Bar as required.

(D) By instruction in law from a correspondence law school authorized or approved to confer professional degrees by this state, which requires 864 hours of preparation and study per year for four years.

(E) By any combination of the methods referred to in this paragraph.

(f) Have passed any examination in professional responsibility or legal ethics as the examining committee may prescribe.

(g) Have passed the general bar examination given by the examining committee.

(h) (1) Have passed a law students' examination administered by the examining committee after completion of their first year of law study. Those who pass the examination within its first three administrations upon becoming eligible to take the examination, shall receive credit for all law studies completed to the time the examination is passed. Those who do not pass the examination within the number of administrations allowed by this subdivision, upon becoming eligible to take the examination, but who subsequently pass the examination, shall receive credit for one year of legal study only.

(2) (A) This requirement does not apply to a student who has satisfactorily completed their first year of law study at a law school accredited by the examining committee and who has completed at least two years of college work prior to matriculating in the accredited law school, nor shall this requirement apply to an applicant who has passed the bar examination of a sister state or of a country in which the common law of England constitutes the basis of jurisprudence.

(B) The law students' examination shall be administered twice a year at reasonable intervals.

SEC. 14.   Section 6060.3 of the Business and Professions Code is amended to read:

6060.3.    (a) An application to take the California bar examination administered in February must be filed with the State Bar not later than the first business day of the preceding November, and an application to take the California bar examination administered in July must be filed with the State Bar not later than the first business day of the preceding April. However, an applicant who was unsuccessful on the examination last administered shall be allowed 10 business days from the date of the general announcement of results of that examination in which to timely file an application to take the next scheduled examination.

(b)   The State Bar may accept applications to take the California bar examination filed after the timely deadlines specified in subdivision (a) from applicants if the application is accompanied by the timely application fee and the late filing fee fixed by the board as follows:

(1)   An application to take the California bar examination filed between the first and last business days in November for the February examination or between the first and last business days of April for the July examination shall be accepted if it is accompanied by the timely filing fee and a late fee not to exceed fifty dollars ($50).

(2)   An application to take the California bar examination filed between the last business day of November and January 1 for the February examination or between the last business day of April and June 1 for the July examination shall be accepted if it is accompanied by the timely filing fee and a late fee not to exceed two hundred fifty dollars ($250).

(3)   An application to take the California bar examination filed after January 1 for the February examination and after June 1 for the July examination shall not be accepted.

(c)   Application fees for the California bar examination, including fees for late filing, shall be refunded if the applicant does not take the California bar examination because of the death of an immediate family member or the serious illness or disabling injury of the applicant or a member of their immediate family. A deduction may be made from the refund for administrative costs. The board shall adopt regulations for the administration of this

subdivision. This subdivision shall not be construed to prohibit the refund of fees in instances other than those specified.

SEC. 15.   Section 6063 of the Business and Professions Code is amended to read:

6063.   Applicants for admission to practice shall pay such reasonable fees, fixed by the board, as may be necessary to defray the expense of administering the provisions of this chapter, relating to admission to practice. These fees shall be collected by the State Bar and paid into the treasury of the State Bar.

SEC. 16.   Section 6065 of the Business and Professions Code is amended to read:

6065.   Any applicant for admission to practice who did not pass the California bar examination, for 30 days following the release of examination results, shall have electronic access to their answers to the written sessions of the bar examination, which shall include the ability to download, save, and print.

SEC. 17.   Section 6086.1 of the Business and Professions Code is amended to read:

6086.1.   (a) (1) Subject to subdivision (b), and except as otherwise provided by law, hearings and records of original disciplinary proceedings in the State Bar Court shall be public, following the filing of a notice of disciplinary charges.

(2)   Subject to subdivision (b), and except as otherwise provided by law, hearings and records of the following matters shall be public:

(A)   Filings for involuntary inactive enrollment or restriction under subdivision (a), (c), (d), or (e) of Section 6007.

(B)   Petitions for reinstatement under Section 6078.

(C)   Proceedings for suspension or disbarment under Section 6101 or 6102.

(D)   Payment information from the Client Security Fund pursuant to Section 6140.5.

(E)   Actions to cease a law practice or assume a law practice under Section 6180 or 6190.

(b)   All disciplinary investigations are confidential until the time that formal charges are filed and all investigations of matters identified in paragraph (2) of subdivision (a) are confidential until the formal proceeding identified in paragraph (2) of subdivision (a) is instituted. These investigations shall not be disclosed pursuant to any state law, including, but not limited to, the California Public

Records Act (Division 10 (commencing with Section 7920.000) of Title 1 of the Government Code). This confidentiality requirement may be waived under any of the following exceptions:

(1)  The licensee whose conduct is being investigated or has been investigated consents to a public announcement or disclosure.

(2)  (A)  The Chief Trial Counsel, with the written concurrence of the chair of the board, may waive confidentiality, but only if both of the following are met:

(i)  Disclosure is warranted for protection of the public and the provisions of subdivision (c) are inadequate for the protection of the public.

(ii)  It is determined that disclosure is necessary to prevent an immediate harm to the public, including, but not limited to, ongoing fraud, theft, or embezzlement.

(B)  Under the circumstances in this paragraph, after private notice to the licensee, the Chief Trial Counsel or chair of the board may issue, if appropriate, one or more public announcements or make information public generally or to specified individuals or entities. Any disclosure made under this paragraph shall include a statement defending the right of the licensee to a fair hearing and shall be limited to doing some or all of the following:

(i)  Confirming the fact of an investigation or proceeding.

(ii)  Providing a brief factual summary to identify the subject matter of the investigation or proceeding.

(iii)  Providing the status of the investigation or proceeding.

(C)  If the Chief Trial Counsel or chair of the board for any reason self-disqualifies from acting under this paragraph or is otherwise unavailable to act under this paragraph, the Chief Trial Counsel or chair of the board shall designate someone to act on their behalf.

(3)  The Chief Trial Counsel or Chief Trial Counsel's designee may waive confidentiality pursuant to Section 6044.5.

(c)  (1)  Notwithstanding the confidentiality of investigations, the board may vote to waive confidentiality, but only when warranted for protection of the public. The board shall hold a meeting under this subdivision in closed session.

(A)  The board shall provide a licensee whose confidential information is being considered for disclosure five days' notice of the fact that the board will be meeting to consider waiving confidentiality and that the licensee may, in advance of the meeting,

submit a written statement to the board for the board's consideration at the meeting. The licensee shall not be permitted to attend the closed session meeting of the board.

(B)  When assessing whether to waive confidentiality and to what extent the board shall, at a minimum:

(i)  Apply a presumption in favor of maintaining confidentiality.

(ii)  Consider the extent to which the allegations or issues involved in the investigation are generally known to the public.

(iii)  Consider the gravity of the underlying allegation and potential for continued harm to the public.

(iv)  Consider the potential for harm to the reputation of the licensee.

(C)  All materials for the board's consideration pursuant to this subdivision, including the written statement from the licensee, shall be confidential and not disclosed as a public record under the California Public Records Act (Division 10 (commencing with Section 7920.000) of Title 1 of the Government Code).

(2)  If the board votes to waive confidentiality pursuant to paragraph (1) and only after complying with the requirements in paragraph (3), the Chief Trial Counsel or chair of the board may issue, if appropriate, one or more public announcements or make information public generally or to specified individuals or entities. Any disclosure under this paragraph shall include a statement defending the right of the licensee to a fair hearing and shall be limited to doing some or all of the following:

(A)  Confirming the fact of an investigation or proceeding.

(B)  Providing a brief factual summary to identify the subject matter of the investigation or proceeding.

(C)  Providing the status of the investigation or proceeding.

(3)  Before making any public announcements pursuant to paragraph (2), the State Bar shall provide notice to the licensee via email at the address shown on the licensee's registration records of the State Bar and via United States mail to the physical address shown on the licensee's registration records of all of the following:

(A)  The fact that the board has voted to waive confidentiality.

(B)  A description of the information that may be disclosed to the public.

(C)  That the licensee has five business days from the date of the notice to notify the State Bar that they are contesting the release of the information.

— 30 —

(d)  (1)  A licensee may file a motion with the State Bar Court to prevent the State Bar from disclosing information pursuant to subdivision (c). The motion shall be filed within seven court days from the date of the notice issued to the licensee under paragraph (3) of subdivision (c).

(2) If a licensee files a motion under paragraph (1) the proceeding shall be afforded priority on the State Bar Court calendar, and the court shall issue a ruling within 10 court days from the filing of the motion.

(3)  The State Bar shall adopt procedures to enact the provisions of this subdivision via the rulemaking process.

(4)  All hearings on motions pursuant to this subdivision shall be confidential.

(e)  Notwithstanding the confidentiality of investigations, the State Bar shall disclose to any member of the public so inquiring, any information reasonably available to it pursuant to subdivision (o) of Section 6068, and to Sections 6086.7, 6086.8, and 6101, concerning a licensee of the State Bar that is otherwise a matter of public record, including civil or criminal filings and dispositions.

SEC. 18.   Section 6086.15 of the Business and Professions Code is amended to read:

6086.15.  (a)  The State Bar shall issue an Annual Discipline Report by November 30 of each year describing the performance and condition of the State Bar discipline system, including all matters that affect public protection. Except as set forth in subdivision (d), the report shall cover the period from July 1 of the previous calendar year to June 30 of the year in which the report is issued and shall include accurate and complete descriptions of all of the following:

(1) The inventory of cases within the Office of Chief Trial Counsel which were open at the start of the reporting period, were opened during the reporting period, remain pending with the office at the close of the reporting period, or were disposed of during the reporting period by closure, by filing of a stipulation with the State Bar Court, by filing of a notice of disciplinary charges with the State Bar Court, or by transmittal of a criminal conviction to the State Bar Court. The State Bar shall also report on its success in meeting the case processing goals set forth in Section 6094.5, including, but not limited to, tables showing the number and percentage of cases meeting each goal, the number and percentage

of those cases not disposed of within the case processing goals, and a high-level explanation of the reasons for failing to meet those case processing goals. The inventory of cases shall not be limited to case types that could result in the filing of a notice of disciplinary charges in the State Bar Court, but shall also include Nonattorney Unauthorized Practice of Law (NA-UPL), Section 6007 matters, moral character matters, resignations with charges pending, and mini-reinstatements.

(2)  The number of inquiries and complaints and their disposition.

(3)  The number, average pending times, and types of matters self-reported by licensees of the State Bar pursuant to subdivision (o) of Section 6068 and subdivision (c) of Section 6086.8.

(4)  The number, average pending times, and types of matters reported by other sources pursuant to Sections 6086.7, 6086.8, 6091.1, subdivisions (b) and (c) of Section 6101, and Section 6175.6.

(5)  The speed of complaint handling and dispositions by type, measured by the median and the average processing times.

(6)  The number, average pending times, and types of filed notices of disciplinary charges and formal disciplinary outcomes.

(7)  The number, average pending times, and types of other matters, including petitions to terminate practice pursuant to Section 6180 or 6190, interim suspensions and license restrictions pursuant to Section 6007, motions to enforce a binding arbitration award, judgment, or agreement pursuant to subdivision (d) of Section 6203, motions to revoke probation, letters of warning, private reprovals, admonitions, and agreements in lieu of discipline.

(8)  The number, average pending times, and outcomes of complaints involving a State Bar licensee who has been disbarred or who has resigned, and is engaged in the unauthorized practice of law, including referrals to district attorneys, city attorneys, or other prosecuting authorities, or petitions to terminate practice pursuant to Section 6180.

(9)  The number, average pending times, and outcomes of complaints against nonattorneys engaged in the unauthorized practice of law, including referrals to district attorneys, city attorneys, or other prosecuting authorities; petitions to terminate practice pursuant to Section 6126.3; or referrals to prosecuting authorities or actions by the State Bar pursuant to Section 6126.7.

93

(10)  A description of the condition of the Client Security Fund, including an accounting of payouts.

(11)  An accounting of the cost of the discipline system by function.

(12)  Compliance with the requirement of Section 6101 to transmit, within 30 days of receipt, the record of any criminal conviction which involves or may involve moral turpitude to the Supreme Court, or to close the matter if transmittal to the Supreme Court is not appropriate.

(b)  The Annual Discipline Report shall include statistical information presented in a consistent manner for year-to-year comparison.

(c)  The Annual Discipline Report shall be presented to the Chief Justice of California, to the Governor, to the Speaker of the Assembly, to the President pro Tempore of the Senate, and to the Assembly and Senate Judiciary Committees, for their consideration and shall be considered a public document.

(d)  (1)  All data relating to the items set forth in subdivision (a) shall also be reported, if available, for the preceding five years. Data from 2020 and prior years shall be reported for the calendar year. Except as specified in paragraph (2), data from 2021 and future years shall be reported based on the state fiscal year.

(2)  The Annual Discipline Report due on October 31, 2022, shall include data from both the prior state fiscal year and the prior calendar year.

  SEC. 19.   Section 6086.20 is added to the Business and Professions Code, to read:

  6086.20.  (a)  Commencing January 1, 2025, the Chief Trial Counsel shall not issue private reprovals to any attorney accused of misconduct.

  (b)  On or before April 1, 2024, the board, in consultation with the Chief Trial Counsel, shall provide to the Assembly and Senate Judiciary Committees recommendations for codifying a formal disciplinary diversion program for attorneys accused of minor violations of the Rules of Professional Conduct.

  SEC. 20.   Section 6090.8 is added to the Business and Professions Code, to read:

  6090.8.  (a)  (1)  A licensee of the State Bar who knows that another licensee has conspired to engage in or has engaged in any of the following shall inform the State Bar:

(A)  Seditious conspiracy as prohibited under Section 2384 of Title 18 of the United States Code.

(B)  Treason as prohibited under Section 37 of the Penal Code or Section 2381 of Title 18 of the United States Code.

(C)  Rebellion or insurrection as prohibited under Section 2383 of Title 18 of the United States Code.

(2)  For the purpose of this subdivision, "knows" means actual knowledge of the fact in question. A licensee's knowledge may be inferred from circumstances.

(b)  This section does not require disclosure of information otherwise protected by the attorney-client privilege or information gained by a licensee while participating in the Attorney Diversion and Assistance Program.

(c)  A licensee of the State Bar who makes a complaint to the State Bar pursuant to subdivision (a) with the intent to intimidate, harass, or otherwise deter a fellow licensee from engaging in the lawful practice of law shall be deemed to have committed professional misconduct.

(d)  The board may amend the Rules of Professional Conduct, and shall propose those amendments to the Supreme Court for approval, to implement this section.

SEC. 21.  Section 6102 of the Business and Professions Code is amended to read:

6102.  (a)  Upon the receipt of the certified copy of the record of conviction, if it appears therefrom that the crime of which the attorney was convicted involved, or that there is probable cause to believe that it involved, moral turpitude or is a felony under the laws of California, the United States, or any state or territory thereof, the Supreme Court shall suspend the attorney until the time for appeal has elapsed, if no appeal has been taken, or until the judgment of conviction has been affirmed on appeal, or has otherwise become final, and until the further order of the court. Upon its own motion or upon good cause shown, the court may decline to impose, or may set aside, the suspension when it appears to be in the interest of justice to do so, with due regard being given to maintaining the integrity of, and confidence in, the profession.

(b)  For the purposes of this section, a crime is a felony under the law of California if it is declared to be so specifically or by subdivision (a) of Section 17 of the Penal Code, unless it is charged as a misdemeanor pursuant to paragraph (4) or (5) of subdivision

(b) of Section 17 of the Penal Code, irrespective of whether in a particular case the crime may be considered a misdemeanor as a result of postconviction proceedings, including proceedings resulting in punishment or probation set forth in paragraph (1) or (3) of subdivision (b) of Section 17 of the Penal Code.

(c)  After the judgment of conviction of an offense specified in subdivision (a) has become final or, irrespective of any subsequent order under Section 1203.4 of the Penal Code or similar statutory provision, an order granting probation has been made suspending the imposition of sentence, the Supreme Court shall summarily disbar the attorney if the offense is a felony under the laws of California, the United States, or any state or territory thereof, and either: (1) an element of the offense is the specific intent to deceive, defraud, steal, or make or suborn a false statement, or involved moral turpitude, or (2) the facts and circumstances of the offense involved moral turpitude.

(d)  For purposes of this section, a conviction under the laws of another state or territory of the United States shall be deemed a felony if both of the following apply:

(1) The judgment or conviction was entered as a felony irrespective of any subsequent order suspending sentence or granting probation and irrespective of whether the crime may be considered a misdemeanor as a result of postconviction proceedings.

(2) The elements of the offense for which the licensee was convicted would constitute a felony under the laws of the State of California at the time the offense was committed.

(e)  Except as provided in subdivision (c), if after adequate notice and opportunity to be heard (which hearing shall not be had until the judgment of conviction has become final or, irrespective of any subsequent order under Section 1203.4 of the Penal Code, an order granting probation has been made suspending the imposition of sentence), the court finds that the crime of which the attorney was convicted, or the circumstances of its commission, involved moral turpitude, it shall enter an order disbarring the attorney or suspending them from practice for a limited time, according to the gravity of the crime and the circumstances of the case; otherwise it shall determine if the facts and circumstances surrounding the conviction involve other misconduct warranting discipline, and if so, impose the appropriate discipline. In determining the extent of

the discipline to be imposed in a proceeding pursuant to this article, any prior discipline imposed upon the attorney may be considered.

(f)  The court may refer the proceedings or any part thereof or issue therein, including the nature or extent of discipline, to the State Bar for hearing, report, and recommendation.

(g)  The record of the proceedings resulting in the conviction, including a transcript of the testimony therein, may be received in evidence.

(h)  The Supreme Court shall prescribe rules for the practice and procedure in proceedings conducted pursuant to this section and Section 6101.

(i)  The other provisions of this article providing a procedure for the disbarment or suspension of an attorney do not apply to proceedings pursuant to this section and Section 6101, unless expressly made applicable.

SEC. 22.  Section 6140 of the Business and Professions Code is amended to read:

6140.  (a)  The board shall fix the annual license fee for active licensees for 2024 at a sum not exceeding three hundred ninety dollars ($390).

(b)  The annual license fee for active licensees is payable on or before the first day of February of each year. If the board finds it appropriate and feasible, it may provide by rule for payment of fees on an installment basis with interest, by credit card, or by other means, and may charge licensees choosing any alternative method of payment an additional fee to defray costs incurred by that election.

(c)  This section shall remain in effect only until January 1, 2025, and as of that date is repealed.

SEC. 23.  Section 6140.5 of the Business and Professions Code is amended to read:

6140.5.  (a)  The board shall establish and administer a Client Security Fund to relieve or mitigate pecuniary losses caused by the dishonest conduct of licensees of the State Bar, foreign legal consultants registered with the State Bar, and attorneys registered with the State Bar under the Multijurisdictional Practice Program, arising from or connected with the practice of law. Any payments from the fund shall be discretionary and shall be subject to regulation, conditions, and rules as the board shall prescribe. The board may delegate the administration of the fund to the State Bar

Court, or to any board or committee created by the board of trustees.

(b)  Upon making a payment to a person who has applied to the fund for payment to relieve or mitigate pecuniary losses caused by the dishonest conduct of a licensee, the State Bar is subrogated, to the extent of that payment, to the rights of the applicant against any person or persons who, or entity that, caused the pecuniary loss. The State Bar may bring an action to enforce those rights within three years from the date of payment to the applicant.

(c)  Any licensee whose actions have caused the payment of funds to an applicant from the Client Security Fund shall owe those funds to the State Bar and reimburse the Client Security Fund for all moneys paid out as a result of the licensee's conduct with interest, in addition to payment of the assessment for the procedural costs of processing the claim. The State Bar may collect any money paid out by the Client Security Fund pursuant to this subdivision through any means provided by law. The licensee's obligation to reimburse the Client Security Fund pursuant to this section is imposed as a penalty, payable to and for the benefit of the State Bar of California, a public corporation created pursuant to Article VI of the California Constitution, to promote rehabilitation and protect the public. This subdivision is declaratory of existing law.

(d)  For a publicly reproved or suspended licensee, the reimbursed amount by the Client Security Fund, plus applicable interest and costs, shall be paid as a condition of continued practice. This amount shall be added to and become a part of the license fee of a publicly reproved or suspended licensee.

(e)  For a licensee who resigns with disciplinary charges pending or a licensee who is resigned or disbarred, the reimbursed amount by the Client Security Fund, plus applicable interest and costs, shall be paid as a condition of applying for reinstatement of the licensee's license to practice law or return to active license status.

(f)  Any assessment against an attorney pursuant to subdivision (c) that is part of an order imposing a public reproval on a licensee or is part of an order imposing discipline or accepting a resignation with a disciplinary matter pending, or any reimbursed amount that is part of a final determination by the Client Security Fund, may also be enforced as a money judgment. This subdivision does not limit the power of the Supreme Court to alter the restitution amount owed pursuant to an order imposing public reproval on a licensee

93

or an order imposing discipline or accepting a resignation with a disciplinary matter pending, or to authorize the State Bar Court to do the same.

(g)  To obtain a money judgment pursuant to subdivision (f) that is not part of a court order imposing a public reproval on a licensee or is not part of a court order imposing discipline or accepting a resignation with a disciplinary matter pending, the State Bar shall file a certified copy of the Notice of Payment of the Client Security Fund with the clerk of the superior court of any county. The clerk shall immediately enter judgment in conformity with the Notice of Payment. The judgment shall have the same force and effect as a judgment in a civil action and may be enforced in the same manner as any other judgment.

(h)  The defense of laches shall not be raised by the licensee whose actions have caused the payment of funds to an applicant from the Client Security Fund with respect to any payment owed to the State Bar, or with respect to any collections efforts by the State Bar for those payments.

(i)  Subdivisions (c), (f), and (h) have, and shall have, retroactive application, as well as prospective application.

(j)  As used in this section, "licensee" shall include a foreign legal consultant registered with the State Bar.

SEC. 24.   Section 6140.55 of the Business and Professions Code is amended to read:

6140.55.  (a)  The board may increase the annual license fees fixed by it pursuant to Section 6140 by an additional amount per active licensee not to exceed forty dollars ($40), and the annual license fees fixed by it pursuant to Section 6141 by an additional amount per inactive licensee not to exceed ten dollars ($10), in any year, the additional amount to be applied only for the purposes of the Client Security Fund and the costs of its administration, including, but not limited to, the costs of processing, determining, defending, or insuring claims against the fund.

(b)  (1)  Notwithstanding subdivision (a), the board may disburse or appropriate any excess funds not needed to support the Client Security Fund, including reserve funds, to the State Bar's general fund.

(2)  Any funds disbursed or transferred pursuant to paragraph (1) shall first be used to cover salaries and benefits of employees in bargaining units for which a memorandum of understanding

has been agreed to by the State Bar before being used for any other purpose.

(c)  This section shall remain in effect only until January 1, 2025, and as of that date is repealed.

SEC. 25.   Section 6140.55 is added to the Business and Professions Code, to read:

6140.55.  (a)  The board may increase the annual license fees fixed by it pursuant to Section 6140 by an additional amount per active licensee not to exceed forty dollars ($40), and the annual license fees fixed by it pursuant to Section 6141 by an additional amount per inactive licensee not to exceed ten dollars ($10), in any year, the additional amount to be applied only for the purposes of the Client Security Fund and the costs of its administration, including, but not limited to, the costs of processing, determining, defending, or insuring claims against the fund.

(b)  This section shall be operative on January 1, 2025.

SEC. 26.   Section 6140.9 of the Business and Professions Code is amended to read:

6140.9.  (a)  Moneys for the support of the program established pursuant to Article 15 (commencing with Section 6230), treatment services for those who cannot afford to pay, and related programs approved by the committee established pursuant to Section 6231 shall be paid in whole or part by a fee of ten dollars ($10) per active licensee per year, and by a fee of five dollars ($5) per inactive licensee per year, except that for 2020 only, the fee shall be one dollar ($1) per active licensee and zero dollars ($0) per inactive licensee. The State Bar is not required to expend any additional funds to either support those programs or to provide treatment services for those who cannot afford to pay.

(b)  On and after January 1, 2019, one dollar ($1) of the ten-dollar ($10) fee paid by each active licensee pursuant to subdivision (a) shall be transferred by the State Bar to a statewide nonprofit corporation, established by attorneys that has, for the last 25 years or more, provided peer support to attorneys recovering from alcohol and substance abuse in a confidential and anonymous manner, to fund the support of recovery efforts of the nonprofit corporation. In 2020 only, the statewide nonprofit corporation shall receive the one dollar ($1) fee paid by each active licensee.

(c)  Any nonprofit corporation that receives funds pursuant to subdivision (b) shall submit an annual report to the State Bar

accounting for the use of the funds. The report shall be submitted to the State Bar no later than March 1, 2020, and no later than March 1 of each year thereafter. The report shall include, but not be limited to, the following:

(1) An accounting of all receipts and expenditures of the funds.

(2) The balance of the funds as of the end of the previous calendar year.

(3) A brief narrative describing the goals of the work supported by the expenditures.

(4) A summary of the number of clients served, the modality of treatment, and any outcome data on the impact of the treatment.

(d) The board may seek alternative sources for funding the program. Any excess funds not needed to support the program, including reserve funds, may be transferred to fund the Client Security Fund established pursuant to Section 6140.5, provided there are sufficient funds available to fully support the program.

(e) (1) Notwithstanding subdivision (d), the board may also disburse or appropriate any excess funds not needed to support the program, including reserve funds, to the State Bar's general fund.

(2) Any funds disbursed or transferred pursuant to paragraph (1) shall first be used to cover salaries and benefits of employees in bargaining units for which a memorandum of understanding has been agreed to by the State Bar before being used for any other purpose.

(f) This section shall remain in effect only until January 1, 2025, and as of that date is repealed.

SEC. 27.   Section 6140.9 is added to the Business and Professions Code, to read:

6140.9.   (a) Moneys for the support of the program established pursuant to Article 15 (commencing with Section 6230), treatment services for those who cannot afford to pay, and related programs approved by the committee established pursuant to Section 6231 shall be paid in whole or part by a fee of ten dollars ($10) per active licensee per year, and by a fee of five dollars ($5) per inactive licensee per year, except that for 2020 only, the fee shall be one dollar ($1) per active licensee and zero dollars ($0) per inactive licensee. The State Bar is not required to expend any additional funds to either support those programs or to provide treatment services for those who cannot afford to pay.

(b)  On and after January 1, 2019, one dollar ($1) of the ten-dollar ($10) fee paid by each active licensee pursuant to subdivision (a) shall be transferred by the State Bar to a statewide nonprofit corporation established by attorneys that has, for the last 25 years or more, provided peer support to attorneys recovering from alcohol and substance abuse in a confidential and anonymous manner, to fund the support of recovery efforts of the nonprofit corporation. In 2020 only, the statewide nonprofit corporation shall receive the one-dollar ($1) fee paid by each active licensee.

(c)  Any nonprofit corporation that receives funds pursuant to subdivision (b) shall submit an annual report to the State Bar accounting for the use of the funds. The report shall be submitted to the State Bar no later than March 1, 2020, and no later than March 1 of each year thereafter. The report shall include, but not be limited to, the following:

(1)  An accounting of all receipts and expenditures of the funds.

(2)  The balance of the funds as of the end of the previous calendar year.

(3)  A brief narrative describing the goals of the work supported by the expenditures.

(4)  A summary of the number of clients served, the modality of treatment, and any outcome data on the impact of the treatment.

(d)  The board may seek alternative sources for funding the program. Any excess funds not needed to support the program, including reserve funds, may be transferred to fund the Client Security Fund established pursuant to Section 6140.5, provided there are sufficient funds available to fully support the program.

(e)  This section shall become operative on January 1, 2025.

SEC. 28.  Section 6141 of the Business and Professions Code is amended to read:

6141.  (a)  The board shall fix the annual license fee for inactive licensees at a sum not exceeding ninety-seven dollars and forty cents ($97.40). The annual license fee for inactive licensees is payable on or before the first day of February of each year.

(b)  An inactive licensee shall not be required to pay the annual license fee for inactive licensees for any calendar year following the calendar year in which the licensee attains 70 years of age.

(c)  This section shall become operative on January 1, 2024.

SEC. 29.  Section 6144.1 of the Business and Professions Code is amended to read:

6144.1.   (a)  The net proceeds from the sale of real property, after payment of obligations and encumbrances and reasonable costs of acquiring and relocating its facilities, if any, shall be held by the State Bar without expenditure or commitment for any purpose until approved by the Legislature by statute. The net proceeds from the lease of real property, after payment of obligations and encumbrances and reasonable costs of acquiring and relocating its facilities, if any, shall be used by the State Bar for the protection of the public.

(b)  Notwithstanding subdivision (a), the net proceeds from the sale of the State Bar's San Francisco office building, after payment of obligations and encumbrances and the minimally reasonable costs of acquiring and relocating its facilities, if any, may be utilized by the State Bar to cover employee salaries, and to cover operational costs associated with the State Bar's discipline system and administration of the biannual admissions exam.

(c)  All proceeds expended not consistent with subdivision (b) shall be held by the State Bar without expenditure or commitment for any purpose until approved by the Legislature by statute.

SEC. 30.   Section 6145 of the Business and Professions Code is amended to read:

6145.   (a)  The board shall engage the services of an independent national or regional public accounting firm with at least five years of experience in governmental auditing for an audit of its financial statement for each fiscal year. The financial statement shall be promptly certified under oath by the chief financial officer of the State Bar, and a copy of the audit and financial statement shall be submitted annually, on or before May 31, to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

The audit also shall examine the receipts and expenditures of the State Bar to ensure that the funds collected on behalf of the Conference of Delegates of California Bar Associations as the independent successor entity to the former Conference of Delegates of the State Bar are conveyed to that entity, that the State Bar has been paid or reimbursed for the full cost of any administrative and support services provided to the successor entity, including the collection of fees or donations on its behalf, and that no mandatory fees are being used to fund the activities of the successor entity.

In selecting the accounting firm, the board shall consider the value of continuity, along with the risk that continued long-term engagements of an accounting firm may affect the independence of that firm.

(b)  The board shall contract with the California State Auditor's Office to conduct a performance audit of the State Bar's operations from July 1, 2000, to December 31, 2000, inclusive. A copy of the performance audit shall be submitted by May 1, 2001, to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

Every two years thereafter, the board shall contract with the California State Auditor's Office to conduct a performance audit of the State Bar's operations for the respective fiscal year, commencing with January 1, 2002, to December 31, 2002, inclusive. A copy of the performance audit shall be submitted within 120 days of the close of the fiscal year for which the audit was performed to the board, to the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

For the purposes of this subdivision, the California State Auditor's Office may contract with a third party to conduct the performance audit. This subdivision is not intended to reduce the number of audits the California State Auditor's Office may otherwise be able to conduct.

(c)  (1)  For the 2023 audit required pursuant to subdivision (b), the California State Auditor's Office shall conduct a performance audit of the State Bar as set forth in this subdivision. The State Bar shall provide technical assistance, data, or information as requested by the California State Auditor. It is the intent of the Legislature that this audit may be reviewed in conjunction with the legislation that authorizes the State Bar's licensing fee in 2023.

(2)  The audit shall evaluate each program or division of the State Bar receiving support from the annual State Bar licensing fees and other fees required of active and inactive licensees.

(3)  The audit shall, at minimum, include all of the following for each program or division described by paragraph (2):

(A)  An assessment of how much fee revenue, staff, and resources are currently budgeted and subsequently expended to perform existing tasks and responsibilities.

(B)  An assessment of whether the State Bar has appropriate program performance measures in place and how these measures are used for budgeting purposes.

(C)  An assessment of the usage of any real property sold by the State Bar.

(D)  A review of the State Bar's cost allocation plan used to allocate administrative costs.

(E)  A review of any proposals for additional funding or resources requested by the State Bar to determine whether these proposals are necessary to meet the State Bar's public protection function, as well as the accuracy of identified associated funding needs, after reviewing how existing resources are used.

(F)  A calculation of how much fee revenue would be needed from each State Bar active and inactive licensee to fully offset State Bar costs to perform existing tasks and responsibilities and to support additional proposed expenditures determined to be necessary to meet the State Bar's public protection function. This calculation shall take into account any proposed business process reengineering, reallocations, or efficiencies identified by the California State Auditor.

(4)  The audit shall include an evaluation of how the State Bar administers discipline cases that require an outside investigator or prosecutor and how that process can be improved, including the cost-effectiveness and timeliness of such investigations and prosecutions.

(5)  The audit required by this subdivision shall be submitted by April 15, 2023, to the board of trustees, the Chief Justice of the Supreme Court, and to the Assembly and Senate Committees on Judiciary.

(6)  The State Bar shall use existing resources to reimburse the California State Auditor's Office for the costs of conducting the audit required by this subdivision.

SEC. 31.   Section 6145.1 is added to the Business and Professions Code, to immediately follow Section 6145, to read:

6145.1.  (a)  (1)  The California State Bar shall prepare a report providing written justification for how it would use revenue generated by an increase in the mandatory annual license fee authorized by Section 6140 for active licensees and Section 6141 for inactive licensees. It is the intent of the Legislature to review

this report in conjunction with legislation authorizing the State Bar's licensing fee in 2025.

(2)  This report shall include the State Bar's calculation of the necessary fee increase to maintain its existing operations and service levels and provide clear justification for any differences from the amounts calculated by the California State Auditor in its April 2023 audit.

(3)  This report shall also include the State Bar's assessment of all programs and activities that require additional support from the annual license fee. For each program and activity, this assessment shall include all of the following:

(A)  A detailed description of the program and activity.

(B)  The projected, budgeted, and actual expenditures in 2023, 2024, and 2025 assuming no increase in the annual fee.

(C)  The estimated deficit and the reason for the deficit.

(D)  What aspects of the programs or activities would not be achievable if a fee increase was not provided.

(E)  Complete, actual data for 2023.

(4)  This report shall also include information on how the State Bar proposes to use any potential additional funding resulting from any potential increase in the mandatory annual license fee. Specifically, for every twenty-five-dollar ($25) incremental increase in the mandatory annual license fee for active licensees and corresponding six dollars and twenty-five-cent ($6.25) incremental increase in the mandatory annual license fee for inactive licenses the State Bar shall report, at a minimum, the following:

(A)  The total amount of revenue estimated to be generated from the incremental increase.

(B)  A description of which State Bar programs and activities would be funded by the revenue generated from the incremental increase and any recent major operational or procedural changes implemented in those programs and activities.

(C)  In cases where a program or activity identified pursuant to paragraph (3) is proposed to receive funding, detailed justification for the amount of funding proposed to be used to support the program or activity, how that amount was calculated along with any key assumptions made, what outcomes are expected to be achieved, and what, if any, deficit would remain for the activity or program along with what aspects of the activity or program

would be unachievable due to the deficit. This justification shall also clearly specify the extent to which the funding is or will be used to complete business process reengineering, improve processes, or improve efficiencies.

(5)  The information provided pursuant to paragraph (4) shall reflect the State Bar's actual planned use of the funding for each potential incremental increase and the State Bar shall not assume that it may redirect the funding for other purposes should an increase in the annual fee be approved.

(6)  This report shall be submitted no later than April 1, 2024, to the board of trustees, the Chief Justice of the Supreme Court, and the Assembly and Senate Committees on Judiciary.

(b)  In addition to the report required by subdivision (a), the State Bar shall provide a progress report on the Office of Chief Trial Counsel's case processing standards, which shall be submitted pursuant to paragraph (6) of subdivision (a). This progress report shall include, but is not limited to, the following:

(1)  The status of changes made to case disciplinary processes and an assessment of how those changes are impacting case processing times.

(2)  A discussion of how concerns related to operational efficiency raised by the California State Auditor and the Legislative Analyst's Office have been addressed or are planned to be addressed.

(3)  An assessment of how recent case processing times compare to the State Bar's proposed average case processing standards. This assessment shall also include data on the timeliness of the completion of the hearing stage in order to provide a comprehensive picture of case processing times.

(4)  An assessment of how recent case processing times compare to the State Bar's proposed backlog standards, as well as the proposed standards calculated using pending rather than closed workload as discussed by the Legislative Analyst's January 2023 report.

SEC. 32.   Section 6238 of the Business and Professions Code is repealed.

SEC. 33.   The Legislature finds and declares that Sections 9 and 17 of this act, which amend Sections 6026.7 and 6086.1 of the Business and Professions Code, impose a limitation on the public's right of access to the meetings of public bodies or the

**SB 40** — **46** —

writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

Due to the confidential nature of the information that the Board of Trustees will be considering, it is necessary that their consideration of the information be done in closed session.

SEC. 34.   No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

Approved _____, 2023

_____
                                    *Governor*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit**
**- 5 -**

VERIFIED CIVIL RIGHTS COMPLAINT

We use cookies.  Learn More                                    Accept

Legal Ethics
March 13, 2023, 12:02 PM CDT; Updated: March 13, 2023, 5:01 PM CDT

# Girardi Probe Shows Internally Corrupt California State Bar (1)

By Joyce E. Cutler

- Grilling by lawmakers, jurists, press in bar's future

- It's unclear whether previous reforms can prevent repeat

California's mandatory-membership state bar faces increased criticism and scrutiny in the wake of a pair of independent reports detailing how the now-disbarred and indicted plaintiffs' attorney Thomas Girardi infiltrated and corrupted an agency that was supposed to be protecting the public from people like him.

The redacted reports released Friday paint a picture of a state regulator compromised by workers, allegedly influenced by Girardi's bestowal of gifts, who blocked and buried complaints against the famed attorney and his now-bankrupt Girardi Keese law firm. The white papers likely precede even more uncomfortable hours for bar executives before legislative leaders and jurists.

What the reports show "is that the Bar was systematically bought off by a mafioso like lawyer," Carol Langford, a University of San Francisco adjunct law professor who defends attorneys before the bar, said in a Friday email. "What makes it sickening is the Bar itself—the ruling body—was self serving and self dealing all while prosecuting solo practitioners."

"Even worse, they allowed the bad players to jump out with golden parachutes and so far pay no price for their actions," Langford said.

Leaders of the quarter-million member organization met with reporters on Monday to discuss the reports, the results of separate probes conducted by the law firm of Halpern May Ybarra Gelberg LLP, and by attorney Alyse M. Lazar.

At least nine former bar employees or board members had connections to Girardi or accepted items of value, travel, or meals from him while working for the bar or as board members, the Halpern May report said. Many of Girardi's relationships with bar insiders and gifts weren't appropriately divulged as part of their conflicts-of-interest disclosures, the firm's study said.

"Mr. Girardi is sort of the poster child for a system that was having a hard time doing its main job of regulating and disciplining attorneys, and there are, we suspect, many reasons for that situation to have occurred really going back to the founding of the organization more than 90 years ago," bar board of trustees Chairman Ruben Duran told reporters on Monday.

The agency received the investigators' reports Feb. 4 but delayed their release "because we were cooperating with a law enforcement agency and we were not able" to publicly share the report, Ellin Davtyan, bar general counsel, said during the same press conference. Bar officials declined to name who was being investigated either in the Girardi Keese firm or within the bar.

**Imperfect System**

The reports are the latest to reveal the culture within the bar that allowed Girardi to rack up 205 disciplinary cases against him over four decades. The bar used nonpublic private reprovals, closed complaints at intake, after investigation, and before the complaints were filed to dispatch the grievances filed against the famed Southern California plaintiffs' attorney.

"I know there are lot of people who are very upset right now. And I can understand how there would be calls for tearing it down and starting over again," Duran said. The job of regulating attorneys is a huge one, "and it's not going to be perfect. And what we're doing is a very hard look at ways that we can and should improve our system both in response to the legislature and the state auditor" and the public, he said.

Senate Judiciary Committee Chairman Thomas Umberg told Bloomberg Law on Friday he found the reports "shocking in the lack of transparency and oversight and conflicts of interest that were not addressed" by the bar.

Lawmakers will hold a bar oversight hearing in the coming months, which will "be an opportunity to demonstrate that they have taken the appropriate corrective action and that they've addressed the issues of accountability and transparency," Umberg said.

Lazar was hired to review 115 of 130 complaints filed against Girardi from 1982 to January 2021. Forty-four raised possible client trust account issues, and 38 alleged failures to competently or diligently perform legal services, to communicate with the client, or to take appropriate actions when withdrawing from employment, according to her separate report. The remainder complained about other ethics violations including dishonesty, failing to comply with conflicts rules, violating reporting requirements of Business and Professions Code §6068(o), and interfering with other attorneys' representation of their clients.

"Girardi's fame and fortune may have impacted the decision to erroneously close" at least 19 cases when they warranted "at the very least a warning letter and in some cases pursuit of actual discipline in the State Bar Court," her report said. Nine other cases were insufficiently investigated.

Girardi has been disbarred and declared incompetent. He is charged in two federal courts with wire fraud for allegedly stealing from clients, and has entered pleas of not guilty. Both Girardi Keese and Girardi individually were involuntarily forced into bankruptcy.

**Shared Oversight**

The California Supreme Court oversees licensing and discipline of lawyers while the California Legislature regulates attorneys under the Business & Professions Code. That legislative oversight includes setting licensing fees.

Umberg in 2021 introduced an annual fee bill with zero licensing fees to push the agency to hire a permanent chief trial counsel. He again threatened a zero-fee bill this year.

"The legislature does not have exclusive authority concerning bar oversight, but we do have the ability through a fee mechanism to provide some consumer protection," Umberg said.

In a statement sent late Friday, the state's Supreme Court said separating the bar's regulatory and professional association functions and eliminating elected board members in 2018 "were important reforms designed to reduce undue influence and to better focus the agency's mission to protect the public and regulate the profession."

The court said it will closely study the report and work with the bar "to consider whether the reform measures already taken by the agency are adequate to prevent similar failings in the future."

(Added comments from Ruben Duran in the sixth and 10th paragraphs and from Ellin Davtyan in eighth paragraph.)

To contact the reporter on this story: Joyce E. Cutler in San Francisco at jcutler@bloomberglaw.com

To contact the editors responsible for this story: Rob Tricchinelli at rtricchinelli@bloomberglaw.com; Brian Flood at bflood@bloomberglaw.com; Andrew Harris at aharris@bloomberglaw.com

**Documents**

📄  Halpern May report

📄  Lazar report

**Related Stories**

California Bar Girardi Probes Fault Influence, Dropped Cases (2)

March 10, 2023, 12:35 PM CST

Girardi Indicted For Fraud, Contempt Over Stolen Client Cash (1)

Feb. 1, 2023, 3:01 PM CST

Edelson Sues Girardi Firm Alleging $100 Million Fraud Plot (3)

July 7, 2022, 8:34 AM CDT

Tom Girardi's Downfall Delivers Ethics Lessons For Lawyers

Sept. 20, 2021, 3:01 AM CDT

California Bar Inquiries Failed, Girardi-Prompted Audit Finds

June 10, 2021, 7:51 PM CDT

More Stories (2)

© 2023 Bloomberg Industry Group, Inc.   All Rights Reserved

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit
- 6 -**

VERIFIED CIVIL RIGHTS COMPLAINT



*Los Angeles Times*

---

CALIFORNIA

# After 'Real Housewives' scandal, scathing audit says California fails to stop corrupt lawyers



Now-disgraced attorney Tom Girardi, speaking to the media in 2014, was the subject of a Times investigation that led to an audit of the State Bar.  (Al Seib / Los Angeles Times)

BY MATT HAMILTON  |  STAFF WRITER

APRIL 14, 2022 **UPDATED** 6:25 PM PT

The State Bar of California [has failed to effectively discipline](#) corrupt attorneys, allowing lawyers to repeatedly violate professional standards and harm members of the public, according to a long-awaited audit of the agency released Thursday.

The audit of the State Bar was ordered last year by the Legislature in the wake of a Los Angeles Times investigation that documented how the now-disgraced attorney Tom Girardi cultivated close relationships with the agency and kept an unblemished law license despite over 100 lawsuits against him or his firm — with many alleging misappropriation of client money.

After the State Bar acknowledged its "mistakes" in handling complaints against Girardi that spanned four decades, the Legislature mandated the public examination of the attorney discipline system.



**CALIFORNIA**

**The legal titan and the 'Real Housewife': The rise and fall of Tom Girardi and Erika Jayne**

Dec. 17, 2020

The audit concluded that the State Bar failed to properly investigate some attorneys even as complaints poured in, relied on confidential warning letters and other nonpublic methods that did little to deter misconduct, and has not dealt with the conflicts of interest between its regulatory staff and the attorneys whom the agency is tasked with policing.

"These are fundamental breakdowns," acting California State Auditor Michael Tilden said in an interview. "The State Bar has a lot of room to improve their policies to better protect the public from attorney misconduct."



**CALIFORNIA**

**Vegas parties, celebrities and boozy lunches: How legal titan Tom Girardi seduced the State Bar**

March 6, 2021

Case 2:23-cv-02307-DAD-SCR   Document 1   Filed 10/11/23   Page 178 of 225

A team of auditors pored over the State Bar's internal data and identified examples of specific lawyers with disturbing track records who received little or no discipline. None of the attorneys were named in the report. One was the subject of 165 complaints over seven years, but auditors found that many of the complaints were dismissed outright or closed after the bar issued private letters to the lawyer.

"Although the volume of complaints against the attorney has increased over time, the State Bar has imposed no discipline, and the attorney maintains an active license," Tilden said in a letter summarizing his office's findings.



**CALIFORNIA**

**His job was to police bad lawyers. He became Tom Girardi's broker to L.A.'s rich, powerful**

July 13, 2021

Another unidentified attorney had been the subject of several complaints alleging a failure to give clients money from their settlements. "When the State Bar finally examined the attorney's bank records, it found that the attorney had misappropriated nearly $41,000 from several clients," Tilden wrote.

The chair of the State Bar's board of trustees, Ruben Duran, said in an interview that he was troubled by the audit's findings, calling its conclusions "some of the hardest-hitting discoveries" that the State Auditor has ever made about the agency. He said that staff and leadership wanted to ensure the public was better protected, and that many reforms had been implemented after the Girardi case exposed deficiencies.

ADVERTISEMENT



Unsold SUV's $20,400
Remaining Models Must Go
See The List >>                    thefrugalconsumer.com

"It shouldn't matter whether your lawyer is an A-list celebrity or a solo practitioner down the street. Everyone deserves competent, ethical legal services," Duran said. He noted that the State Bar went about two decades without fee increases, and said some of the problems at the bar stem from this long-term underfunding at an agency that has to monitor more than 250,000 attorneys.

Duran noted that the bar had implemented reforms that address some of the issues highlighted by the audit, including proposing a new program to monitor attorney trust accounts, increased oversight of the chief trial counsel's office, and twice yearly reviews of closed cases by an outside auditor. Last summer, the agency also hired George Cardona, a former federal prosecutor, to serve as chief trial counsel.

But fully implementing the State Auditor's recommendations would require about 30 new employees and $1 million in one-time funds, Duran said.

Assemblymember Mark Stone (D-Scotts Valley), who is chair of the Assembly's Judiciary Committee, said the audit was "profoundly eye-opening."

"Victims of unscrupulous lawyers should not be re-victimized by a State Bar that too often has protected those lawyers from full scrutiny," Stone said in a statement. "We will

Case 2:23-cv-02307-DAD-SCR   Document 1   Filed 10/11/23   Page 180 of 225

continue to push the Bar to get back to basics and reform its discipline system once and for all."

Girardi was once a top plaintiffs' attorney and Democratic powerbroker who gained reality TV fame on "Real Housewives of Beverly Hills" alongside his third wife, Erika. His downfall in December 2020 was in part triggered by a judge finding that he had misappropriated millions from families of those killed in an Indonesian plane crash. But after the collapse of his Wilshire Boulevard law firm, scores of clients came forward saying they were swindled by Girardi and The Times documented a trail of misconduct allegations going back decades.

Earlier this month, a Chicago law firm accused Girardi and other lawyers at his defunct firm of running "the largest criminal racketeering enterprise in the history of plaintiffs' law," pocketing millions from clients, vendors and fellow attorneys.

That Girardi's serial misconduct went unchecked for decades has forced a reckoning among the legal establishment. In addition to the State Bar's acknowledgement of past mistakes, the agency has also been conducting a broad investigation into whether its own employees or other agency insiders helped Girardi skirt scrutiny. That investigation is ongoing, Duran confirmed.

Girardi is not named in Thursday's report by the State Auditor, but the findings make clear that he was not alone in sidestepping sanction by the bar's disciplinary system.

"I think we definitely identified misconduct that does impact the average Californian if they are using the legal system," said Jon Kline, a principal at the auditor's office who helped lead the review. "Misappropriation is a concern: That's money that should be going to clients that the attorney has absconded with."

The audit found that the State Bar failed to fully identify patterns of misconduct and investigate further, either because of its case management system or because of how it

treats complaints that are withdrawn. For example, one attorney was named in multiple complaints for failing to pay settlement funds. The bar closed each after the attorney "finally paid the client," but the audit states that the bar did not obtain the lawyer's bank records until it received more than 10 complaints over two years.

"When the State Bar finally examined the client trust account, it found that the attorney had misappropriated nearly $41,000 in total from several clients," the audit states.

The audit found that the State Bar had also prematurely closed cases that needed further investigation or potential discipline, often through a host of confidential methods, like issuing private warning letters that are not knowable to the public. The audit found inconsistencies in the use of nonpublic methods, and indicated the agency had relied too much on such secretive forms of discipline.

From 2010 to 2021, the bar used confidential letters or warnings to attorneys twice as often as it sought public discipline. During that time frame, more than 700 attorneys had at least four or more complaints each that were closed through private measures. The auditors reviewed five attorneys' cases and found the cases were closed "despite indications in its case files that further investigation or actual discipline may have been warranted."

The State Bar had only one outside reviewer, and that person had been the sole person examining closed cases since 2012. The State Bar's staff was also selecting which cases the reviewer examined, and the reviewer's findings went to management, not its board of trustees.

"Anytime findings are going through management, it introduces the risk that what is provided ultimately to the governing body is altered," said Kline, the principal auditor.

Other errors were basic investigatory lapses, like accepting poor levels of evidence. An attorney who had overdrawn a client trust account twice in a month was asked by the

bar to provide bank records. The attorney turned over bank statements but left out the month when the trust account was overdrawn. Instead, the lawyer provided a narrative of transactions in that month. Rather than request the bank statement, the State Bar accepted the lawyer's explanation and closed the case.

Kline declined to specify what was behind the reliance on weak evidence, but said: "There is this focus on closing cases quickly in order to keep the backlog under the control."

Prior audits and other officials had previously criticized the bar for a crippling backlog, or cases that go six months without any action by the agency.

 Matt Hamilton

Matt Hamilton is a reporter for the Los Angeles Times. He won the 2019 Pulitzer Prize for investigative reporting with colleagues Harriet Ryan and Paul Pringle and was part of the team of reporters that won a Pulitzer Prize for its coverage of the San Bernardino terrorist attack. A graduate of Boston College and the University of Southern California, he joined The Times in 2013.

Copyright © 2023, Los Angeles Times | Terms of Service | Privacy Policy | CA Notice of Collection | Do Not Sell or Share My Personal Information

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit - 7 -**

VERIFIED CIVIL RIGHTS COMPLAINT



THE DAVIS
**VANGUARD**
DAVISVANGUARD.ORG

♦ ♥ ▶

SUBSCRIBERS     EMAIL SIGNUP     DONATE     LOGIN

VANGUARD-IMPACT-
CAMPAIGN)

◑
T̄T

# Commentary: Leadership Questions State Bar

Share:

  (/#facebook)     (/#twitter)     0 (/#pinterest)     (/#linkedin)

  (https://www.addtoany.com/add_to/email?linkurl=https%3A%2F%2Fwww.davisvanguard.org%2F2023%2F08%2Fcommentary-leadership-questions-state-bar%2F&linkname=Commentary%3A%20Leadership%20Questions%20State%20Bar&linknote=By%20Robert%20J.%20Hansen%20Led%20by%20its%20Cha...



*Executive Director of the State Bar of California speaking at a May 23, 2023, Joint Judiciary Committee hearing on corruption at the California State Capitol. (Screenshot by Robert J. Hansen)*

**By Robert J. Hansen**

Led by its Chairman Ruben Duran and Executive Director Leah Wilson, leadership at the California State Bar remains under a microscope in wake of the corruption and bribery schemes evidenced by disbarred attorney Thomas Girardi (https://www.davisvanguard.org/2023/06/state-bar-seeks-disbarment-of-girardi-attorneys/). Who else, then, is the bar protecting and why?

FEATURED VIDEOS



NOW
PLAYING







Former California State Auditor Elaine Howle said the State Bar's commitment to enforcing the rules of professional conduct is a reflection of leadership in both the Executive Office and the Board, currently led by Ruben Duran and Leah Wilson.

"Like any agency that both licenses and enforces licensing requirements, there can be effective oversight of licensees as long as leadership supports that responsibility," Howle said in a recent interview (https://www.davisvanguard.org/2023/06/petition-for-antitrust-complaint-against-state-bar-and-chairman-filed-and-decided-without-complainants-knowledge/).

So, how does the State Bar select its leadership during these trying times of purported reform (https://www.davisvanguard.org/2023/06/leaked-emails-expose-failures-of-state-bar-to-discipline-attorneys/)?

Executive Director Leah Wilson previously served as the State Bar's executive director until she resigned in January 2019 "to pursue what she described as a venture mixing public and private dollars with philanthropy" according to Cheryl Miller of Law.com—Wilson would later be "re-hired" in June 2021.

Chairman of the Board of Trustees Ruben Duran was City Attorney for the small desert city of Adelanto when the "self-serving profit-taking and graft engaged in by a group of elected (https://visitor.r20.constantcontact.com/manage/optin? v=001uV3jnccU8bbDWqR4notdIozxYnkzDf5t4swt_xn2fn81oeJpaW4eSMCLTEsehMWu2CAfEhWB-zTXOE625hvguJDtqlV4e71IzNKus3gBkN8=)officials exploiting that city's transition to a marijuana-based economy hit its zenith," according to Mark Gutglueck of the San Bernardino Sentinel (https://www.vvdailypress.com/story/news/local/delanto/2018/08/24/adelanto-city-attorney-ruben-duran/10947410007/).



Duran, with the law firm of Best Best and Krieger, announced his resignation as city attorney for the City of Adelanto via letter on August 23, 2018, a day before the Council was to consider the possibility of terminating him according to Daily Press (https://www.vvdailypress.com/story/news/local/delanto/2018/08/24/adelanto-city-attorney-ruben-duran/10947410007/).

"After 13-and-a-half months of intense, sometimes challenging, but always fulfilling legal work for the City of Adelanto," Duran wrote, "I find that I must regretfully tender my resignation as your City Attorney, effective as soon as the Council can secure a new City Attorney."

According to Mark Gutglueck of San Bernardino Sentinel, "in the months prior to Duran's resignation as Adelanto city attorney, federal law enforcement agencies were focusing on the degree to which Duran was enabling two members of the city council, who were personally profiting" from new cannabis regulations in the city.

Former Adelanto Mayor Richard Allen Kerr was recently convicted of honest services fraud for his involvement in taking bribes and kickbacks from commercial cannabis interests, according to the U.S. Department of Justice. These kickbacks occurred while Kerr was mayor of Adelanto from 2015 to 2018, during which time Duran was City Attorney.

A mere three weeks after he was purportedly set to be fired from Adelanto, Duran was appointed by Assembly Speaker Anthony Rendon to the Board of Trustees on September 14, 2018. The California Supreme Court appointed him Chairman in 2021.

Down the road from Adelanto in the desert, the City of Coachella was represented by Best Best and Krieger's Carlos Campos, who works with Duran in the City of Ontario. Now, Duran is a co-defendant in Superior Court (https://www.documentcloud.org/documents/23912227-first-amended-complaint) within an alleged malicious prosecution scheme that commenced September 14, 2018, with attorney Kenneth Catanzarite of Catanzarite Law Corporation.

In that case, the Court of Appeal found evidence of three cases filed without probable cause that were filed with malice in an alleged takeover attempt of a cannabis company.

Anaheim attorney Kenneth Catanzarite (https://www.davisvanguard.org/2023/06/why-has-the-california-state-bar-not-disciplined-anaheim-attorney-kenneth-catanzarite/) and his associates at Catanzarite Law Corporation have a storied history of misconduct reflected by court orders, akin to Thomas Girardi and Girardi Keese.



LAUNCH YOUR CAREER WITH PURPOSE AND PERSPECTIVE.
THE STEM-DESIGNATED FULL-TIME MBA
LEARN MORE
UNC KENAN-FLAGLER Full-Time

Catanzarite's *modus operandi* involves being disqualified from cases for representing multiple sides of the same disputes, getting sanctioned repeatedly for tens of thousands of dollars, and submitting lawsuits on behalf of "clients" that may lack a full understanding of their cases or allegations, according to court records.

The State Bar's (https://www.documentcloud.org/documents/23912226-exhibit-295-abatement-11_21_21-to-further-lawyer-schemes-to-defraud) handling of Catanzarite resembles its treatment of Girardi.

According to Senior Trial Counsel Eli David Morgenstern, "the evidence 'adduced' in the related civil matter(s) [where Duran and Morgenstern are defendants] will aid the State Bar in its (i) investigation of Mr. Catanzarite's conduct…; and (ii) potential prosecution of Mr. Catanzarite in State Bar Court."

Morgenstern is managing attorney discipline of Kenneth Catanzarite as he is also a civil defendant alongside Duran and Catanzarite, which would appear to compromise his objectivity.

At a May 2023, Joint Judiciary Committee hearing (https://www.davisvanguard.org/2023/05/the-california-state-bars-failure-to-hold-attorneys-accountable/), State Bar Executive Director Wilson said that, while new policies have been in place since Thomas Girardi was disbarred, new policies won't change the culture of the State Bar.

A culture that includes taking bribes from attorneys like Girardi and complaining about not having the resources to do their job. A culture that involves engaging in more conflicts of interest, now.

This culture might be why Senator Thomas Umberg of the Senate Judiciary Committee (D-Santa Ana) said his bill, SB 40, is a response to State Bar's failed operations. "I personally am not in support of an increase in fees," said Umberg.

"There's been a great deal of controversy concerning the state bar," Umberg said at the bill hearing. "Thank you, Tom Girardi, for providing the revelation as to who much reform is required."



Outspoken during the Joint Judiciary Committee hearing, Assembly Majority Leader Emeritus Eloise Gomez Reyes (also an attorney) received a comprehensive legislative proposal (https://www.documentcloud.org/documents/23912269-public-protection-act-7_16_23) for the next session to reform the State Bar. Citing the Girardi, Duran, and Catanzarite scandals, the proposal seeks to place active state supervision on State Bar through other agencies as required by federal antitrust laws.

Why would Assembly Speaker Anthony Rendon appoint Ruben Duran amidst so much controversy? Worse, why would the California Supreme Court appoint him Chairman?

Duran's "unquestioning loyalty" gained him the appointment to serve as Ontario city attorney and perhaps the State Bar also.

Reflected by the Bar's handling of Catanzarite, this loyalty is to the State Bar and not the public he is bound to protect. The results don't appear to be any different now than they were when Girardi's pocket-lining of public employees reigned.

(http://davisvanguard.networkforgood.com)

**Share:**

  (#facebook)     (#twitter)     0   (#pinterest)     (#linkedin)     (#email)     (#print)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit**
**- 8 -**

1  STATE BAR OF CALIFORNIA
   OFFICE OF CHIEF TRIAL COUNSEL
2  GEORGE S. CARDONA, No. 135439
   CHIEF TRIAL COUNSEL
3  CHRISTOPHER G. JAGARD, No. 191147
   DEPUTY CHIEF TRIAL COUNSEL
4  MIA R. ELLIS, No. 228235
   ASSISTANT CHIEF TRIAL COUNSEL
5  DUNCAN CARLING, No. 262387
   SUPERVISING ATTORNEY
6  RYAN T. CHIN, No. 281777
   TRIAL COUNSEL
7  ryan.chin@calbar.ca.gov
   180 Howard Street
8  San Francisco, California 94105-1639
   Telephone: (415) 538-2537
9

**Public Matter**
**FILED** MN
3/16/2023
**STATE BAR COURT**
**CLERK'S OFFICE**
**SAN FRANCISCO**

10                    THE STATE BAR COURT

11              HEARING DEPARTMENT - SAN FRANCISCO

12

13  In the Matter of:                    )  Case No.  SBC-23-O-30409
                                         )
14  ERNEST ROY KRAUSE,                   )  NOTICE OF DISCIPLINARY CHARGES
    State Bar No. 56343,                 )
15                                       )  (OCTC Case No. 21-O-00011, 21-O-01854, &
                                         )  21-O-11893)
16  An Attorney of the State Bar         )

17              **<u>NOTICE - FAILURE TO RESPOND!</u>**

18  **IF YOU FAIL TO FILE A WRITTEN ANSWER TO THIS NOTICE
    WITHIN 20 DAYS AFTER SERVICE, OR IF YOU FAIL TO APPEAR AT
19  THE STATE BAR COURT TRIAL:**

20  **(1)  YOUR DEFAULT WILL BE ENTERED;**
    **(2)  YOUR STATUS WILL BE CHANGED TO INACTIVE AND YOU
21         WILL NOT BE PERMITTED TO PRACTICE LAW;**
    **(3)  YOU WILL NOT BE PERMITTED TO PARTICIPATE FURTHER IN
22         THESE PROCEEDINGS UNLESS YOU MAKE A TIMELY MOTION
           AND THE DEFAULT IS SET ASIDE, AND;**
23  **(4)  YOU  SHALL  BE  SUBJECT  TO  ADDITIONAL  DISCIPLINE.
           SPECIFICALLY, IF YOU FAIL TO TIMELY MOVE TO SET ASIDE
24         OR VACATE YOUR DEFAULT, THIS COURT WILL ENTER AN
           ORDER  RECOMMENDING  YOUR  DISBARMENT  AND  MAY
25         RECOMMEND THE IMPOSITION  OF MONETARY SANCTIONS
           WITHOUT FURTHER HEARING OR PROCEEDING.  (SEE RULES
26         PROC. OF STATE BAR, RULES 5.80 ET SEQ. & 5.137.)**

27
    The State Bar of California alleges:
28

-1-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit - 9 -**

VERIFIED CIVIL RIGHTS COMPLAINT

**Public Matter**

**FILED**

MN

6/15/2023

**STATE BAR COURT**
**CLERK'S OFFICE**
**SAN FRANCISCO**

1  STATE BAR OF CALIFORNIA
   OFFICE OF CHIEF TRIAL COUNSEL
2  GEORGE S. CARDONA, No. 135439
   CHIEF TRIAL COUNSEL
3  CHRISTOPHER G. JAGARD, No. 191147
   DEPUTY CHIEF TRIAL COUNSEL
4  MIA R. ELLIS, No. 228235
   ASSISTANT CHIEF TRIAL COUNSEL
5  DUNCAN CARLING, No. 262387
   SUPERVISING ATTORNEY
6  RYAN T. CHIN, No. 281777
   TRIAL COUNSEL
7  ryan.chin@calbar.ca.gov
   180 Howard Street
8  San Francisco, California 94105-1639
   Telephone: (415) 538-2537

9

10              THE STATE BAR COURT

11        HEARING DEPARTMENT - SAN FRANCISCO

12

13  In the Matter of:            )  Case No.  SBC-23-O-30697
                                 )
14  ERNEST ROY KRAUSE,           )  NOTICE OF DISCIPLINARY CHARGES
    State Bar No. 56343,         )
15                               )  (OCTC Case No. 23-O-16771)
                                 )
16  An Attorney of the State Bar )

17          **NOTICE - FAILURE TO RESPOND!**

18  **IF YOU FAIL TO FILE A WRITTEN ANSWER TO THIS NOTICE
    WITHIN 20 DAYS AFTER SERVICE, OR IF YOU FAIL TO APPEAR AT
19  THE STATE BAR COURT TRIAL:**

20  **(1)  YOUR DEFAULT WILL BE ENTERED;**
    **(2)  YOUR STATUS WILL BE CHANGED TO INACTIVE AND YOU
21        WILL NOT BE PERMITTED TO PRACTICE LAW;**
    **(3)  YOU WILL NOT BE PERMITTED TO PARTICIPATE FURTHER IN
22        THESE PROCEEDINGS UNLESS YOU MAKE A TIMELY MOTION
          AND THE DEFAULT IS SET ASIDE, AND;**
23  **(4)  YOU SHALL BE SUBJECT TO ADDITIONAL DISCIPLINE.
          SPECIFICALLY, IF YOU FAIL TO TIMELY MOVE TO SET ASIDE
24        OR VACATE YOUR DEFAULT, THIS COURT WILL ENTER AN
          ORDER RECOMMENDING YOUR DISBARMENT AND MAY
25        RECOMMEND THE IMPOSITION  OF MONETARY SANCTIONS
          WITHOUT FURTHER HEARING OR PROCEEDING.  (SEE RULES
26        PROC. OF STATE BAR, RULES 5.80 ET SEQ. & 5.137.)**

27

28  The State Bar of California alleges:

                        -1-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit**
**-10 -**

VERIFIED CIVIL RIGHTS COMPLAINT



# The State Bar *of California*

**Date:** 12/29/2020

## Attorney Misconduct Complaint

| Your Contact Information | | |
|---|---|---|
| **Title:** Mr. | | |

| | | |
|---|---|---|
| **First name:** Keith | **Middle name:** | **Last name:** Banks |

| | | |
|---|---|---|
| **Address:** 1667 Oak Avenue | | |

| | | |
|---|---|---|
| **City:** Davis | **State:** CA | **ZIP code:** 95616 |

| | | |
|---|---|---|
| **Email:** keith@pakpourbanks.com | | |

**Your telephone numbers:**

| | | |
|---|---|---|
| **Home:** (530) 219-2002 | **Work:** (530) 725-5388 | **Cell:** (530) 219-2002 |

| Attorney's Information | | |
|---|---|---|
| **First name:** Ernest | **Middle name:** Roy | **Last name:** Krause |
| **Address:** Ste E-224 4540 Florin Rd | | |
| **City:** Sacramento | **State:** CA | **ZIP code:** 95823 |
| **Email:** ▆▆▆▆▆▆▆▆ | | **CA Bar License #:** 56343 |
| **Primary phone:** ▆▆▆▆▆▆ | | **Other phone:** |
| **Cell phone:** | **Website:** | |

**Have you or a member of your family complained to the State Bar about this attorney previously?**

○ Yes    ◉ No

**Did you hire the attorney?**

○ Yes    ◉ No

**Does this complaint involve allegations of theft or misappropriation of funds?**

○ Yes    ◉ No

**Does this complaint involve allegations of attorney misconduct against a person 65 years of age or older?**

○ Yes    ◉ No

**Does this complaint involve allegations of attorney misconduct against a person who is incapacitated, infirm, disabled, incarcerated, an immigrant, or a minor?**

○ Yes    ◉ No

**Does this complaint involve allegations that the attorney has abandoned a client?**

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit**
**-11-**

- 86 -



# The State Bar *of California*

**Date:** 2/13/2021

## Attorney Misconduct Complaint

| **Your Contact Information** | | |
|---|---|---|
| **Title:** | | |

| **First name:** Dawn | **Middle name:** | **Last name:** Wigeri van Edema |
|---|---|---|

| **Address:** 18189 Mandarin St. | | |
|---|---|---|

| **City:** Woodland | **State:** CA | **ZIP code:** 95695 |
|---|---|---|

| **Email:** dawn@pakpourlaw.com | | |
|---|---|---|

| **Your telephone numbers:** | | |
|---|---|---|

| **Home:** (530) 666-0324 | **Work:** (530) 302-5444 | **Cell:** (916) 505-8519 |
|---|---|---|

| **Attorney's Information** | | |
|---|---|---|

| **First name:** Ernest | **Middle name:** Roy | **Last name:** Krause |
|---|---|---|

| **Address:** Ste E-224 4540 Florin Rd | | |
|---|---|---|

| **City:** Sacramento | **State:** CA | **ZIP code:** 95823 |
|---|---|---|

| **Email:** ▓▓▓▓▓▓▓▓ | **CA Bar License #:** 56343 |
|---|---|

| **Primary phone:** ▓▓▓▓▓▓ | **Other phone:** |
|---|---|

| **Cell phone:** | **Website:** |
|---|---|

**Have you or a member of your family complained to the State Bar about this attorney previously?**

○ Yes     ◉ No

**Did you hire the attorney?**

○ Yes     ◉ No

**Does this complaint involve allegations of theft or misappropriation of funds?**

○ Yes     ◉ No

**Does this complaint involve allegations of attorney misconduct against a person 65 years of age or older?**

○ Yes     ◉ No

**Does this complaint involve allegations of attorney misconduct against a person who is incapacitated, infirm, disabled, incarcerated, an immigrant, or a minor?**

○ Yes     ◉ No

**Does this complaint involve allegations that the attorney has abandoned a client?**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit**
**-12-**

VERIFIED CIVIL RIGHTS COMPLAINT

# DOCUMENTS RECEIVED BY DATA ENTRY

## (Complete form after scanning/uploading)

**Case #:**  21-0-11893

**Respondent:**  Ernest Roy Krause

**Event Name:**  Additional Information Received

**Event Date:**  1|6|22

**Forwarded to Central Filing by:**  J. Coote

Document Type Attached (please check all that apply):

☐ Case initiation documents, (to be destroyed – please indicate if there are documents included that cannot be destroyed);

☒ Uncertified/unsealed documents, including incoming mail, incoming faxes, and discovery provided by Respondent in paper format (to be destroyed);

☐ Subpoenaed, Sealed, or Certified documents, including business records (to be archived);

☐ Flash drives, CD's, and DVD's (to be archived).

Documents to be uploaded but not forwarded to File Retention:
- Certified mail receipts/returned certified mail receipts;
- Native electronic documents (emails, internal work product, etc.);
- Discovery provided by Respondent in electronic format;
- OCTC and Respondent pleadings;
- Documents from the SBC, including court opinions, decisions, or orders.

RECEIVED

JAN 1 2 2022

CENTRAL ADMINISTRATION

Last updated: 12.7.2020

001775

January 30-2022

To: Leslie Brady Investigator CSBA Cell 707-235-3648, 415-538-2105

email leslie.brady@calbar.ca.gov

CSBA 180 Howard St, San Francisco, CA 94105

Please find enclosed my perception of important papers concerning my association with Ernest Roy Krause,

Sincerely,

William R. Maroni

8181 Folsom Blvd #12

Sacramento, CA 95826

Sacramento, CA 95826

Phone 916-387-8561

email: maroniw1@gmail.com

000067

001756



U.S. POSTAGE PAID
FCM LG ENV
SACRAMENTO, CA
95819
FEB 3
AMOUNT
$1.56
R2305K132659-32

1000        94105

Maroni
8181Folsom Blvd #12
Sacramento, CA 95826

RECEIVED
FEB 0 2 2022
STATE BAR OF CALIFORNIA
OGTC-SF

California State Bar
180 Howard St,
San Francisco, CA 94105
Attn: Leslie Brady

000066

001755

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit -13 -**

VERIFIED CIVIL RIGHTS COMPLAINT



Date: 7/20/2022

# The State Bar of California

# Nonattorney Unlicensed Practice of Law Complaint

| Your Contact Information | | |
|---|---|---|
| **Title:** Mr. | | |
| **First name:** Lawrence | **Middle name:** | **Last name:** Ring |
| **Address:** 12150 Herdal Drive | | |
| **City:** Auburn | **State:** CA | **ZIP code:** 95603 |
| **Email:** larry@lringlaw.com | | |
| **Your telephone numbers:** | | |
| **Home:** (916) 765-4967 | **Work:** (530) 885-7836 | **Cell:** |

| Nonattorney's Information | | |
|---|---|---|
| **First name:** Frederick | **Middle name:** | **Last name:** Mitchell |
| **Address:** 4540 Florin Road, Ste. E-224 | | |
| **City:** Sacramento | **State:** CA | **ZIP code:** 95823 |
| **Email:** | | **Primary phone:** |
| **Other phone:** | **Cell phone:** | |
| **Business Name:** | **Website:** | |

**Did you hire the nonattorney?**

◯ Yes    ⦿ No

**Did the nonattorney provide legal services (for example appear in court, give legal advice or prepare legal documents)?**

⦿ Yes    ◯ No

**Did the nonattorney say he or she was an attorney?**

◯ Yes    ⦿ No

**Does this complaint involve allegations of nonattorney unauthorized practice of law where a person 65 years of age or older was victimized?**

◯ Yes    ⦿ No

SBDISC-0149

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit -14 -**

VERIFIED CIVIL RIGHTS COMPLAINT

# The State Bar of California

**OFFICE OF GENERAL COUNSEL**

180 Howard Street, San Francisco, CA 94105

caroline.holmes@calbar.ca.gov
415-538-2324

February 28, 2023

**VIA ELECTRONIC FILING**

Supreme Court of California
Clerk of the Court
350 McAllister Street
San Francisco, CA 94102

RE:     *Frederick Mitchell v. State Bar of California, et al.*
        California Supreme Court Case No. S278784

Dear Clerk of the Court:

This letter is to inform the Court that the State Bar does not intend to submit an answer to the petition in the above-referenced matter unless requested by the Court. Petitioner is seeking a waiver of the requirements for participation in the Provisional Licensure Program, without authority and contrary to Rules of Court 9.49 and 9.49.1. Petitioner further seeks withdrawal of a cease-and-desist letter related to Petitioner's potential unauthorized practice of law, which was sent based on the fact that Petitioner is not licensed to practice law in California. There exist no grounds for granting the petition.

Respectfully submitted,

/s/
Caroline Holmes
Assistant General Counsel

*Document received by the CA Supreme Court.*

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

**DECLARATION OF SERVICE**

I, Joan Randolph, hereby certify that I electronically filed and served the attached

**LETTER TO CLERK OF THE COURT** with the Clerk of the California Supreme Court and to Counsel

for Petitioner Frederick Mitchell at k****s@****.com via this Court's TrueFiling system on

February 28, 2023.

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct. Executed at San Francisco, California, this 28th day of February,

2023.


/s/ Joan Randolph
Joan Randolph

Document received by the CA Supreme Court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit**
**-15 -**

- 90 -

**FILED**

5/15/2023  MN

**STATE BAR COURT
CLERK'S OFFICE
SAN FRANCISCO**

**KRAUSE & ASSOCIATES**
Ernest Krause (SBN: 56343)
4540 Florin Rd., Suite E-224
Sacramento, CA 95823
T: 1(888) 508-1189 | F: 1(916) 200-3560
KrauseLawAssociates@gmail.com

Attorney for:
ERNEST ROY KRAUSE

THE STATE BAR COURT

HEARING DEPARTMENT - SAN FRANCISCO

----oo0oo----

In the Matter of:

ERNEST ROY KRAUSE,
State Bar No. 56343,

An Attorney of the State Bar

Case No. SBC-23-O-30409

**RESPONDENT'S MOTION TO DISMISS, TO STRIKE SCANDALOUS MATTER, AND ADMONITION AS TO <u>COUNT 7</u>**

| | | |
|---|---|---|
| Location | : | Dept. 1 (Via Zoom) |
| Judge | : | Hon. Manjari Chawla |
| NDC Filed | : | March 16, 2023 |
| Chief Trial Counsel | : | George S. Cardona |
| Prosecutor | : | Ryan T. Chin |

----oo0oo----

**NOTICE**

TO THE HONORABLE STATE BAR COURT, AND TO THE STATE BAR OF CALIFORNIA AND ITS ATTORNEYS:

PLEASE TAKE NOTICE that as soon as may be heard in Dept. 1 of the above-entitled Court, located at 180 Howard St., 6th Fl., San Francisco, CA 94105, Ernest Roy Krause ("Respondent"), will, and hereby does, move the Court to DISMISS WITH PREJUDICE in its entirety, the March 16, 2023 **unverified** *Notice of Disciplinary Charges* and to STRIKE it from the record on the grounds of prosecutorial misconduct in violation of California Penal Code § 141(a) and (c) and Section 6106 of the Business & Professions Code; alternatively, to DISMISS WITH PREJUDICE in its entirety the March 16, 2023

- 1 -

**KRAUSE & ASSOCIATES**
Ernest Krause (SBN: 56343)
4540 Florin Rd., Suite E-224
Sacramento, CA 95823
T: 1(888) 508-1189 | F: 1(916) 200-3560
KrauseLawAssociates@gmail.com

Attorney for:
ERNEST ROY KRAUSE

THE STATE BAR COURT

HEARING DEPARTMENT - SAN FRANCISCO

----ooOoo----

In the Matter of:

    ERNEST ROY KRAUSE,
    State Bar No. 56343,

An Attorney of the State Bar

Case No. SBC-23-O-30409

**CERTIFICATE OF SERVICE**

----ooOoo----

**CERTIFICATE OF SERVICE**

    I am employed in the County of Sacramento, State of California. I am over the age of 18 and not a party to the within action. My business address is: Krause & Associates, 4540 Florin Rd., Suite E-224, Sacramento, CA 95823.  On <u>May 15, 2023</u>, I served the following document(s) described as:

- RESPONDENT'S MOTION TO DISMISS, TO STRIKE SCANDALOUS MATTER, AND ADMONITION AS TO <u>COUNT 7</u>
- MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, TO STRIKE SCANDALOUS MATTER, AND ADMONITION AS TO <u>COUNT 7</u>
- DECLARATION OF ATTORNEY ERNEST KRAUSE IN SUPPORT OF MOTION TO DISMISS, TO STRIKE SCANDALOUS MATTER, AND ADMONITION AS TO <u>COUNT 7</u>
- DECLARATION OF FREDERICK MITCHELL (4L) IN SUPPORT OF MOTION TO DISMISS, TO STRIKE SCANDALOUS MATTER, AND ADMONITION AS TO <u>COUNT 7</u>

- 1 -
_____

- REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS, TO STRIKE SCANDALOUS MATTER, AND ADMONITION AS TO <u>COUNT 7</u>
- SUBSTITUTION OF ATTORNEY
- CERTIFICATE OF SERVICE

on the Parties as follows:

> Ryan T. Chin, Trial Counsel
> 180 Howard Street
> San Francisco, CA 94105
> Email: ryan.chin@calbar.ca.gov
>
> Anais Zavala, Court Clerk
> 180 Howard Street, 6th Floor
> San Francisco, CA 94105
> Email: ctroom1@statebarcourt.ca.gov

☑ ONLY BY ELECTRONIC TRANSMISSION. Only by e-mailing the document(s) to the persons at the e-mail address(es) listed based on notice provided on <u>May 15, 2023</u> and Code of Civil Procedure § 1010.6(a)(3)(A). No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Certificate of Service was executed on <u>May 15, 2023</u> at Sacramento, California.

Dated: May 15, 2023                    Respectfully submitted,


                                       <u>**/s/ Frederick Mitchell**</u>
                                       Frederick Mitchell (4L)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit**
**-16-**

VERIFIED CIVIL RIGHTS COMPLAINT

1  STATE BAR OF CALIFORNIA
   OFFICE OF CHIEF TRIAL COUNSEL
2  GEORGE S. CARDONA, No. 135439
   CHIEF TRIAL COUNSEL
3  CHRISTOPHER JAGARD, No. 191147
   DEPUTY CHIEF TRIAL COUNSEL
4  MIA R. ELLIS, No. 228235
   ASSISTANT CHIEF TRIAL COUNSEL
5  DUNCAN CARLING, No. 262387
   SUPERVISING ATTORNEY
6  RYAN T. CHIN, No 281777
   DEPUTY TRIAL COUNSEL
7  180 Howard Street
   San Francisco, California 94105-1639
8  Telephone: 415-538-2537

**FILED**

5/30/2023 MN

**STATE BAR COURT**
**CLERK'S OFFICE**
**SAN FRANCISCO**

9

10                    STATE BAR COURT

11          HEARING DEPARTMENT - SAN FRANCISCO

12

13  In the Matter of:              ) Case No.  SBC-23-O-30409
                                   )
14                                 ) OPPOSITION TO MOTION TO DISMISS;
    ERNEST ROY KRAUSE,             ) MEMORANDUM OF POINTS AND
15  State Bar No. 56343,           ) AUTHORITIES; DECLARATION OF RYAN T.
                                   ) CHIN
16  An Attorney of the State Bar   )

17  _____

18          The State Bar of California, by and through Trial Counsel Ryan T. Chin, hereby files its

19  Opposition to Respondent's May 15, 2023 Motion to Dismiss.  This motion is based upon the

20  attached Memorandum of Points and Authorities and the attached Declaration of Ryan T. Chin,

    and all documents on file with the court in this matter.
21

22                              Respectfully submitted,

23                              THE STATE BAR OF CALIFORNIA
                                OFFICE OF CHIEF TRIAL COUNSEL
24

25

26  DATED:  May 30, 2023        By:_____
                                    Ryan T. Chin
27                                  Trial Counsel

28

                                   -1-

# DECLARATION OF SERVICE

**CASE NUMBER(s):  SBC-23-O-30409**

I, the undersigned, am over the age of eighteen (18) years and not a party to the within action, whose business address and place of employment is the State Bar of California, 180 Howard Street, San Francisco, California 94105, Meagan.McGowan@calbar.ca.gov, declare that:

- on the date shown below, I caused to be served a true copy of the within document described as follows:

## OPPOSITION TO MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RYAN T. CHIN

☐ **By U.S. First-Class Mail:  (CCP §§ 1013 and 1013(a))**

☐ **By U.S. Certified Mail:  (CCP §§ 1013 and 1013(a))**
- in accordance with the practice of the State Bar of California for collection and processing of mail, I deposited or placed for collection and mailing in the City and County of San Francisco.

☐ **By Overnight Delivery:  (CCP §§ 1013(c) and 1013(d))**
- I am readily familiar with the State Bar of California's practice for collection and processing of correspondence for overnight delivery by the United Parcel Service ('UPS').

☐ **By Fax Transmission:  (CCP §§ 1013(e) and 1013(f))**
Based on agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed herein below.  No error was reported by the fax machine that I used.  The original record of the fax transmission is retained on file and available upon request.

☒ **By Electronic Service:  (CCP § 1010.6 and Rules of Proc. of State Bar, rule 5.26.2)**
Based on rule 5.26.2, a court order, or an agreement of the parties to accept service by electronic transmission, I caused the above-named document(s) to be transmitted by electronic means to the person(s) at the electronic address(es) listed below.  If there is a signature on the document(s), I am the signer of the document(s), I am the agent of, or I am serving the document(s) at the direction of, the signer of the document(s).  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ *(for U.S. First-Class Mail)* in a sealed envelope placed for collection and mailing at San Francisco, addressed to:  *(see below)*

☐ *(for Certified Mail)* in a sealed envelope placed for collection and mailing as certified mail, return receipt requested,
Article                                        at San Francisco, addressed to:  *(see below)*
No.: _____

☐ *(for Overnight Delivery)* together with a copy of this declaration, in an envelope, or package designated by UPS,
Tracking                                        addressed to:  *(see below)*
No.: _____

| Person Served | Business Address | Fax Number | Courtesy Copy to: |
|---|---|---|---|
| **Ernest Roy Krause** | | **Electronic Address**<br>emagination1010@gmail.com | |

☐ **via inter-office mail regularly processed and maintained by the State Bar of California addressed to:**

**N/A**

I am readily familiar with the State Bar of California's practice for collection and processing of correspondence for mailing with the United States Postal Service, and overnight delivery by the United Parcel Service ('UPS').  In the ordinary course of the State Bar of California's practice, correspondence collected and processed by the State Bar of California would be deposited with the United States Postal Service that same day, and for overnight delivery, deposited with delivery fees paid or provided for, with UPS that same day.

I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after date of deposit for mailing contained in the affidavit.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

DATED:  May 30, 2023                SIGNED: _____
                                                                Meagan McGowan
                                                                Declarant

KRAUSE & ASSOCIATES

**Exhibit -17 -**

VERIFIED CIVIL RIGHTS COMPLAINT

FILED 

06/06/2023

**STATE BAR COURT
CLERK'S OFFICE
SAN FRANCISCO**

STATE BAR COURT OF CALIFORNIA

HEARING DEPARTMENT – SAN FRANCISCO

| | |
|---|---|
| In the Matter of | ) Case No.  SBC-23-O-30409 |
| | ) |
| **ERNEST ROY KRAUSE,** | ) ORDER DENYING MOTION TO STRIKE |
| | ) |
| | ) |
| **State Bar No. 56343** | ) |

On June 6, 2023, Respondent filed a "Notice and motion to strike the state bar of California's unauthorized response to respondent's motion to dismiss unverified notice of disciplinary charges." Respondent's motion to dismiss was filed and served electronically on May 15, 2023. The Office of Chief Trial Counsel filed a response on May 29.

Pursuant to Rule 5.28 of the Rules of Procedure of State Bar of California, "[w]hen service is made electronically, by overnight mail, or by fax, the prescribed period to act or respond is extended by two court days." Thus, the Office of Chief Trial Counsel's response was filed timely. Respondent's motion to strike is **DENIED**.

**IT IS SO ORDERED.**

Dated:  June 6, 2023

_____
MANJARI CHAWLA
Judge of the State Bar Court

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit**
**-18 -**

VERIFIED CIVIL RIGHTS COMPLAINT

 Gmail

**Krause & Associates <krauselawassociates@gmail.com>**

---

## Re: Pre-Trial Conference July 10, 2023 (State Bar v. Krause, Case No. SBC-23-O-30409

---

**Krause & Associates** <krauselawassociates@gmail.com>                    Tue, Jul 11, 2023 at 7:22 AM
To: Anais Zavala <ctroom1@statebarcourt.ca.gov>
Cc: "Ryan T. Chin" <Ryan.Chin@calbar.ca.gov>, "Ernest Krause, Esq." <emagination1010@gmail.com>, "Tiffany F. Sorensen" <Tiffany.Sorensen@calbar.ca.gov>



## Attorneys at Law

4540 Florin Rd., Suite E-224
Sacramento, CA 95823
Tel: 1 (888) 508-1189 | Fax: 1 (916) 200-3560
KrauseLawAssociates@gmail.com

July 11, 2023
VIA EMAIL
ctroom1@statebarcourt.ca.gov
ryan.chin@calbar.ca.gov
Tiffany.Sorensen@calbar.ca.gov

Anais Zavala, Court Clerk
Mimi Navarro, Court Clerk
STATE BAR OF CALIFORNIA
STATE BAR COURT
180 Howard Street, 6th Floor
San Francisco, CA 94105

Ryan T. Chin, Prosecuting Attorney
STATE BAR OF CALIFORNIA
OFFICE OF CHIEF TRIAL COUNSEL
180 Howard Street
San Francisco, CA 9410

Tiffany F. Sorensen, Prosecuting Attorney
STATE BAR OF CALIFORNIA
OFFICE OF CHIEF TRIAL COUNSEL
845 S Figueroa St.
Los Angeles, CA 90017

**Re: Pre-Trial Conference July 10, 2023 (State Bar v. Krause, Case No. SBC-23-O-30409**

Case 2:23-cv-02307-DAD-SCR   Document 1   Filed 10/11/23   Page 215 of 225

Dear Ms. Zavala:

Yesterday, July 10, 2023, Attorney Krause made his telephonic appearance at the Pre-Trial Conference at 1:30 p.m.  He could hear the proceedings, but for unknown reasons could not address the Court.  Hon. Judge Chawla made several findings and issued orders regarding scheduling, consolidation, and responses due from the prosecutor.  The judge's orders do not appear on the State Bar Court's docket. Further, future dates do not comport with the Judge's rulings from yesterday.  Mr. Chin was not instructed to notify Mr. Krause of the outcome of the proceedings and of course Mr. Krause did not waive notice.  Thus, we respectfully request a copy of the minute order via reply email or by posting the minute order to the docket.  If possible, please inform Judge Chawla that Mr. Krause was present for the entire proceedings and that his telephone number, (916)798-1640, was one of the telephone numbers Judge Chawla had noticed of participants waiting for access to the Court.

With kind regards,

Dr. Frederick Mitchell (4L)
Law & Motion Dept.
Legal Assistant

cc: Supervising Attorney - Ernest Krause
    Prosecuting Attorney - Ryan T. Chin
    Prosecuting Attorney - Tiffany F. Sorensen

NOTICE TO RECIPIENT: CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGED; ATTORNEY WORK PRODUCT. Emails and attachments received from us may be protected by the attorney-client privilege, as attorney work-product or based on other privileges or provisions of law.  The information transmitted by this email is intended only for the person or entity to which it is addressed. This email may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message, be aware that any use, review, retransmission, distribution, reproduction or any action taken in reliance upon this message is strictly prohibited. If you are not an intended recipient of this email, do not read, copy, use, forward or disclose the email or any of its attachments to others. If you received this in error, please contact the sender and delete the material from all computers.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit -19 -**

- 94 -

# The State Bar *of California*

## State Bar Alerts Alameda County Consumers Regarding Unauthorized Practice of Law in Oakland

November 23, 2022: The State Bar of California is alerting Alameda County consumers regarding an Oakland business that they recently seized, owned and operated by Gerald Salaam, who is alleged to have engaged in the unauthorized practice of law (UPL).

Salaam negotiated settlements and gave personal injury legal advice without a law license. The Alameda County Superior Court granted the State Bar Office of Chief Trial Counsel's assumption motion on October 17, which allowed the State Bar to recently seize 40 boxes of client files and 2 flash drives from Salaam's office. Salaam had an insurance adjuster license from 1983 to 2010 and was doing business as Accident Case Experts and Accident Claims Services for several decades from his 17th Street Oakland office. Among the records seized from that office were client case files, business cards, and correspondence addressed to Salaam as an attorney, "Esq." or "JD."

Previously, Salaam received a cease and desist notice from the State Bar, warning him he was engaged in UPL and that the State Bar could seek a court order for an assumption of his business if he did not stop. After receiving information that Salaam had disregarded the notice and continued his UPL, the State Bar launched an investigation, which led to the court order authorizing the assumption.

"California law is clear: to provide legal advice, you must be a fully licensed attorney. Consumers need to be aware of the many pitfalls of hiring someone engaged in the unauthorized practice of law," said Cardona. "The Office of Chief Trial Counsel has a duty to protect the public and will continue to enforce the laws prohibiting UPL wherever we find it."

Clients or former clients of Gerald Salaam seeking the return of their files may contact the State Bar's dedicated bilingual phone number at 415-538-2514.

The State Bar has a unit dedicated to investigating and addressing the unauthorized practice of law. People who have been targeted by someone who is not licensed to practice law can file an unauthorized practice of law complaint with the State Bar. There is no cost, and U.S. citizenship is not required; the State Bar will not ask complainants about their citizenship or immigration status. The online complaint form is available in English, Spanish, Russian, Chinese, Korean, and Vietnamese.

###

Follow the State Bar online
LinkedIn, Twitter, Facebook, and Instagram

*The State Bar of California's mission is to protect the public and includes the primary functions of licensing, regulation and discipline of attorneys; the advancement of the ethical and competent practice of law; and support of efforts for greater access to, and inclusion in, the legal system.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRAUSE & ASSOCIATES

**Exhibit**
**-20-**

- 95 -

  



# Investigator I/II

San Francisco, CA, United States **and 1 more**

 **TRENDING**

## JOB DESCRIPTION

**Office of Chief Trial Counsel**

Annual Salary Range for Investigator I: $77,679  -  $103,570

Annual Salary Range for Investigator II: $85,446  - $113,927

FLSA Non-Exempt / Union Represented

**About the Office**

The Office of Chief Trial Counsel (OCTC) is the enforcement arm of the attorney discipline system. OCTC handles intake, investigation, and prosecution in State Bar Court of allegations that attorneys have violated the State Bar Act or the Rules of Professional Conduct. The office also receives, reviews, and investigates complaints alleging unauthorized practice of law by non-attorneys.

**The Ideal Candidate**

Do you have an interest in protecting the public from the improper or unethical actions of some attorneys? Do you have the experience, tact, and professional demeanor to investigate allegations of attorney misconduct or allegations of the unauthorized practice of law by non-attorneys? Can you be fair and impartial in your investigations?

If you answered "yes" to these questions, OCTC invites you to apply to become a member of our team as an Investigator. Investigators prepare investigation plans, interview witnesses, contact the attorney complained against, issue subpoenas and collect evidence, conduct fieldwork, testify in

court, and interact with other agencies in furtherance of State
Bar objectives. This hybrid role allows for up to four days of
remote work per week.

**About this Recruitment**

The Office of Chief Trial Counsel is seeking to fill at either the
Investigator I or Investigator II level. After completion of the
selection process, an offer will be extended to the selected
candidate at the level that is commensurate with the
candidate's experience.

**Definition**

Investigator I

Under general supervision, an Investigator I investigates and
reviews public, court and other party complaints or reports. In
addition, an Investigator I determines what evidence is
needed to support the allegations, collects evidence, and
interviews witnesses to determine the appropriate course of
action.

Investigator Is work with Investigator IIs, IIIs, and attorneys to
determine the means and approach of the investigation.

Investigator II

Under general direction, an Investigator Ii investigates and
reviews routine, complex, or unique public, court and other
party complaints.

Investigator IIs work in tandem with other investigators as
well as attorneys who serve as their legal advisors during the
investigative process. An Investigator II may mentor and train
an Investigator I; and may work under the direction of an
Investigator III.

**Distinguishing Characteristics**

**Investigator I** is the entry-level classification in the
Investigator classification series. Incumbents work under
more direct supervision and are typically assigned to less
complex cases. An incumbent is paired with an Investigator II
or III who serves as his or her mentor and provides direction,
guidance, and training. Investigator I's report to a
Supervising Attorney.

**Investigator II** is an experienced, journey-level classification
responsible for performing the full range of duties related to
the investigation of complaints made against attorneys. Work

is performed with considerable latitude and independent judgement.

the Investigator II classification is distinguished form the Investigator I classification by the incumbent's ability to independently investigate both routine and complex cases, and the capacity to serve as a mentor to Investigator I's. investigator II's typically report to a Supervising Attorney.

**Examples of Essential Duties**

**Investigator I** duties may include, but are not limited to, the following:

- Reviews complaints and makes determinations as to the appropriate courses of action under the guidance of an Investigator II, Investigator III, and/or Attorney.
- Prepares an investigative plan for each assigned case in conjunction with an attorney.
- Locates and interviews complaining witnesses, respondents, and other relevant parties, explaining the functions and limitations of the State Bar's jurisdiction.
- Gathers and reviews evidence, orders court files, obtains insurance files, and issues subpoenas for bank and other business records.
- Reviews and analyzes evidence and assists in determining if there is evidence of violation of the State Bar Act and/or Rules of Professional Conduct or instance of unauthorized practice of law, and assists in making recommendations for further action.
- Drafts a report that discusses the evidence and determines which exhibits, list of witnesses, and documents to include.
- May appear as a witness in administrative, civil, or criminal proceedings.
- Interacts and cooperates with federal, state, and local law enforcement agencies.
- Uses spreadsheets to compile information and analyze data.
- May perform a number of other similar or related duties which may not be specifically included within this position description, but which are consistent with the general level of the job and the responsibilities described.

**Investigator II** duties may include, but are not limited to, the following:

- Reviews complaints and makes determinations as to the appropriate courses of action.

Case 2:23-cv-02807-DAD-SCR  Document ?  Filed 10/11/23  Page 222 of 225

- Prepares an investigative plan for each assigned case in conjunction with an attorney.
- Locates and interviews complaining witnesses, respondents, and other relevant parties, explaining the functions and limitations of the State Bar's jurisdiction.
- Gathers and reviews evidence, orders court files, obtains insurance files, and issues subpoenas for bank and other business records.
- Reviews and analyzes evidence for routine and complex cases, and determines if there is evidence of violation of the State Bar Act and/or Rules of Professional Conduct or instance of unauthorized practice of law, and makes recommendations for further action.
- Drafts a report that discusses the evidence and determines which exhibits, list of witnesses, and documents to include.
- Appears as a witness in administrative, civil, or criminal proceedings.
- Interacts and cooperates with federal, state, and local law enforcement agencies.
- Uses spreadsheets to compile information and analyze data.
- Provides guidance to staff, and may mentor or train Investigator I's
- Participates in special projects or assignments, including providing training or making presentations.
- Performs a number of other similar or related duties which may not be specifically included within this position description, but which are consistent with the general level of the job and the responsibilities described.

**Employment Standards**

Knowledge of:

**Investigator I**

- Techniques and methods of investigation.
- Rules of evidence and conduct of proceedings in trial and appellate courts in California (to be obtained within the introductory period).
- Concepts and methodology of witness interviewing and case management.
- Identification, preservation and presentation of evidence.
- Sources of information and methods used in locating persons.
- Problem identification, analysis, and evaluation.
- Modern office practices and procedures, including keyboarding and the use of standard computer software

such as Microsoft Office and case management system applications.
- Effective writing and verbal presentation.
- The basic rules of vocabulary, grammar, spelling and punctuation.
- Business math for completing non-technical calculations including addition, subtraction, multiplication and division.

**Investigator II**

- Rules of evidence and conduct of proceedings in trial and appellate courts in California.
- Advanced techniques and methods of investigation.
- rules of procedure in multiple areas of law, such as family, bankruptcy, personal injury, criminal, and administrative, as they pertain to the review and investigation of complaints within the jurisdiction of the State Bar.
- Basic principles of forensic accounting, including racing funds to and from different accounts.
- Advanced witness interviewing techniques.
- Identification, preservation and presentation of evidence.
- Sources of information and methods used in locating persons.
- Problem identification, analysis, and evaluation.
- Modern office practices and procedures, including keyboarding and the use of standard computer software such as Microsoft Office and case management system applications.
- Effective writing and verbal presentation.
- The basic rules of vocabulary, grammar, spelling and punctuation.
- Business math for completing non-technical calculations including addition, subtraction, multiplication and division.

Ability to:

**Investigator I**

- Plan, organize, and prioritize work to meet deadlines.
- Work on different phases of multiple investigations at the same time.
- Effectively identify and obtain necessary information through interviews using tact and diplomacy, while remaining calm and impartial.
- Establish and maintain effective and productive work relationships.
- Demonstrate effective writing and verbal presentation skills.
- Obtain and present material in oral and/or written form.

- Learn to organize and process large volumes of information, and review and analyze complex documents, including financial documents.
- Communicate clearly and effectively in person, by telephone and in writing.
- Maintain the confidentiality of State Bar cases, investigations, documents and, records.
- Deal effectively with persons of diverse behavior and temperament, to gain insight into their motivations and credibility.
- Travel by air and automobile.

### Investigator II

- Plan, organize, and prioritize work to meet deadlines.
- Work on different phases of multiple investigations at the same time.
- Effectively identify and obtain necessary information through interviews using tact and diplomacy, while remaining calm and impartial.
- Establish and maintain effective and productive work relationships.
- Demonstrate effective writing and verbal presentation skills.
- Obtain and present material in oral and/or written form.
- Organize, process, and draw conclusions from large volumes of information, and review and analyze complex documents, including financial documents.
- Communicate clearly and effectively in person, by telephone and in writing.
- Maintain the confidentiality of State Bar cases, investigations, documents and, records.
- Deal effectively with persons of diverse behavior and temperament, to gain insight into their motivations and credibility.
- Travel by air and automobile.

### Minimum Qualifications

Education:

### Investigator I

- Bachelor's degree or equivalent work experience in a field that develops the skills required for the functions and responsibilities of the position.

### Investigator II

- Bachelor's degree in a field that develops skills related to investigation, or equivalent academic achievement.

Experience:

**Investigator I**

- Two (2) years' experience in a position requiring writing, research, and analysis, preferably in an investigative environment.

**Investigator II**

- Four (4) years' experience in an investigative position.

Applicants who meet the Minimum Qualifications will be required to successfully complete the State Bar's selection process for this classification.

**License, Certificate, Registration Requirements**

- Must be bondable, have a valid California driver's license, and have access to an automobile, as needed.
- Proof of automobile insurance coverage will be required at the time of employment.

**APPLY NOW**

## JOB INFO

| | |
|---|---|
| Job Identification | 20693 |
| Job Category | Chief Trial Counsel |
| Posting Date | 03/03/2023, 11:31 AM |
| Job Schedule | Full time |
| Locations | 845 S. Figueroa Street, Los Angeles, CA, 90017, US |